UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| GARRETT KACSUTA, <br>           **Plaintiff,** <br> <br>        vs. <br> <br> **LENOVO (UNITED STATES) INC.,** <br>           **Defendant.** | **Case No.: SACV 13-00316-CJC(RNBx)** <br> <br> **ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS** |

## I. INTRODUCTION

Plaintiff Garrett Kacsuta brought this action, individually and on behalf of all others similarly situated, against Defendant Lenovo (United States) Inc. ("Lenovo") related to an alleged defect in a laptop computer he purchased from Lenovo.  Mr. Kacsuta filed his First Amended Complaint ("FAC") on May 28, 2013.  (Dkt. No. 23 ["FAC"].)  In his FAC, he alleges that he purchased a Lenovo U310 Ultrabook laptop computer on January 29, 2013.  (FAC ¶ 1.)  He alleges that all Lenovo "U-Series" laptops suffer from a design defect that makes it difficult to connect to Wi-Fi networks and causes very slow internet speeds.  (*Id.* ¶ 33.)  Mr. Kacsuta brings seven causes of action: (1) violation of

the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq.; (2) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; (3) breach of implied warranty under the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code § 1792 et seq.; (4) breach of implied-in-law contract; and (5) breach of express warranty under N.C. Gen. Stat. § 25-2-313.  He additionally seeks a permanent injunction or other appropriate equitable relief requiring Lenovo to establish a common fund for repairs of U-Series computers.  Before the Court is Lenovo's motion to dismiss.  For the following reasons, the Court **GRANTS IN PART** Lenovo's motion.[1]

## II.  ANALYSIS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  The issue on a 12(b)(6) motion is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[1]  Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for July 22, 2013 at 1:30 p.m. is hereby vacated and off calendar.

## A.  Breach of Express Warranty

Lenovo moves to dismiss Mr. Kacsuta's breach of express warranty claim, asserting that he has failed to allege that he provided pre-suit notice of the defect to Lenovo.[2]  Under California Commercial Code section 2607, a "buyer must, within a reasonable time after he or she discovers or should have discovered any breach [of warranty], notify the seller of breach or be barred from any remedy."  Cal. Com. Code § 2607(3)(A).  The notice requirement is "designed to allow the seller the opportunity to repair the defective item, reduce damages, avoid defective products in the future, and negotiate settlements."  *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 135 (2008).  The notice also serves to inform sellers of the need to preserve evidence and prepare to defend against the lawsuit.  *Id*.  The Ninth Circuit has held that in order to effectuate these objectives, notice must be given "pre-suit."  *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) ("This purpose would be completely undermined if it could be satisfied with the giving of post-suit notice.").

Mr. Kacsuta admits that he did not give notice to Lenovo prior to filing his Complaint.  However, he argues that he satisfied the notice requirement with his March 13, 2013 CLRA letter, which he provided to Lenovo after he filed the Complaint but before he filed the FAC.  In *Alvarez*, however, the Ninth Circuit overruled *Hampton v. Gebhardt's Chili Powder Co.*, 294 F.2d 172 (9th Cir. 1961), a case in which the Ninth

---

[2]  Although Lenovo moves to dismiss Mr. Kacsuta's implied warranty claim under the Song-Beverly Act for the same reason, California courts have held that no notice is required for such claims.  *See Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1307 (2009) ("In contrast to the California Uniform Commercial Code, the Song–Beverly Act contains no reasonable time requirement by which the consumer must invoke the [Song–Beverly] Act or lose rights granted by that statutory scheme."); *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 404 (2003) ("[T]here is no requirement the seller be given an opportunity to repair when the implied warranty of merchantability is breached.").

Circuit held that notice could be given after the filing of the original complaint but prior to filing a supplemental complaint. *See Alvarez*, 656 F.3d at 932. In overturning *Hampton*, the Ninth Circuit reasoned that allowing notice after the filing of the original complaint would not effectuate the statutory objectives of section 2607(3)(A). *Id*. The same is true here, given that Mr. Kacsuta's original Complaint alleges nearly identical claims as the FAC, based on the same underlying conduct by Lenovo. Mr. Kacsuta's March 13, 2013 notice did not allow Lenovo the opportunity to repair his laptop, reduce damages, negotiate a settlement to avoid litigation, prepare for litigation, or preserve evidence. *See Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 929 N.D. Cal. 2012) (rejecting argument that notice is sufficient if given prior to filing an amended complaint).

Mr. Kacsuta additionally asserts that North Carolina law controls his breach of express warranty claim, and therefore the Court should look to North Carolina law to determine whether he gave timely notice. Mr. Kacsuta, however, provides no explanation as to why the Court should apply North Carolina law. *See McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1422 (9th Cir. 1989) ("The burden is on the party seeking to invoke foreign law; California applies its own rule of decision unless a party litigant properly invokes the law of a foreign state."). Regardless, it appears that North Carolina law is consistent with California law on this point. *See* N.C.G.S. § 25-2-607(3)(a) ("The buyer must, within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.").

Mr. Kacsuta asserts that under North Carolina law, "notification is given to the defendant by the filing of an action within the period of the statute of limitations." *Maybank v. S. S. Kresge Co.*, 302 N.C. 129, 135 (1981). The filing of an action, however, is not sufficient notification in every case. Instead, "[w]hat is a reasonable time depends upon the facts of each case and the policies underlying the notice requirement."

*Riley v. Ken Wilson Ford, Inc.*, 109 N.C. App. 163, 169 (1993).  In *Maybank*, the primary case relied on by Mr. Kacsuta, the decision to allow notice with the filing of the complaint turned on the fact that the plaintiff's action involved a claim for personal injury.  Whereas typically the "most important policy behind the notice requirement is enabling the seller to make efforts to cure the breach by making adjustments or replacements in order to minimize the buyer's damages and the seller's liability, . . . . in cases where the defective goods have caused personal injury, this policy has no application because the damage has already occurred and is irreversible." *Id*. at 134.  Mr. Kacsuta does not bring claims for personal injury, and the "most important policy behind the notice requirement," to allow the seller an opportunity to cure the breach, applies here.  *See id*. (stating that the objective of providing the seller with an opportunity to cure the breach "has its greatest application in commercial settings where there is an opportunity to minimize losses").  This policy is only effectuated through pre-suit notice. The Court therefore finds that under North Carolina law, like California law, Mr. Kacsuta was required to give pre-suit notice.  Because he fails to allege that he has done so, his express warranty claim is barred.

## B.  Implied in Law Contract

Lenovo moves to dismiss Mr. Kacsuta's implied in law contract claim, asserting that the claim is barred given that he additionally asserts the existence of an agreement between the parties covering the same subject matter.  Generally under California law, an action in quasi-contract "does not lie when an enforceable, binding agreement exists defining the rights of the parties," *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996).  Mr. Kacsuta's Complaint acknowledges the existence of an express enforceable contract between the parties, the warranty, governing their rights and responsibilities with respect to his laptop.  There are no allegations in the Complaint to suggest that the warranty is unenforceable.  Indeed, Mr. Kacsuta's express warranty

claim is premised on the enforceability of the warranty.  Although Federal Rule of Civil Procedure 8(d) allows for claims in the alternative, "this alternative pleading theory is not available where a plaintiff expressly pleads, and relies on, the existence of an express agreement between the parties relating to the same issues."  *Tait v. BSH Home Appliances Corp.*, SACV 10-711 DOC AN, 2011 WL 1832941, at *6 (C.D. Cal. May 12, 2011); *see Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) (dismissing unjust enrichment claim where the plaintiff pleaded that "a valid express contract covering the same subject matter exists between the parties").

**C.  Song-Beverly Act Claim**

Lenovo asserts that Mr. Kacsuta's Song-Beverly Act claim should be dismissed because he has failed to allege that his laptop was not fit for the ordinary purposes for which such goods are used.  Under the Song-Beverly Act, "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable."  Cal. Civ. Code § 1792. To be merchantable, the product must be "fit for the ordinary purposes for which such goods are used."  Cal. Civ. Code § 1791.1(a)(2).  "Such fitness is shown if the product is in safe condition and substantially free of defects" *Mexia*, 174 Cal. App. 4th at 1303 (internal quotations omitted).  The product need not be perfect, so long as "it provides for a minimum level of quality."  *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (1995).  "[A] breach of the implied warranty of merchantability means the product did not possess even the most basic degree of fitness for ordinary use."  *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003).

Although Mr. Kacsuta alleges that the Wi-Fi defect singicantly affects his ability to connect to and use wireless networks, his allegations fall far short of demonstrating that the laptop does not "possess even the most basic degree of fitness for ordinary use."

*Mexia*, 174 Cal. App. 4th at 1303.  Perhaps most telling is the fact that Mr. Kacsuta fails to allege that he discontinued his use of the laptop or sought a replacement.  There are no allegations that the defect caused a safety issue, or that it affected other uses for the computer, such as word processing and non-internet media consumption.  Further, Mr. Kacsuta does not allege that the defect rendered his laptop, or those of any class member, completely unable to connect to the internet.  Indeed, the allegations in the FAC suggest just the opposite: while the defect made the use of Wi-Fi inconvenient, the laptops are still able to connect to the internet and transfer data.  One putative class member, for example, stated that although his Wi-Fi speeds were "really slow," he was able to get acceptable speeds by hardwiring the computer to his router.  (FAC at 11:18–20.)  Another putative class member mentioned that he could connect to Wi-Fi networks if he was sufficiently close to his router.  (*Id.* at 10:21–24.)  Mr. Kacsuta's comparison tests of the U-Series laptops with a competitor laptop further confirm that the allegedly defective laptops are able to connect to the internet and transfer data.  (*See Id*. ¶¶ 38–53.)  Every U-Series laptop Mr. Kacsuta tested was successfully able to connect to the wireless router during at least one test.  Although the transfer speeds were significantly slower than the competitor laptop, each U-Series laptop was ultimately able to complete the file transfer.  While the alleged defect certainly would have made the use of the U-Series laptops inconvenient, inconvenience alone does not render a product unfit for its ordinary purpose.  *See Baltazar v. Apple, Inc.*, CV-10-3231-JF, 2011 WL 3795013, at *4 (N.D. Cal. Aug. 26, 2011) (fact that iPad overheated quickly when used outdoors or in warm conditions did not render it unfit for its ordinary purpose, despite fact that Apple advertised that the iPad could be used anywhere); *See Kent v. Hewlett-Packard Co.*, 09-5341 JF PVT, 2010 WL 2681767, at *4 (N.D. Cal. July 6, 2010) (computer that frequently locked-up and required rebooting was not unfit for its ordinary purpose).

///

///

**D.  UCL and CLRA Claims**

Lenovo further moves to dismiss Mr. Kacsuta's UCL and CLRA claims, which are premised on allegations that Lenovo failed to disclose the existence of, and its inability to fix, the Wi-Fi defect.  (*See* FAC ¶¶ 108, 120.)  Under California law, a defendant has a duty to disclose information in four circumstances: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts."  *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997).  Mr. Kacsuta represents that his claims are premised entirely on an omission theory.  (Pl.'s Mot. at 2 ("Plaintiff's CLRA and UCL claims are based on omissions, not representations.").)

**1.  Duty to Disclose**

Lenovo argues that it was under no duty to disclose the Wi-Fi defect because the defect was not within its exclusive knowledge.  Specifically, Lenovo asserts that there was widespread knowledge of the defect, as evidenced by allegations in the FAC regarding complaints posted on Lenovo's website and Facebook page, reviews on Amazaon.com, Hardwarezone.com, Slickdeals.net, Costco.com, and ultabooknes.com, and a negative Ultrabook News article.  (*See* FAC ¶¶ 34, 78, 81.)  However, "the fact that information about consumer complaints may have been available on the internet does not negate a claim for fraudulent omission."  *Tait v. BSH Home Appliances Corp.*, No. SACV 10-007111 DOC, 2011 U.S. Dist. LEXIS 103584, at *7–*8 (C.D. Cal. Aug. 31, 2011); *see Falk v. GMC*, 496 F. Supp. 2d 1088, 1097 (N.D. Cal. 2007) ("Many customers would not have performed an Internet search before beginning a car search.  Nor were they required to do so.").  Further, unlike in *Gray v. Toyota Motor Sales, U.S.A.*, No. CV

08-01690 SPG(JCx), 2012 U.S. Dist. LEXIS 15992 (C.D. Cal. Jan. 23, 2012), which concerned the real world gas mileage of Prius vehicles, there is no indication that the defect was given attention by the "mainstream-media" or that it was particularly newsworthy.

Moreover, the FAC contains allegations that Lenovo had significantly more knowledge regarding the Wi-Fi defect than did consumers.  *See Falk*, 496 F. Supp. 2d at 1097 ("It is true that prospective purchasers, with access to the Internet, could have read the many complaints about the failed speedometers . . . . [b]ut GM is alleged to have *known* a lot more about the defective speedometers, including information unavailable to the public.").  The customer complaints in the FAC make clear that customers were confused about the cause and potential fixes for their Wi-Fi problems.  Indeed, as Lenovo points out at great length in its motion, slow Wi-Fi speeds can have a wide variety of causes and are not necessarily due to a defect.  Lenovo, on the other hand, allegedly conducted extensive testing of the Wi-Fi and even developed a potential fix for the problem, albeit one that it knew would be unsuccessful.  Clearly, Lenovo possessed significantly more knowledge than consumers regarding the defect and whether it had the potential to be fixed.

## 2.  Rule 9(b)

Lenovo argues that Mr. Kacsuta's allegations do not meet the heightened pleading requirements of Rule 9(b) because he has failed to identify the specific materials he read and relied on in making his decision to purchase a U-Series laptop.  The Court, however, fails to see how this information would be pertinent to Mr. Kacsuta's claims, which are premised on Lenovo's failure to disclose the presence of the Wi-Fi defect and its inability to repair it.  The cases relied on by Lenovo involved claims requiring the plaintiffs to allege misrepresentations by the defendant.  *See, e.g.*, *Kearns v. Ford Motor Co.*, 567

F.3d 1120 (9th Cir. 2009) (plaintiff relied on marketing materials that led him to believe that certain vehicles were safe); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993 (S.D. Cal. 2011) (plaintiffs relied on defendants' advertising campaigns to purchase Hydroxycut, believing it was safe); *Hovsepian v. Apple, Inc.,* No. 08-5788 JF(PVT), 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ("Hovsepain has not stated a cognizable CLRA claim based upon statements made in contradiction to a fraudulent omission.").  Here, Mr. Kacsuta's omission claims are not based on representations made by Lenovo, and he is therefore not required to state with particularity the marketing materials he relied on in making his decision to purchase the U-Series laptop.[3]

### 3.  Economic Loss Rule

Lenovo moves to dismiss Mr. Kacsuta's "tort" claims pursuant to the economic loss rule.  Under California law, the economic loss rule provides that "[a] person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations."  *Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000); *see United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1180 (C.D. Cal. 2009) ("The economic loss rule generally bars tort claims for contract breaches, thereby limiting contracting parties to contract damages.").  Lenovo asserts that Mr. Kacsuta's UCL and CLRA claims are grounded in fraud, and therefore subject to the economic loss rule.  In support, it points to a single, unpublished district court decision dismissing a UCL claim pursuant to the economic loss rule.  *See Casden Builders Inc. v. Entre Prises USA, Inc.*, No. CV 10-2353 ODW, 2010 WL 2889496 (C.D. Cal. July 21, 2010).  In *Casden*, the plaintiff brought common law fraud claims as well as a claim under the

---

[3]  Lenovo additionally argues that Mr. Kacsuta fails to allege with particularity facts establishing that it intended to defraud reasonable online purchasers.  The UCL and CLRA, however, do not have scienter requirements.  *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 591 (9th Cir. 2012) ("[T]he California laws at issue here [the UCL and CLRA] have no scienter requirement.").

UCL.  The court held that the fraud claims were barred by the economic loss rule, and because the UCL claim was based on the fraud claims, the court dismissed it as well.  *Id.* at *6.  The *Casden* court, however, did not point to any authority to support its decision.  In fact, it appears that the majority of courts that have addressed this issue have determined that the UCL and CLRA are not subject to the economic loss rule.  *See Belle v. Chrysler Grp., LLC*, SACV 12-00936 JVS, 2013 WL 949484, at *4 (C.D. Cal. Jan. 29, 2013) ("The CLRA and UCL are consumer protection statutes, enacted to protect consumers' economic interests; thus, the fact that Plaintiffs may have suffered only economic losses does not detract from their CLRA and UCL claims."); *Inter-Mark USA, Inc. v. Intuit, Inc.*, C-07-04178 JCS, 2008 WL 552482, at *11 (N.D. Cal. Feb. 27, 2008) ("The Court does not find any case law that suggests that the California Supreme Court would extend the economic loss rule to Sections 17200 or 17500 claims."); *see also Custom LED, LLC v. eBay, Inc.*, C 12-00350 SI, 2012 WL 1909333 (N.D. Cal. May 24, 2012) (dismissing common law fraud and deceit claims but not UCL claim under the economic loss rule).  Although the California Supreme Court has not directly weighed in on the issue, it has stated that a UCL claim is not a tort by another name.  *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 173 (2000) (the UCL is not "an all-purpose substitute for a tort or contract action").  The same would also seem to be true of CLRA claims.  Given the broad scope of the UCL and CLRA, and their function as consumer protection statutes, it is highly unlikely that the legislature intended for them to be limited in such a way.[4]  The Court therefore concurs with the majority of courts who have determined that UCL and CLRA claims are not subject to the economic loss rule.

---

[4]  For the first time in its reply brief, Lenovo cites *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) for the proposition that "[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue."  *Id.* at 1141.  However, the Ninth Circuit expressly distinguished *Wilson* from another case, *Baba v. Hewlett–Packard Co.,* No. C 09–05946 RS, 2010 WL 2486353 (N.D. Cal. June 16, 2010), in which the court held that a defect need not involve a safety issue so long as the defect manifests during the express warranty period.  *See Wilson*, 668 F.3d at 1143.  The *Baba* court reasoned that in such cases there is no risk of broadening warranty protections, and therefore the policy underlying the line of cases requiring a safety issue does not apply.  *Baba*, 2010 WL 2486353 at *4.

### E.  Injunctive Relief

Lenovo additionally argues that Mr. Kacsuta lacks standing to seek injunctive relief given that he does not face the threat of future harm.  *See Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (to have standing to seek injunctive relief, a plaintiff "must demonstrate that they are realistically threatened by a *repetition* of the violation"). Mr. Kacsuta seeks an "injunction or other appropriate equitable relief requiring Defendant to establish a common fund for repairs for the Lenovo U Series Computers." (FAC Prayer ¶ b.)  The UCL provides that the "court may make such orders or judgments . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."  Cal. Bus. & Prof. Code § 17203.  Mr. Kacsuta's requested relief is proper under this section, at least for purposes of a motion to dismiss.

## III.  CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Lenovo's motion to dismiss.  The Court GRANTS Lenovo's motion with respect to Mr. Kacsuta's express warranty, Song-Beverly Act, and implied in law contract claims.  The Court DENIES Lenovo's motion with respect to Mr. Kacsuta's UCL and CLRA claims and request for injunctive relief.


DATED:     July 16, 2013

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE