Paul R. Kiesel, State Bar No. 119854
  *kiesel@kbla.com*
KIESEL  LAW LLP
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel:   310-854-4444
Fax:   310-854-0812

Paul O. Paradis, Esq.
  *pparadis@hhplawny.com*
Gina M. Tufaro, Esq.
PARADIS LAW GROUP, PLLC
570 7th Avenue, 20th Floor
New York, NY 10018
Tel:   212-986-4500
Fax:   212-986-4501

Attorneys for Plaintiffs
(other counsel listed on signature page)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARRETT KACSUTA and MICHAEL WHEELER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LENOVO (United States) Inc.,<br><br>Defendant. | Case No. SACV 13-00316-CJC (RNBx)<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Garrett Kacsuta and Michael Wheeler ("Plaintiffs"), by their undersigned counsel, allege the following upon personal knowledge as to their own acts and upon information and belief based on the investigation conducted by counsel as to all other matters.

On August 22, 2014, Plaintiffs and Defendant Lenovo (United States) Inc. ("Lenovo" or "Defendant") stipulated to the settlement of the claims asserted by Plaintiffs in this Action (the "Settlement"). In connection with the Settlement, Defendant stipulated to the filing of this instant Second Amended Complaint. Accordingly, Plaintiffs allege as follows:

## NATURE OF THE ACTION

1.      Plaintiff Kacsuta purchased a defective Lenovo U310 Ultrabook laptop computer on January 29, 2013. At the time Plaintiff Kacsuta purchased his Lenovo U310 Ultrabook, Plaintiff did not have knowledge that his U310 Ultrabook suffered from the Wi-Fi Defect described herein.

2.      Plaintiff Wheeler purchased a defective Lenovo U410 Ultrabook laptop computer on November 11, 2012. At the time Plaintiff Wheeler purchased his Lenovo U410 Ultrabook, Plaintiff did not have knowledge that his U410 Ultrabook suffered from the Wi-Fi Defect described herein.

3.      Defendant Lenovo (United States) Inc. ("Lenovo" or "Defendant") designs, manufacturers and sells a broad range of laptop computers, including the U310 and U410 "U Series" laptop computers.

4.      Plaintiffs bring this action individually, and as a class action, against Lenovo, on behalf of themselves and all other similarly situated persons who purchased a Lenovo IdeaPad® U310 and U410 "U Series" computer, (collectively, the (the "Lenovo U Series Computers") in the United States at any time (the "Class").

5.      On June 4, 2012, Lenovo announced the worldwide availability of its U310 and U410 Ultrabook computers and began selling the U310 and U410 models

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1   to Class members shortly thereafter.

2       6.    At the time Lenovo began selling the Lenovo U Series Computers, and
3   at all times relevant hereto, Defendant had knowledge that the Lenovo U Series
4   Computers are defective because of a design defect that renders these computers
5   unable to connect to Wi-Fi networks, or attain Wi-Fi data transmission/reception
6   speeds sufficient to allow the Lenovo U Series Computers' user to engage in Internet
7   browsing when the Lenovo U Series Computers are within the range of a wireless
8   Wi-Fi router (hereinafter the "Wi-Fi Defect"). As a result of the Wi-Fi Defect, the
9   Lenovo U Series Computers are not fit for their intended mobile computing
10  purposes, and Lenovo has long had knowledge of this fact.

11      7.    Despite Lenovo's knowledge of the fact that all of the Lenovo U Series
12  Computers are defective because of the Wi-Fi Defect, Lenovo failed to disclose the
13  existence of the Wi-Fi Defect, and Plaintiffs and Class members, reasonable
14  consumers, were deceived as a result of Lenovo's misconduct.

15      8.    Within days after Lenovo first began selling the Lenovo U Series
16  Computers plagued by the Wi-Fi Defect, a firestorm of complaints erupted among
17  purchasers of these Lenovo U Series Computers. In an attempt to quell this
18  firestorm of criticism, Lenovo purportedly instituted a hardware design change in all
19  U301 and U410 model computers manufactured after July 23, 2012. Although this
20  hardware design change was purportedly implemented in all U310 and U410 model
21  Lenovo computers manufactured after July 23rd, the announcement of this design
22  change was not made until August 9, 2012. On August 9, 2012, individuals who had
23  purchased Lenovo model U310 or U410 computers manufactured prior to July 23,
24  2012 were informed that they should contact Lenovo to schedule service in order to
25  have Lenovo perform a service procedure involving a hardware update on their
26  computers.

27      9.    Both Lenovo's (a) hardware update, which was purportedly made
28  available to those Class members who purchased Lenovo model U310 or U410

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

computers manufactured prior to July 23, 2012, and (b) hardware design change made to Lenovo model U310 and U410 computers manufactured post July 23, 2012, were inadequate and failed to remedy the Wi-Fi Defect. This fact is demonstrated by: (i) the test results obtained, which are detailed herein; and (ii) countless complaints posted by Class members on various Forums on the "Lenovo Community" portion of Lenovo's website – many of which continue to be posted nine months *after* both of these purported "fixes" were first announced by Lenovo.

10.   Because the purported "fixes" offered by Lenovo failed to remedy the Wi-Fi Defect, Plaintiffs and Class members remain unable to use the Lenovo U Series Computers to connect to Wi-Fi networks or attain Wi-Fi data transmission/reception speeds sufficient to allow the computer's user to engage in Internet browsing. As a result, the ground swell of complaints about the Wi-Fi Defect that plagues all of the Lenovo U Series Computers has continued.

11.   Plaintiffs and all other Class members were damaged as a result of Lenovo's misconduct when they purchased Lenovo U Series Computers, that unbeknownst to them, are defective because of the Wi-Fi Defect.

12.   Plaintiffs allege that Defendant violated:

> i.   California Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.* (the "CLRA") by failing to disclose the existence of the Wi-Fi Defect to Class members;
>
> ii.   California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, by engaging in unlawful and unfair conduct in violation of the CLRA by failing to disclose the existence of the Wi-Fi Defect to Class members;
>
> iii.   Breach of express warranty law for the District of Columbia Subclass under District of Columbia law;

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

iv. Breach of implied warranty of merchantability law for the District of Columbia Subclass under District of Columbia law, and;

v. District of Columbia Consumer Protection and Procedures Act (DCCPPA) D.C. Official Code, 2012 §§ 28–3901 *et seq.* for the District of Columbia Subclass.

## THE PARTIES

13.    Plaintiff Kacsuta is a citizen of the State of California and resident of Orange County, California.   Before purchasing a Lenovo U Series Computer, Plaintiff Kacsuta reviewed Lenovo's marketing and advertising for the Lenovo U Series Computers regarding its Wi-Fi functionality.   Defendant did not disclose in these materials, or in *any* material for that matter, the material fact that the Lenovo U Series Computers suffered from the Wi-Fi Defect.   Plaintiff Kacsuta reposed confidence in and relied upon the material completeness of these marketing materials, from which the existence of the Wi-Fi Defect was omitted.   Plaintiff Kacsuta purchased his Lenovo U Series Computer in the State of California, at retail. Had Plaintiff been aware of the Wi-Fi Defect, he would not have purchased the Lenovo U Series Computer.   On numerous occasions after Plaintiff purchased his Lenovo U310 Ultrabook, Plaintiff Kacsuta repeatedly experienced an inability to: (i) use his Lenovo U310 Ultrabook to connect to Wi-Fi networks, (ii) or attain Wi-Fi data transmission/reception speeds sufficient to allow him to engage in Internet browsing using his Lenovo U310 Ultrabook because of the Wi-Fi Defect.

14.    Plaintiff Wheeler is a citizen and resident of the District of Columbia. Before purchasing a Lenovo U Series Computer, Plaintiff Wheeler reviewed Lenovo's marketing and advertising for the Lenovo U Series Computers regarding its Wi-Fi functionality.   Defendant did not disclose in these materials, or in *any* material for that matter, the material fact that the Lenovo U Series Computers suffered from the Wi-Fi Defect.   Plaintiff Wheeler reposed confidence in and relied

upon the material completeness of these marketing materials, from which the existence of the Wi-Fi Defect was omitted.  Plaintiff Wheeler purchased his Lenovo U Series Computer in the District of Columbia from a Lenovo sales website.  Had Plaintiff Wheeler been aware of the Wi-Fi Defect, he would not have purchased the Lenovo U Series Computer.  On numerous occasions after Plaintiff Wheeler purchased his Lenovo U410 Ultrabook, Plaintiff Wheeler repeatedly experienced an inability to: (i) use his Lenovo U410 Ultrabook to connect to Wi-Fi networks, (ii) or attain Wi-Fi data transmission/reception speeds sufficient to allow him to engage in Internet browsing using his Lenovo U410 Ultrabook because of the Wi-Fi Defect.

15.   Defendant Lenovo is incorporated in Delaware and maintains its principal executive offices in the United States at 1009 Think Place, Morrisville, North Carolina, 27560.  Lenovo, which acquired IBM's entire personal computer manufacturing and marketing operation in 2006, is the world's second-largest vendor of personal computers.  At all times relevant hereto, Lenovo transacted substantial business in the State of California through the advertising, marketing, and sale of its products, including the Lenovo U Series Notebooks.

## JURISDICTION AND VENUE

16.   This Court has subject matter jurisdiction over the claims asserted in this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332. Plaintiffs Kacsuta and Wheeler, citizens of California and the District of Columbia respectively, bring claims on behalf of a nationwide class against Defendant, a citizen of North Carolina and Delaware.

17.   This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(d) because the aggregate claims of Plaintiffs and other Class members exceed the sum or value of $5,000,000, the proposed Class has more than 100 members and diversity of citizenship exists between at least one member of the proposed Class and Defendant.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

18.     This Court has personal jurisdiction over Defendant because it maintains sufficient contacts in this jurisdiction, including the advertising, marketing, distribution, and sale of its Lenovo U Series Computers in this jurisdiction.

19.     Venue is proper in this District because a substantial part of the events and omissions giving rise to the claims occurred in this District, including the marketing, distribution, and sale of the Lenovo U Series Computers in this jurisdiction.

## SUBSTANTIVE ALLEGATIONS

**A Primer on "Wired" vs.**
**"Wireless" or "Wi-Fi" Computer Networks**

20.     Today the Internet can be accessed via either "*wired*" or "*wireless*" networks, which are sometimes also referred to as "Wi-Fi Networks."

21.     A *wired* local area network ("wired LAN") is a group of computer devices connected to one another using network cables with the help of a piece of hardware known as a "router."  A "router" is the central device of a wired LAN that into which an individual can plug one end of a "network cable."   The other end of the network cable is plugged into a networking device that has a "network port."  In order to add more network devices to a router, additional cable ports on the router are required. These ports, both on the router and on the end devices, are called "Local Area Network" ports.   The moment a device is plugged into a router, it becomes part of the wired network.

22.     A *wireless* network is very similar to a wired network with one significant difference – in a wireless network, the devices that are part of the network do not use cables to connect to the router and one another. Instead, they transmit and receive data using high frequency radio signals.  This data transport mechanism is commonly referred to as "Wireless Fidelity," or "Wi-Fi" -- which also refers to the 802.11 networking standard supported by the Institute of Electrical and

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1  Electronics Engineers ("IEEE").

2      23.   Because wireless networking devices transmit and receive data using

3  high frequency radio signals, they do not use "network ports." Instead, these devices

4  utilize antennas, which sometimes are hidden inside the device itself. In order to

5  have a Wi-Fi connection, there needs to be an access point and a Wi-Fi client.

6      24.   An "Access Point" (commonly referred to as an "AP") is a central

7  device that broadcasts the Wi-Fi signal for Wi-Fi clients to connect to. A "Wi-Fi

8  Client," on the other hand, is a device that can detect the signal broadcast by an

9  Access Point, connect to it, and maintain the connection. Most, if not all, laptops,

10 smart phones, and tablets on the market come with built-in Wi-Fi capability.

11      25.   The phrase "Wi-Fi range" typically refers to the radius distance an AP's

12 Wi-Fi signal can reach. Typically, most Wi-Fi networks can be accessed to browse

13 the Internet within approximately 150 feet from the Wi-Fi network's AP.

14      26.   The phrase "Frequency Bands" typically refers to the radio frequencies

15 that are used by most Wi-Fi networks. Although there are three radio bands,

16 including 2.4GHz, 5GHz and 60 GHz, the most popular is the 2.4 GHz band, which

17 is used by most wireless networks today.

18 **Increased Access to Wi-Fi Networks**
19 **Results In A Surge In Mobile Computing**

20      27.   According to the *2011 WBA Industry Report* entitled *Global*

21 *Developments in Public Wi-Fi*, **"Wi-Fi is the most important wireless technology**

22 **in the world** based on the volume of data traffic it carries . . . **because it often**

23 **offers users the best means of accessing the Internet while on the go.**"

24 (Emphasis added). According to the Wireless Broadband Alliance, a leading Wi-Fi

25 industry trade group, "we have very much entered the second wave of Wi-Fi, one

26 that is much more ubiquitous than the first wave, one that's much more essential for

27 people who use and rely on the technology." As Qualcomm Inc., a supplier of

28 computer hardware products recently stated, "For a lot of people the world over, Wi-

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

Fi® is their equivalent of oxygen; they just can't live without it. . . .  **[Wi-Fi] is ubiquitous in notebooks and netbooks, a standard feature especially in portable computing platforms, meeting user demand for mobile wireless connectivity.**" (Emphasis added).

28.    Statistics detailed in the *2011 WBA Industry Report* confirm the explosion of Wi-Fi worldwide. Figure 1 below depicts the global number of public Wi-Fi "hotspots" during the period 2009 through 2015, while Figure 2 depicts the global number of private Wi-Fi "hotspots" during this same period.

Figure 1



Fig. 5: Global number of private Hotspots, 2009-2015

Source: Informa Telecoms & Media

Figure 2



Fig. 4: Global number of public Hotspots, 2009-2015

Source: Informa Telecoms & Media

2ND AMENDED CLASS ACTION COMPLAINT

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

As demonstrated in both of the foregoing Figures, Wi-Fi has – and is projected to – experience very rapid growth into the future.

29. Figure 3 below depicts global Wi-Fi data traffic during the period 2008 through 2014.



Figure 3

When viewed in light of Figures 1 and 2 above, Figure 3 makes clear that the explosive growth in Wi-Fi functionality is an important feature to reasonable consumers and Wi-Fi traffic is directly correlated with the recent dramatic increase in the number of both public and private Wi-Fi "hotspots" world-wide.

**Lenovo Introduces the Lenovo IdeaPad®**
**U310 and U410 "U Series" Notebook Computers**

30. Increased mobility among computer users has resulted in an increased demand for the ability to access the Internet in a wireless manner via Wi-Fi networks. Computer manufacturers have responded to this increased demand by rolling out laptop computers that are optimized for mobility and provide users the wireless access to the Internet that they demand.

31. In late 2011 – early 2012, computer manufacturers began to introduce a

new breed of notebook computers that are aimed at highly mobile computer users. Referred to as "Ultraportable" notebook computers, these machines are designed to be slimmer, lighter, and thinner that their predecessors, in order to increase their mobility.  For example, while notebook computers introduced in 2010 were manufactured with CD/DVD drives and removable battery packs, computer manufacturers made the decision to exclude these features from the next generation Ultrabook computers based largely on the fact that information that was historically accessed via CD or DVD is now accessed via the Internet.  As a result, the ability of an Ultrabook notebook computer to access the Internet via Wi-Fi from wherever today's mobile computer users want or need to access the Internet has never been more important.

32.    On January 8, 2012 Lenovo announced that it was "expanding its Ultrabook™ portfolio . . . with the IdeaPad U310 and U410 ultra laptops."  In doing so, Lenovo stated in relevant part, "the ultra slim and light U310 and U410 are ideal for any and all mobile needs."  This release also stated that "the new IdeaPad U Series laptops will be available beginning in May [2012]."

33.    On June 4, 2012, Lenovo announced the worldwide availability of its U310 and U410 Ultrabook computers.  In doing so, Peter Hortensius, the President of Lenovo's Product Group stated:

> "Ultrabooks are an industry game changer that shift not only the way people think about laptop design, but also how much performance technology can be packed into such a thin and light device," said Peter Hortensius, president, Product Group, Lenovo.  Lenovo Ultrabooks free people from having to choose between a device with a productivity-focused user experience and one with a style and design that inspire their creativity.   The IdeaPad U Series Ultrabooks embody this convergence and are the perfect tool for consumers to manage every aspect of their digital lives.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

**The Lenovo U Series Computers Are Defective**

###### A.   The Wi-Fi Defect in the Lenovo U Series Notebooks

34.     All of the Lenovo U310 and U410 "U Series" computers sold by Defendant contain a design defect that renders these computers unable to connect to Wi-Fi networks or attain Wi-Fi data transmission/reception speeds sufficient to allow the computer's user to engage in Internet browsing when the Lenovo U Series Computers are within the range of a wireless Wi-Fi router (*i.e.,* the Wi-Fi Defect). As a result of the Wi-Fi Defect, the Lenovo U Series Computers are not fit for their intended mobile computing purposes.

###### B.   Class Member Complaints Confirm the Presence of the Wi-Fi Defect In the Lenovo U Series Notebooks

35.     Class member complaints about the immobilizing Wi-Fi Defect surfaced immediately after Lenovo began selling the Lenovo U Series Computers, and Class members continue to complain about the Wi-Fi Defect nearly 9 months after Lenovo claims that it remedied the Wi-Fi Defect.  Presented below is only a sampling of such complaints:

| Date and Source | Consumer Complaint |
|---|---|
| July 1, 2012<br><br>forums.lenovo.com | **[T]he Lenovo Ideapad U410 . . . has troubles with connecting to the wireless network. It's just not able to ensure a consistent connection unless you are sitting right next to the router. . . .** (Emphasis added). |
| July 4, 2012<br><br>forums.lenovo.com | The big problem, however, as the title states, is my internet is turtle slow.     After running [Internet] speed tests on speakeasy[.net—a website that measures the speed of a computer's Internet connection—], . . . I'm getting download speeds of 1 [megabit per second ("Mbps")] on my NEW u310[.] |

| | | |
|---|---|---|
| | | My 3 year old Asus netbook, which is side by side with my u310 lenovo, is getting 30[Mbps] down speed on speakeasy[.net.] |
| | July 6, 2012<br><br>reviews.lenovo.com | Sometimes [the IdeaPad U310] connects to my wireless network and sometimes it doesn't. All my other devices work fine so its just this notebook. Really not cool! I have been on with Tech Support 3 times and have gotten three different answers that haven't worked. Tried to return it within the 21 day return policy, but now its too late only because I was trying all the unsucessful troubleshooting. Now I am stuck with this computer . . . Wish I could just return it at this point and get a refund. |
| | July 14, 2012<br><br>forums.lenovo.com | I have the same wifi problem like everybody else , except i have a u410 with broadcom bcm94313 [Wi-Fi Adapter]. I found out that the bios is whitelisted, so [the IdeaPad Notebooks] only accept[] certain [Wi-Fi] cards, but apparently even if you change the card there will be no improvement since other people with intel [and] atheros [Wi-Fi Adapters] have the same problem. It seems to be a hardware problem, because it is not possible that all cards from different brands have the same issue.<br><br>One thing is for sure: Never lenovo/ibm again, first and last time! It is frustrating to pay a lot of money for a brand new machine and then to have this kind of problems! I mean come on, don't you even test them before you put them on the market?! . . . |
| | July 19, 2012<br><br>forums.lenovo.com | Same problem here. Just bought U310 on Tuesday (7/17) and the Wifi is really slow. I have to keep it hardwired to my router to get acceptable speed. That's OK for today, but I'll be traveling in a few days and need this fixed. |
| | July 19, 2012<br><br>forums.lenovo.com | I got the same problem in wifi connection: The signal up and down continuously by time and I found hard to load a webpage.<br><br>Sometimes I got a suddenly disconnected from network without reason and it takes too much of time as well to reconnect again. |
| | July 19, 2012<br><br>forums.lenovo.com | Numerous tests confirm that changing the [Wi-Fi antenna] wire does not work. . . .<br><br>Swapping antenna wires does NOT work, tried it when changing |

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

| | | SSD. (posted this earlier.) It actually makes the connection worse. |
|---|---|---|
| 1 | July 19, 2012<br><br>forums.lenovo.com | Changing the internal [Wi-Fi Adapter] card won't help, as people with different cards have the same problems (you can find many experiences in the topic mentioned above). |
| | July 23, 2012<br><br>hardwarezone.com | Lenovo U410 and U310 series having serious Wireless connection issue, it is not wireless card, not your router compatibility and also not your driver and settings issue. It is the design issue. Lenovo has no fast way to resolve it, and you can only use it very close to your wireless router. |
| | Aug. 1, 2012<br><br>forums.lenovo.com | I also feel ripped off about the fact that you were made aware of this problem on this website a month ago. Yet nowhere else is the bad wifi issue mentioned. |
| | Aug. 3, 2012<br><br>forums.lenovo.com | From the looks of it is[] much more likely a serious hardware-related problem, requiring hardware redesign (e. g. include a different antenna, re-wire an interrupt controller, physically relocate a component inside the case, attach it to a different data bus system).<br><br>From an engineering standpoint this means redesigning the product, possibly including the internal PCB, re-testing, re-applying for certification (since the product changed), re-estimating material costs, possibly re-negotiating with suppliers, redesigning the production lines at the factory, and pulling back, trashing and re-shipping pretty much every unit sold. . . . |

## Testing Confirms the Presence of the Wi-Fi Defect

36.    The fact that a design defect renders all of the Lenovo U Series Computers unable to connect to Wi-Fi networks or attain Wi-Fi data transmission/reception speeds sufficient to allow the computer's user to engage in Internet browsing when the Lenovo U Series Computers are within the range of a

13      2ND AMENDED CLASS ACTION COMPLAINT

wireless Wi-Fi router has been confirmed by testing.

37.    To determine the presence of the Wi-Fi Defect, the Lenovo U Series Computers were tested to measure the amount of time necessary for the Lenovo U Series Computers (Test Computer) to receive a file transmitted from another computer (Source Computer) across a Wi-Fi communication link using the standard transmission and reception capabilities of the respective computers' factory-installed Wi-Fi electronics.   To eliminate the potential impact of external factors on test results, both the Source Computer and the Test Computer were disconnected from all other Wi-Fi sources in the test facility, and all Wi-Fi Networks in the test facility were disabled. In addition, all computer security software monitoring tools were disabled on both the Source Computer and the Test Computer.

38.    The test employed the establishment of a dedicated wireless communication link solely between the Source Computer and the Test Computer. The ability to create this type of link is a basic capability of Windows based computers and was performed using entirely Windows based network features and commands. Once the dedicated wireless communication link between the computers is established, it is then possible to see folders on the hard drive of the Source Computer from the Test Computer.   A file comprised of a 175 MB video in a common (.avi) file format that is approximately 10 minutes in duration (the "File") was placed in a folder on the Source Computer for test purposes.   This File was then copy and pasted, using common Windows commands executed on the Test Computer, from the folder on the Source Computer across the dedicated wireless communication link and onto the desktop of the Test Computer.   Both the amount of time necessary for the Test Computer to receive the File transfer, and the rate of speed at which the data transfer across the dedicated wireless communication link occurred were measured and recorded to determine the transfer time and transfer speed of the Test Computer's Wi-Fi reception capability.

39.    The test described above was conducted using the following computers:

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

(i)  a Lenovo U310 computer manufactured **prior to** July 23, 2012[1]:

(1) equipped with the drivers that were originally installed at the time the U310 was purchased, which was tested at 35 feet from the Source Computer;

(2) equipped with the updated drivers available as of May 2013 obtained from Lenovo's online Support Service, which was tested at 35 feet from the Source Computer;

(3) equipped with the drivers that were originally installed at the time the U310 was purchased, which was tested at 50 feet from the Source Computer; and

(4) equipped with the updated drivers available as of May 2013 obtained from Lenovo's online Support Service, which was tested at 50 feet from the Source Computer;

(ii)  a Lenovo U310 computer manufactured **after** July 23, 2012 equipped with the drivers that were originally installed at the time the U310 was purchased, which was tested at 50 feet from the Source Computer;

(iii)  a Lenovo U410 computer manufactured **after** July 23, 2012 equipped with the drivers that were originally installed at the time the U410 was purchased, which was tested at 50 feet from the Source Computer;

(iv)  a Toshiba  Satellite U845t-S4165 (the "Toshiba Ultrabook") equipped with the drivers that were originally installed at the

---

[1]  According to Mark Hopkins, Lenovo's Program Manager, Lenovo Social Media Services, all U310 and U410 model computers manufactured **after** July 23, 2012 incorporate a "design update"and are purportedly "not affected" by the Wi-Fi Defect that plagues all of the U310 and U410 model computers manufactured **prior** to July 23, 2012.  In order to test whether the U310 and U410 computers manufactured after July 23, 2012 continued to be plagued by the Wi-Fi Defect, U310 and U410 computers manufactured after July 23, 2012 were tested.

2ND AMENDED CLASS ACTION COMPLAINT

KIESEL  LAW LLP
Attorneys at Law
Beverly Hills, California

time the Toshiba Ultrabook was purchased, which was tested:

(1) at 35 feet from the Source Computer[2]; and

(2) at 50 feet from the Source Computer.

40.    Presented in Figures 4 - 7 below are the test results, along with a brief description of how the defect is demonstrated in each of these data traces.

41.    Depicted in Figure 4 below are the "transfer times" and "transfer speeds" for:

(i)    the Lenovo U310 computer manufactured **prior to** July 23, 2012 equipped with the drivers that were originally installed at the time the U310 was purchased, tested at 35 feet from the Source Computer;

(ii)    the Lenovo U310 computer manufactured **prior to** July 23, 2012 equipped with the drivers that were available at the Lenovo online Support Service to be downloaded and installed in May 2013, tested at 35 feet from the Source Computer; and

(iii)    the Toshiba Ultrabook equipped with the drivers that were originally installed at the time the Toshiba Ultrabook was purchased, also tested at 35 feet from the Source Computer.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

---

[2]    A Toshiba Satellite U845t-S4165 was selected as a peer computer to the U310 and U410 for testing purposes because, like the U310 and U410, the Toshiba is an Ultrabook computer equipped with the same Intel® Centrino® Wireless-N2200 Wi-Fi adapter that the U310 and U410 are equipped with.

2ND AMENDED CLASS ACTION COMPLAINT

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California



Figure 4

42.    As demonstrated by the data traces in Figure 4 above, when tested using the test method described above at 35 feet from the Source Computer, the Toshiba Ultrabook received the File in 114 seconds, or 1.9 minutes, while the Lenovo U310 computer manufactured *prior to* July 23, 2012 equipped with original drivers, received the File in 829 seconds, or 13.8 minutes.

43.    The fact that the Lenovo U310 equipped with original drivers took *715 seconds* or *11.9 minutes,* or *627.19%* longer to receive the File than it took the Toshiba Ultrabook computer equipped with the exact same Intel® Centrino® Wireless-N2200 Wi-Fi adapter, when both computers were located 35 feet from the Source Computer, evidences the existence of the Wi-Fi Defect in the Lenovo U310.

44.    The data traces in Figure 4 above demonstrate that, when tested at 35 feet from the Source Computer, the Lenovo U310 computer manufactured *prior to*

July 23, 2012 equipped with updated drivers, completely *failed* three repetitive attempts to connect to the Wi-Fi Source. Because the Lenovo U310 computer failed to connect, transfer of the File via the dedicated wireless communication link could not be accomplished.

45.   Depicted in Figure 5 below are the "transfer times" and "transfer speeds" for:

(i)   the Lenovo U310 computer manufactured *prior to* July 23, 2012 equipped with the drivers that were originally installed at the time the U310 was purchased, tested at 50 feet from the Source Computer;

(ii)   the Lenovo U310 computer manufactured *prior to* July 23, 2012 equipped with the drivers that were available at the Lenovo online Support Service to be downloaded and installed in May 2013, tested at 50 feet from the Source Computer; and

(iii)   the Toshiba Ultrabook equipped with the drivers that were originally installed at the time the Toshiba Ultrabook was purchased, also tested at 50 feet from the Source Computer.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

2^(ND) AMENDED CLASS ACTION COMPLAINT



KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Figure 5

46.     As demonstrated by the data traces in Figure 5 above, when tested using the test method described above at 50 feet from the Source Computer, the Lenovo U310 computer manufactured *prior to* July 23, 2012 equipped with original drivers, completely *failed* threerepetitive attempts to connect to the Wi-Fi Source, while the Toshiba Ultrabook received the File in 190 seconds, or 3.2 minutes.

47.     The fact that the Lenovo U310 equipped with original drivers failed to connect when tested only 50 feet away from the Source Computer, evidences the existence of the Wi-Fi Defect in the Lenovo U310.

48.     The data traces in Figure 5 above demonstrate that, when tested using the test method described above at 50 feet from the Source Computer, the Lenovo U310 computer manufactured *prior to* July 23, 2012 equipped with updated drivers, again completely *failed* three repetitive attempts to connect at all to the Wi-Fi

19      2^ND^ AMENDED CLASS ACTION COMPLAINT

Source, while the Toshiba Ultrabook received the File in 190 seconds, or 3.2 minutes.

49.     Depicted in Figure 6 below are the "transfer times" and "transfer speeds" for:

(i)     the Lenovo U310 computer manufactured **after** July 23, 2012 equipped with the drivers that were originally installed at the time the U310 was purchased, tested at 50 feet from the Source Computer; and

(ii)    the Toshiba Ultrabook equipped with the drivers that were originally installed at the time the Toshiba Ultrabook was purchased, also tested at 50 feet from the Source Computer.



Figure 6

2ND AMENDED CLASS ACTION COMPLAINT

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

50.    As demonstrated by the data traces in Figure 6 above, when tested using the test method described above at 50 feet from the Source Computer, the Lenovo U310 computer manufactured **after** July 23, 2012 equipped with original drivers, received the File in 432 seconds, or 7.2 minutes, while the Toshiba Ultrabook received the File in 190 seconds, or 3.2 minutes.

51.    The fact that the Lenovo U310 manufactured with Lenovo's "hardware design change" took **242 seconds** or **4 minutes,** or **127.36%** longer to receive the File than it took the Toshiba Ultrabook computer equipped with the exact same Intel® Centrino® Wireless-N2200 Wi-Fi adapter when both computers were located 50 feet from the Source Computer, evidences the continued existence of the Wi-Fi Defect in the Lenovo U310 manufactured **after** July 23, 2012, despite Lenovo having purportedly implemented a hardware design change after July 23, 2012.

52.    Depicted in Figure 7 below are the "transfer times" and "transfer speeds" for:

(i)    the Lenovo U410 computer manufactured **after** July 23, 2012 equipped with the drivers that were originally installed at the time the U410 was purchased, tested at 50 feet from the Source Computer; and

2ND AMENDED CLASS ACTION COMPLAINT

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

(ii)    the Toshiba Ultrabook equipped with the drivers that were originally installed at the time the Toshiba Ultrabook was purchased, also tested at 50 feet from the Source Computer.





Figure 7

53.    As demonstrated by the data traces in Figure 7 above, when tested using the test method described above at 50 feet from the Source Computer, the Toshiba Ultrabook received the File in 190 seconds, or 3.2 minutes, while the Lenovo U410 computer manufactured **after** July 23, 2012 equipped with original drivers, received the 175 MB video in 652 seconds, or 10.9 minutes.

54.    The fact that the Lenovo U410 equipped with original drivers took 462 **seconds** or **7.7 minutes**, or **243.16%** longer to receive the File than it took the Toshiba Ultrabook computer equipped with the exact same Intel® Centrino®

Wireless-N2200 Wi-Fi adapter to receive the File when both computers were located 50 feet from the Source Computer, evidences the continued existence of the Wi-Fi Defect in the Lenovo U410 manufactured *after* July 23, 2012, despite Lenovo having purportedly implemented a hardware design change after July 23, 2012.

### C.    The Wi-Fi Defect and Defendant's Omission Thereof Is Material

55.    As demonstrated herein, the Wi-Fi Defect is material because the Wi-Fi Defect renders all of the Lenovo U Series Computers unable to connect to Wi-Fi networks, or attain Wi-Fi data transmission/reception speeds sufficient to allow users of the Lenovo U Series Computers to engage in Internet browsing when the Lenovo U Series Computers are within the range of a wireless Wi-Fi router.

56.    Additionally, the Wi-Fi Defect is material because the Wi-Fi Defect manifests itself during the warranty period, as was the case with Plaintiffs' Lenovo U Series Computers.

57.    Furthermore, in light of the fact that the Wi-Fi Defect: (i) renders the Lenovo U Series Computers unable to connect to Wi-Fi networks, or attain Wi-Fi data transmission/reception speeds sufficient to allow users of the Lenovo U Series Computers to engage in Internet browsing when the Lenovo U Series Computers are within the range of a wireless Wi-Fi router and (ii) manifests itself during the warranty period, Defendant's omission of the existence of the Wi-Fi Defect is material.   The existence of the Wi-Fi Defect is information that a reasonable consumer would want to know when deciding whether to purchase a Lenovo U Series Computer.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

**Lenovo Knew of, But Failed To Disclose, the Existence**
**of the Wi-Fi Defect In the Lenovo U Series Computers**

**A.    Lenovo Knew of the Existence of the Wi-Fi Defect**
**Because It Operated and Moderated Numerous Online**
**"Forums" On Lenovo's Website Where Class Members**
**Posted Scores of Complaints Concerning the Wi-Fi Defect**

58.    The testing described above confirms what Lenovo has long known, but refused to admit – namely that all of the Lenovo U Series Computers contain the Wi-Fi Defect, *i.e.*, are defective because of a design defect in the Lenovo U Series Computers that renders these computers unable to connect to Wi-Fi networks, or attain Wi-Fi data transmission/reception speeds sufficient to allow the computer's user to engage in Internet browsing when the Lenovo U Series Computers are within the range of a wireless Wi-Fi router.

59.    Lenovo provides the opportunity for people with interest in its products to share knowledge and information about Lenovo's products online on a portion of Lenovo's website called the "Lenovo Community."   This portion of Lenovo's website, which is moderated and reviewed by Lenovo, itself, provides an opportunity for interested participants to create online "Forums" devoted to special topics of interest to users of Lenovo's products.  Other Lenovo users can, and do, participate in the online conversation by posting comments to any of the online Forums in which they have an interest.  Forums of interest to a wide variety of Lenovo users quickly develop into a large thread of postings related to the topic of the Forum.

60.    Evidencing both the severity and widespread nature of the Wi-Fi Defect in the Lenovo U Series Computers is the fact that numerous Class Members created online Forums within the "Lenovo Community" to discuss the Wi-Fi defect within just *days* after Lenovo U310 and U410 Laptops were first sold in the United States.

61.    For example, on July 5, 2012, the owner of a U310 created a Forum in the "Lenovo Community" titled, "*My New U310 Gives Really Low Speeds on*

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

*WiFi.*"  This Forum currently has 726 postings on this thread.

62.    Just three days after angry Class members had initiated the ""*My New U310 Gives Really Low Speeds on WiFi*" Forum on the "Lenovo Community" portion of Lenovo's website, a Lenovo employee moderating this Forum implicitly acknowledged the Wi-Fi Defect was caused by a hardware design issue in the Lenovo U Series Computers and, on July 8, 2012, posted "Message 11" in which Lenovo *admits* in relevant part,

> *I understand how frustrating Wifi issues can be . . . .  After reading through your threads its really hard to pin point the cause* . . . . It can be either Software or Hardware related, *but based on your thread* seeing that some of you have tried the suggestion on the web *its leading me to suspect that it could be hardware*.

(Emphasis added).

63.    On July 10, 2012, a Lenovo employee moderating the ""*My New U310 Gives Really Low Speeds on WiFi*" Forum on the "Lenovo Community" posted Message 25, in which the Lenovo employee requested that Class members provide detailed information that would enable Lenovo Engineers to identify the model and serial numbers of the Lenovo U Series Computers plagued by the Wi-Fi Defect.

64.    On July 11, 2012, a Lenovo employee moderating the "*My New U310 Gives Really Low Speeds on WiFi*" Forum on the "Lenovo Community" posted Message 33, in which the Lenovo employee informs Class members that he has "*informed [Lenovo's Engineering] teams and [is] now awaiting feed back*." (Emphasis added.)

65.    On July 12, 2012, Mark Hopkins, Lenovo's Program Manager, Lenovo Social Media Services, posted Message 39 on the "*My New U310 Gives Really Low Speeds on WiFi*" Forum on the "Lenovo Community" in which Lenovo requested that Class members provide Lenovo with information concerning the "*connectivity speed you are experiencing*," identify the Wi-Fi Adapter installed in their Lenovo U Series Computers, and results obtained if the Class member connected to the same

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1 | router via wired ethernet.

2 |     66.   On July 16, 2012, Lenovo's employee Mark Hopkins posted Message

3 | 72 in which Lenovo informed Class members on the "*My New U310 Gives Really*

4 | *Low Speeds on WiFi*" Forum,

> our engineering team is making progress on this issue . . . . Until we
> have an ***official fix***, efforts to bombard service or agitate with local
> servicers are not going to resolve the problem.
>
> Until a ***fix is released*** and a formal tip issued, calling different call
> centers in different countries / regions will likely generate different
> responses as the agents attempt to do problem determination.
>
> I understand that some of you have been posting here for a couple of
> weeks, but it does take a bit of time to test, gather enough information
> to ***determine the root cause and then develop a field plan***. Drivers can
> often take several weeks to develop and test - the ones being offered in
> this thread may improve the performance, ***but are probably not a
> solution for everyone***.
>
> . . . . we are working to get this resolved.

(Emphasis added).

    67.   The following day, Lenovo's Mark Hopkins posted Message 81 in which Lenovo stated in relevant part,

> We are working on the issue - ***until there is a fix released,*** servicers &
> dealers will not have specific instructions on this and would either just
> do all the normal problem determination, or try replacing parts with the
> same level of parts. ***Neither of these strategies is likely to
> conclusively resolve the problem.***
>
> ***Likewise, I'm not sure that just replacing the system will either.***

(Emphasis added).

    68.   On July 20, 2012, a Lenovo employee moderating the "*My New U310 Gives Really Low Speeds on WiFi*" Forum on the "Lenovo Community" posted Message 110 which states in relevant part,

2ND AMENDED CLASS ACTION COMPLAINT

*I understand this issue has gotten very intense and sparked tremendous upset among all system owners. On behalf of Lenovo we sincerely apologize for the inconvenience caused. This case has been highlighted to the respective teams and management and currently we are working towards a resolution.* Currently I am unable to give an ETA, however, we are also working round the clock to make sure this is monitored so we can get the proper updates. Rest assures we have not forgotten about this and have not let any hanging on this matter.

Please do bear with us as we update soon on the development. Again*, I apologize for the inconvenience caused and hope to post a resolution here soon*.

(Emphasis added).

69.   On July 24, 2012, Lenovo's Mr. Hopkins posted Message 157 in which Lenovo informed Class members on the "*My New U310 Gives Really Low Speeds on WiFi*" Forum, "*We have made progress on this, and we should be able to provide an official update shortly*.  I understand the position of those who could not wait, and elected to return their systems.  I can assure you that this issue does have our full attention."  (Emphasis added).

**B.    Lenovo Is Forced To Admit The Existence of the Wi-Fi Defect, Claims To Have Instituted Both A Manufacturing Design Change and A Hardware Service Update, But Fails To Disclose The Fact That The Purported "Fixes" Do Not Remedy The Wi-Fi Defect**

70.   On August 8, 2012, Ultrabook News published an article entitled, "Lenovo IdeaPad U310/U410 WiFi Issues" which states in relevant part:

*We've actually had a chance to get our hands on two U310's for testing and both have exhibited the problem. . . .*

*The issue is with WiFi speed and range.  The U310 seems to have exceedingly short range, unable to find a connection where other devices have no problem.  When it is close enough to* the access point

[i.e., *a wireless Internet router,]* *to get a connection, downloads speeds are significantly slower than other devices*. . . .  A quick test reveals that the U310 download/upload to be 7.81 Mbps / 12.72 Mbps, while the [ASUS Zenbook] UX31E [Ultrabook that the U310 was tested against] is pulling down 29.25 Mbps / 16.79 Mbps at the same distance from the router.

71.  Following publication of the negative Ultrabook News article on August 8, 2012, Lenovo was finally forced to publicly admit the existence of the Wi-Fi Defect the very next day.  However, at the same time Lenovo admitted the existence of the Wi-Fi Defect, the Company also proclaimed that it had identified both retrospective and prospective "fixes" for the Wi-Fi Defect.  Lenovo did so in Message 259 potsed by Lenovo's Mr. Hopkins on the "*My New U310 Gives Really Low Speeds on WiFi*" Forum,

*During July, Lenovo received customer reports of lower than expected wireless performance on some U310 and U410 IdeaPad systems*.  As a result, *we extensively tested sample U310 and U410 models and a design update was implemented to ensure a more consistent wireless performance in all customer environments.  U310 and U410 models manufactured after July 23, 2012 incorporate these updates and are not affected.  Customers with  U310 and U410 models manufactured  prior to July 23 who have experienced lower than expected wireless performance should contact Lenovo* support to schedule service.

(Emphasis added).

72.  Later that same day, in response to Class member inquiries on the "*My New U310 Gives Really Low Speeds on WiFi*" Forum, Lenovo's Mr. Hopkins posted Message 264 in which Lenovo admitted in relevant part, "[*T]his is a hardware update and unfortunately is not something that the customer can do themselves - it has to be implemented through service*."  (Emphasis added).

73.  Even later in the day on August 9, 2012, Mr. Hopkins posted Lenovo's last Message of that day when he posted Message 276 in which Lenovo stated in relevant part,

28        2ND AMENDED CLASS ACTION COMPLAINT

*[i]If you have slow wifi performance compared to other devices that you have, and are using at the exact same location, and if your performance improves dramatically when you move to very close proximity to the router, then I would suggest you contact service - the update we have now should resolve.*

(Emphasis added).

74.     On August 14, 2012, Lenovo's Mr. Hopkins posted Message 318 on the "*My New U310 Gives Really Low Speeds on WiFi*" Forum in which Lenovo again admitted, "*This is a hardware fix*, and the specifics vary a bit between the U310 and U410 models. *No, it is not as simple as changing one screw although I understand why in some cases that might have improved the results a bit*. No, we are not changing the systemboard - no reason to re-image the system." (Emphasis added).

75.     On August 14, 2012, Lenovo's Mr. Hopkins posted Message 318 on the "*My New U310 Gives Really Low Speeds on WiFi*" Forum in which Lenovo admits,

As we are a global company, the customers here in the forum represent a global customer base, we cannot make blanket statements about refunds / returns etc because individual state, country laws, and terms and conditions provided by the individual reseller / point of purchase can apply.

*For competitive reasons among others, there will be limits to which we can explain root cause, and corrective actions of fixes. It was a hardware issue*. I've previously provided guidance that *systems built after 7/23 include the updated design*, and that existing units can be updated through service and we stand ready to do so.

(Emphasis added).

**Lenovo's Service Procedure Is Inadequate
Because It Does Not Remedy the Wi-Fi
Defect In the Lenovo U Series Notebook Computers**

76.     While Lenovo claimed that it had identified and implemented "fixes" that remedied the Wi-Fi Defect in Lenovo U Series Computers manufactured both prior to, and after, July 23, 2012, Lenovo failed to disclose that neither of these fixes actually remedy the Wi-Fi Defect and, therefore were and are inadequate.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

77.     While Lenovo has been unwilling to publicly state the precise nature of its purported "fixes" for the Wi-Fi Defect other than to state that it is a "hardware fix" that "involves some RF Shielding," the continuing onslaught of complaints by Class members, industry publications and testing of the Lenovo U Series Computers which were manufactured after July 23, 2012 confirm that the "fixes" that were purportedly implemented by Lenovo do not cure the Wi-Fi Defect in either the Lenovo U Series Computers manufactured prior to, or after, July 23, 2012.

78.     Moreover, despite Lenovo's knowledge that these fixes fail to remedy the Wi-Fi Defect, Lenovo has nevertheless continued to sell the Lenovo U Series Computers with full knowledge that all of these computers continue to be plagued by the Wi-Fi Defect.

79.     The fact that Lenovo's purported fixes are inadequate and fail to remedy the Wi-Fi Defect is clear from the Class member complaints that continued to roll in after the August 9, 2012 announcement.  The following are examples of such Class member and industry publication complaints:

| Date and Source | Consumer Complaint |
| --- | --- |
| Aug. 21, 2012<br><br>ultrabooknews.com | I purchased a U410 . . . It's now the slowest laptop in the house . . . . **The laptop box shows a build date of 7/27/12. Been trying to troubleshoot the issue after Lenovo support tried to blame the router** . . .  4 other laptops in the house that have no wifi issues . . . . (Emphasis added). |
| Aug. 28, 2012<br><br>ultrabooknews.com | **I too trusted in Lenovo's assurance that the post July 23rd build date machines would be fixed. NOT THE CASE! Mine is July 27th and has the same issues.** Horribly slow unless you're right next to the router, even then it's not as fast as it should be. **With full signal strength speed tests put it at best at 5% the speed of other laptops sitting right next to it.** (Emphasis added). |

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

2ND AMENDED CLASS ACTION COMPLAINT

| | | |
|---|---|---|
| Sept. 12, 2012<br><br>forums.lenovo.com | [Addressed to] Mark [Hopkins, Lenovo's Program Manager] –<br><br>[I'm] not using any standard "benchmark".  **My method was this: tried to use internet, didn't work. all the same problems others have mentioned (dropped signal or pages don't load - actually time out - even though [wireless Internet router's] signal strength shows excellent).**  try to use speedtest.net to test, but couldn't maintain a connection long enough to do the [Internet speed]test, and **this is sitting on sofa less than 10 ft from g router  with no walls in between**.  disconnect, reconnect, works for a few seconds only, then the same. Installed all important and most recommended/option updates through windows update, same issues.  used different laptop, no problem. (Emphasis added). | |
| Sept. 14, 2012<br><br>reviews.lenovo.com | **[T]here is a major wireless issue where the computer either gets a very weak signal compared to other computers, or drops the wireless frequently. Unfortunately since most people use wireless almost exclusively these days, this is a major issue. I have trouble just staying connected to very basic websites which are mostly text.** This issue has been mentioned hundreds of times on the lenovo support forums, but it seems as of now there is no fix and no recall. **I would not recommend this computer.** (Emphasis added). | |
| Sept. 18, 2012<br><br>ultrabooknews.com | **My new U410 that was built on Sep 3, 2012 had WIFI problem the day I received it.** The computer can see the network but keep trying to connect to WIFI. **Occasionally it can connect with limited access. This happens even when I am sitting next to the router. Lenovo technical support couldn't fix it after spending 2 hours remotely. Finally they admitted it that it is a known problem and asked me to send it back in for repair.** This is just unacceptable. I was on hold for 1 hour trying to reach someone at Lenovo for return. Keep hearing the message that someone will answer the phone, but no one ever picked up the phone. I will never buy from Lenovo again. (Emphasis added). | |
| Sept. 30, 2012 | I bought a U410 after usung a U350 for 18 months. I have the | |

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

| | |
|---|---|
| ultrabooknews.com | same wireless connection problems as the other users reported. From the same distance from the router the U350 reported an excellent signal whereas the U410 reported poor. This is obviously a retrograde step in Lenovo's development and it negates all the excellent aspects of the new ultrabook. |
| Oct. 3, 2012<br><br>forums.lenovo.com | **Same issue with my U410 MFG date 9/14**. Connection goes from 0 kbps [kilobits (1,000 bits) per second] to 50[k]bps. . . . .<br><br>**I'm unable to watch hulu or netflix**. (Emphasis added). |
| Oct. 3, 2012<br><br>forums.lenovo.com | **My laptop was manufactured on Sept 9, 2012. . . .**<br><br>**There is very very limited connectivity for a very short time before it drops**. This is currently the same network I run my desktop PC on wirelessly. Iphones, tablets, and everything else on the network runs flawlessly, just this laptop will not connect . . . . |
| Oct. 7, 2012<br><br>Amazon.com | The internet at my place is a 10[mbps] plan and works well on all others computers and smartphones I have, however, my U410 shows [only] 0.3-0.4mb download speeds even if I'm right close to my router!! That is unacceptable!<br><br>Lenovo says it's a hardware [issue], but how does that work if they can't fix the problems themsel[ves]?? This company has scre*&^% over so many customers that I don't understand how they are still in business selling this notebook everywhere!<br>* * *<br>[A]ll U410/U310 manufactured after 7/23/2012 STILL have the same wifi issue, do not trust the administrators from Lenovo! (Emphasis added). |
| Oct. 21, 2012<br><br>ultrabooknews.com | System sucks when it comes to Wifi. . . . We have to manually configure lenovo. Overall, this machine looks good, but performance sucks so badly!! i hope i can return it! |
| Oct. 31, 2012 | **I just bought a brand new u410 and updated to the lates[t] wireless adaptor driver. I have the same issue. My other** |

2ND AMENDED CLASS ACTION COMPLAINT

| | | |
|---|---|---|
| 1 2 3 | ultrabooknews. com | **machines (much older) don't have any issue – the [Wi-Fi] range [i.e., the distance by which the IdeaPad can achieve wireless connectivity] is very limited really shocking!!!** |
| 4 5 6 7 8 9 10 11 12 13 14 15 | Nov. 10, 2012 ultrabooknews. com | I received an u410 win8 two days ago from Lenovo's site. **Build date is beginning of November. Wifi is absolute garbage.** getting 1/10 the speed of every other wifi device in my house and office. wifi drops quite often. Three calls to Lenovo involved multiple bogus [Wi-Fi Adapter] dr[i]ver replacements, [etc.] the problem looks clearly to be hardware and [probably] design related [because my Wi-Fi Internet speed goes] from a terrible .7[megabits per second (Mbps)] two feet from ANY 2.4 n [wireless Internet router], to an absurd .4[Mbps] once I get ten feet away. I bought from them, called them within hours, and now they are saying 15% resto[]ck to take it back. I will be first in line for a class action. **their own techs admit the wifi problems were NEVER fixed if not made worse.** (Emphasis added). |
| 16 17 18 19 20 21 22 23 24 25 26 27 | Nov. 18, 2012 forums.lenovo. com | FACT: **Lenovo Fall 2012 builds have WORSE Wifi issues than pre July builds. . . .** **My build is November 2012.  Wifi performance is terrible**. On top of the router my U410 gives me about 1/4 the speeds of any other wireless N device on my home [Wi-Fi] Network. Outside the same room as the [wireless Internet] router my U410 will give me 1/10th[,] 1/50th [of the wireless Internet Speed] or simply drop connection al together. I can take my wife's Ipad and walk three rooms away, then out of the house and 100' to the back of the yard and get  good N speeds. <u>I can do the same thing with ALL our laptops and phones, including laptops that are much older and much much cheaper.</u> (Emphasis added). |
| 28 | (One consumer's | **I have a u410 and the wifi is pretty bad. My [wireless Internet] network is extremely well tuned with a ASUS RT-** |

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

| | | |
|---|---|---|
| 1 | comments) | **N56U [wireless Internet router] . . . and the wifi on the U410 . . . all but dies in the next room.** |
| 2 | Nov. 21 – Nov. | * * * |
| 3 | 24, 2012 | Sitting on top of router I get a absolute maximum of 3[Mbps or 1,000,000 bits per second], I can see that go through enormous |
| 4 | slickdeals.net | peaks and drops during the transfer so I average about 1[Mbps]. |
| 5 | | In the next room from router with normal wallboard wall I get between 200 to 400Kbps [kilobits per second or 1,000 bits per |
| 6 | | second]. That is transferring from my gigabit server. **My dell** |
| 7 | | **from work gets 40Mbps wireless on the same network** |
| 8 | | * * * |
| 9 | | **[S]cores of computer and network professionals reporting extremely bad results with Sept, October and November** |
| 10 | | **build U410's? Lenovo can't fix it. . . .  The U410 has** |
| 11 | | **universally bad [Wi-Fi], and the lates[t] builds have the same issue**. There is a 70 page thread on Lenovos forums which |
| 12 | | includes quite a few people who work in networking. |
| 13 | | * * * |
| 14 | | **The problem with the newest build [of IdeaPad Notebooks], with the advanced 2230 [I]ntel [Wi-Fi Adapter] is actually** |
| 15 | | **worse than the pre July [23, 2012 IdeaPad Notebooks]. It is a** |
| 16 | | **universal problem.** (Emphasis added). |
| 17 | | * * * |
| 18 | | **I made three long calls to . . . Lenovo. I have two other [computers] both getting 10x to 20x [faster] speeds.** |
| 19 | Nov. 25, 2012 | When im online and have multiple pages open some dont load. |
| 20 | | ill click reload and nothing happens. . . . i have 30mbps |
| 21 | facebook.lenov | [broadband Internet service]. ive tried to use the support page |
| | o.com | and self diagnose but it dont help. **i had an acer netbook that** |
| 22 | | **was worth 1/4 the price of this lenovo and no where near the** |
| 23 | | **power or memory and it handled multiple pages way better.** |
| 24 | | **im at a loss for words when a $250 acer netbook is better** |
| | | **than a $900 lenovo ultrabook. PLEASE HELP!!** |
| 25 | | * * * |
| 26 | | i called them. they had me install new wireless drivers. . . . i dont |
| | | see a difference. **im reading TONS of people having the same** |
| 27 | | **problem with this model**. i really hope its fixed cause i love the |
| 28 | | computer besides the wifi problem |
| | | * * * |

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

34     2ND AMENDED CLASS ACTION COMPLAINT

| | | |
|---|---|---|
| 1 | | **Manufactured date is 7/28/2012.** (emphasis added) |
| 2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11 | Dec. 3, 2012<br><br>Amazon.com | [T]here is a design flaw in terms of the wi-fi. I was aware of an extremely common wi-fi issue coming from Lenova U series (includes this U410 and U310). People would complain that they have either 1) a disconnecting wi-fi internet problem 2) low signals until very close to wi-fi access. . . . **[S]ince the casing of the laptop is almost 100% thin aluminum, the metal casing is reducing the wi-fi strength.** In other words, the wi-fi adaptor is like your cell phone trying to text inside a metal elevator casing reducing the signal or losing it frequently. Also like when you go through a tunnel. . . . **[T]he design flaw is because they are almost mimicking the mac's metal chassis and they failed mimicking on one key part... like allowing an opening for the wi-fi antenna....** (Emphasis added). |
| 12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24 | Dec. 4, 2012<br><br>forums.lenovo.<br>com | The N speeds are the issue. Real world N speeds the u410 and U310 should achieve are more like 80mbps. Maxing at 20mps, (2MB/s) is slower than any modern laptop in this price range.<br>* * *<br>**What a single band "N" should see real world: 80 megabits per second, written also as "80Mbps", which is equal to 8 to 10 Megabytes per second, written as "8MB/s" . . . .**<br>* * *<br>**My tests of two laptops both running N showed my Nov. 2012 build U410 with Intel Centrino 2230 [Wi-Fi Adapter] indicated pretty bad N speeds, about half (max) to 1/20th of what several others laptops were doing at same distances from router. At times I was getting 250kbps which is insanley slow.** My network is well tuned, and I was able to test against four or five other devices one several differn networks (home, work, two coffee shops and a neighbor's, all with different routers.) . . . . (Emphasis Added). |
| 25<br>26<br>27<br>28 | Dec. 4, 2012<br><br>forums.lenovo.<br>com | DO NOT BY LENOVO PRODUCTS!!!<br><br>**I just bought a U310 in November- mfg date September 2012. I am VERY UNHAPPY with wireless performance. . . . they are shamelessly lying to consumers about WiFi performance. I suggest a class action law suite against LENOVO for fraud** |

KIESEL LAW LLP<br>Attorneys at Law<br>Beverly Hills, California

2ND AMENDED CLASS ACTION COMPLAINT

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

| | | - they know they are selling junk/defective WiFi cards. **I will NEVER by a LENOVO product again and want my money back for the U310 I bought!** (Emphasis added). |
|---|---|---|
| Dec. 13, 2012<br><br>ultrabooknews.com | | There is an antenna design/placement flaw WITH NO PROJECTED FIX!!! Lenovo is criminal in it's conduct, knowingly misrepresenting and selling a defective product. |
| Jan. 26, 2013<br><br>ultrabooknews.com | | Got an U410 – same issue. makes the U410 completely useless in the daily life! |
| Feb. 6, 2013 | | hello i have a new Ideapad u310 it comes with broadcom bcm4313, i tried installing the proprietary wl driver but then the wireless connections is painfully slow, and if i use the open source brcmsmac driver it doesn't seems to work (no wireless connections detected). |

80. The fact that the "fixes" announced by Lenovo fail to remedy the Wi-Fi Defect in Lenovo U Series Computers is also demonstrated by the test results presented in Figures 4-7 above.

**Lenovo Refuses to Provide a Proper Warranty Remedy**

81. The Lenovo Limited Warranty provides:

Lenovo warrants that each Lenovo hardware product that you purchase is free from defects in materials and workmanship under normal use during the warranty period. The warranty period for the product starts on the original date of purchase as shown on your sales receipt or invoice or as may be otherwise specified by Lenovo. The warranty period and type of warranty service that apply to your product are as specified in "Part 3 - Warranty Service Information" below. This warranty only applies to products in the country or region of purchase.

82. Throughout the Class Period Lenovo has refused to provide an effective remedy to Class members under its one-year express warranty, and implied

warranty, obligations.  As demonstrated by the experiences below, Lenovo repeatedly performed ineffective repairs that it knew would not remedy the Wi-Fi Defect or did not perform a repair at all, and refused to provide Class members with a non-defective Lenovo U Series Computers:

| Date and Source | Comments |
|---|---|
| Aug. 26, 2012<br><br>ultrabookne<br>ws.com | I actually sent my U310 back for warranty repairs for this problem about two weeks ago and **it came back from Lenovo with the exact same problem**. (Emphasis added). |
| Sept. 12, 2012<br><br>forums.leno<br>vo.com | Just got back my U310 from 2nd service attempt. Nothing has been done. Wifi is still sh*t. Thanks Lenovo for that aw[e]some support. |
| Sept. 13, 2012<br><br>forums.leno<br>vo.com | [Addressed to Lenovo Program Manager, Mark Hopkins] –<br>**I received a unit that was manufactured on 7/27/12, so it should have had the corrected hardware, but it did not. After spending over 10 hours on the phone and via remote access with tech support, they told me there was a hardware/software issue.**<br><br>**I asked for a hardware fix but Lenovo refused to make the fix for me, and only gave me the option to receive a replacement [IdeaPad Notebook] with the exact same specs.** So it seems you're getting the wrong info from [your superiors].  Units manufactured after 7/23/12 are definitely not 100% fixed. (Emphasis added). |
| Sept. 15, 2012<br><br>forums.leno<br>vo.com | I just got my u310 back [from Lenovo]… DO NOT BUY THIS LAPTOP.<br><br>**The issue is still there, the [Lenovo repair summary] report says they did something to my Bluetooth and exchanged the Bluetooth unit, nothing was done regarding my Wifi problem.** I had no issues with my Bluetooth. So it's basically the same, **I am** |

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

| | | |
|---|---|---|
| | | **writing this from my old system, the U310 is right next to it and I can't even open Google**. This is ridiculous!! I'm really at a loss here, what am I supposed to do with a faulty laptop? **I am writing my thesis in information science right now and I NEED a good internet connection.**<br><br>Lenovo, you cannot be serious about this. **I specifically said that I was dealing with Wifi issues and nothing was done about it** (Emphasis added). |
| | Oct. 7, 2012<br><br>Amazon.com | If you are doing your research before buying a new ultrabook, be advised that this particular model, as well as the U310 from Lenovo, both have MAJOR wifi issues. **The problem is so bad that even Lenovo doesn't know what to do. Just read the forums and you will find people all over the globe sending their machines for over 3 different times with no successful fix! (Emphasis added).** |
| | Nov. 16, 2012<br><br>reviews.costco.com | Extremely poor wifi . . . worst wifi of any laptop on the market . . . I had read reviews noting early wifi problems that had supposedly been fixed.<br><br>**I have 20 years experience at a professional level with networking. They have NOT been fixed.** Mine is a Oct 2012 build and Wifi is terrible. Test this against any wifi N or G network at 2.4 Ghz . . . . You will see the u410 has exceptionally poor range. This translates to VERY low speeds. **$500 and up laptops should be able to play netflix, and 720 Youtubes. Not only will the U410 not do this, but average web pages will load slowly. Use it outside the room with your router and it will be excruciating slow.**<br><br>My background is in networking. **The U410 wifi issue has nothing to do with drivers or anything Lenova can fix over the phone or even in repair, the antenna is engineered under the aluminum and reception is permanently hobbled.** . . . (Emphasis added). |
| | Nov. 18, 2012<br><br>forums.leno | I have the same problem. Mfg. date 9/14.<br>I've actually tried most of the things suggested. **I also sent it to Lenovo and wasted more than a week. My U410 came back yesterday.** |

38        2ND AMENDED CLASS ACTION COMPLAINT

| | | |
|---|---|---|
| | vo.com | **Problem did NOT go away. Here's what they wrote in the Repair action report. "Adjusted wi-fi antenna cables to help wireless connection. Passed all hardware and functional tests."** (emphasis added). |
| | Nov. 18, 2012<br><br>forums.leno vo.com | This is a HARDWARE problem. Not drivers, not different cards Lenovo has installed, not firewalls. It is from however they engineered card and antenna placement under the metal frame. [The] problem is present on ALL 410s and 310s.<br><br>Literally NO ONE reports good speeds. Yes, occasionally a brand new user will come on and say they do but they don't post actual speeds. To me that is suspect and could be shilling.<br><br>Doubt that? go inot a STORE and test one. I have tested about a dozen at various retail stores in the US (costco, Best Buy and others). You can run any number of "war driving signal stregth testers from a USB stick on the display models. **They ALL show poor wifi speeds, ALL 410 and 310 show high attentuation (signal loss) on RECEPTION** . The 410 will perform horribly [compared] to $300 and $400 [cheaper] laptops on the same table at the retailer. . . . (Emphasis in original).<br><br>*There is an attenuation issue that can't be fixed with any advice or anything at a [repair] place, it has to be re-engineered.*<br><br>If you don't care about speeds, if you don't intend to watch any media, or Youtube, and if you live in a one room flat with the router 5' from your Lenovo, you are ok. *Everyone else should stop . . . sending it in when it can't be fixed.*<br><br>Clean install, remove AV, Firewall, get latest drivers, crank roaming and power to whichever card is in your 410 or 310 and NOTHING will fix it. *Send it in and find after wasting a few weeks it isn't improved either.* (Emphasis added). |
| | Nov. 21, 2012 | Earlier today, I got my ten-day-old Ideapad U410 back from the Lenovo Repair Center, and the Wi-Fi issue persists. |

2ND AMENDED CLASS ACTION COMPLAINT

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

| Facebook.com/Lenovo | After spending 45 minutes on the phone with Lenovo Support, escalating my phone call to a supervisor, **I was told the Wi-Fi issue was not addressed during repair because it was never mentioned in the file Lenovo had about my laptop.**<br><br>**Now, that is a lie. Not only did I tell several Lenovo representatives on the phone that low W-Fi connectivity was the issue I was having with this laptop before I sent it in for repair, but I also wrote it on the form I placed in the box I put the computer in when I sent it back.**<br><br>Before today, I was almost willing to keep this faulty machine to spare myself the hassle of looking for a new one that fits my needs, but now **I am so outraged by Lenovo's utter disregard of this problem, of myself as a customer, and by their LYING about my issue**, that I am going to ask for a full refund.<br><br>**I am pretty sure what Lenovo is doing is illegal, and someone should sue them.**<br><br>Lenovo: rest assured that I will tell everyone on the campus I work on and all my colleagues and students (and I teach a lot of students), never to buy Lenovo. (Emphasis added). |
| Dec. 4, 2012<br><br>forums.lenovo.com | **As far as replacing the [Wi-Fi Adapter], As lenovo has tried at least three [Wi-Fi Adapter] in the U410/U310 line, including one that routinely gets excellent good marks in other laptops, the Intel [C]entrino 2230 [Wi-Fi Adapter], one has to wonder what card you would put in there?** (Emphasis added). |

**Plaintiffs and Class Members Were**
**Damaged As A Result of Lenovo's Misconduct**

83.     By its misconduct described herein, Lenovo has damaged Plaintiffs and all members of the Class and Subclass.   Lenovo sold the Lenovo U Series Computers at prices starting at $729 and exceeding $1,199, depending on the

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

model.

84.     Had Plaintiffs and other members of the Class and Subclass known that the Lenovo U Series Computers suffered from the Wi-Fi Defect, Plaintiffs and other members of the Class and Subclass would not have purchased the Lenovo U Series Computers.

85.     As a result of Lenovo's failure to disclose the existence of the Wi-Fi Defect, Plaintiffs and the other Class and Subclass members purchased the Lenovo U Series Computers expecting to be able to use Wi-Fi with such notebooks. Instead, however, Plaintiffs and other Class and Subclass members received the defective Lenovo U Series Computers that lack adequate Wi-Fi functionality and cannot be effectively used for mobile computing.

## THE INTERESTS OF THE GENERAL PUBLIC IN THE DISTRICT OF COLUMBIA

86.     Lenovo designed, manufactured, marketed, advertised, warranted, and sold the Lenovo U Series Computers, directly or indirectly (through its website or dealers and other retail outlets) to the general public of the District of Columbia. The Lenovo U Series Computers are inherently defective and are therefore also contrary to the expectations imparted by Defendant through its representations and omissions to the General Public.

87.     Upon information and belief, Defendant has caused injury and adverse effects to the general public of the District of Columbia.

88.     Plaintiff Wheeler acts for the benefit of the General Public in the District of Columbia as a Private Attorney General for claims in this action arising under the DCCPPA, which expressly authorizes an individual to act "on behalf of both the individual and the general public ... seeking relief from the use of a trade practice in violation of a law of the District when that trade practice involves consumer goods or services that the individual purchased ...." D.C. Code § 28-3905(k)(1)(B).

**CLASS ACTION ALLEGATIONS**

89.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated who purchased a Lenovo U Series Computer at any time in the United States.

90.    In addition, Plaintiff Wheeler brings this action on behalf of a Subclass of all others in the District of Columbia who purchased, leased, or received a Lenovo U Series Computer.

91.    Excluded from the Class and Subclass and are Defendant and its officers, directors and employees; any entity in which Defendant has a controlling interest; the affiliates, legal representatives, attorneys, heirs and assigns of Defendant; any federal, state, or local government entity; and any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staffs.  Claims for personal injury and consequential damages are excluded.

92.    Questions of law and fact are common to the Class and Subclass and predominate over any questions affecting only individual members, and a class action will generate common answers to the questions below, which are apt to drive the resolution of the litigation:

      a. Whether the Lenovo U Series Computers suffer from a common design defect;

      b. Whether Defendant failed to disclose material information to members of the Class;

      c. Whether Defendant's omission of material fact is misleading or reasonably likely to deceive a reasonable consumer;

      d. Whether Defendant's purported hardware "design update" to the Lenovo U Series Computers resolved the Wi-Fi defect;

      e. Whether, by its misconduct as set forth herein, Defendant has engaged

in unlawful or fraudulent business practices;

f.  Whether Class members have been injured by Defendant's misconduct; and

g.  Whether as a result of Defendant's misconduct, Plaintiffs and other Class members are entitled to damages, restitution, equitable relief, injunctive relief, or other relief, and the amount and nature of such relief.

h.  Whether the Lenovo U Series Computers have not or will not perform in accordance with the reasonable expectations of ordinary consumers;

i.  Whether Defendant's express warranty fails of its essential purpose;

j.  Whether Lenovo breached the express warranty given to Plaintiffs and the Subclass;

k.  Whether Defendant breached implied warranty of merchantability Plaintiff Wheeler and the Subclass;

l.  Whether Defendant failed to properly disclaim any limitation to pay for repairs or replacement of the Lenovo U Series Computers;

93.   The claims of Plaintiffs are typical of the claims of the Class and Subclass.   Plaintiffs have no interests antagonistic to those of the Class and Subclass, and Defendant has no defenses unique to the Plaintiffs.

94.   Plaintiffs will protect the interests of the Class and Subclass fairly and adequately, and Plaintiffs has retained attorneys experienced in complex class action litigation.

95.   A class action is superior to all other available methods for this controversy because (i) the prosecution of separate actions by the Class and Subclass members would create a risk of adjudications with respect to individual Class and Subclass members that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; (ii) the prosecution of

2ND AMENDED CLASS ACTION COMPLAINT

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

separate actions by Class and Subclass members would create a risk of inconsistent or varying adjudications with respect to the individual Class and Subclass members, which would establish incompatible standards of conduct for Defendant; (iii) Defendant acted or refused to act on grounds generally applicable to the Class and Subclass; and (iv) questions of law and fact common to the Class and Subclass predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

96.   Plaintiffs do not anticipate any difficulty in the management of this litigation.

97.   The nature of notice to the proposed class is contemplated to be by direct mail/e-mail upon certification of the class or, if such notice is not practicable, by the best notice practicable under the circumstance including, but not limited to, publication in major newspapers and on the internet.

## COUNT I

**(By Plaintiff Kacsuta, Individually and on Behalf of All Class Members that Purchased A Lenovo U Series Computer in the State of California, for Violations of the California Consumers Legal Remedies Act,
CAL. CIV. CODE §§ 1750 *et seq.*)**

98.   Plaintiff Kacsuta incorporates and re-alleges all of the foregoing paragraphs.

99.   Throughout the Class Period, the CLRA was in effect.   The CLRA prohibits "unfair or deceptive acts or practices."

100.   This Count is based on Defendant's failure to disclose the existence of the Wi-Fi defect.

101.   The Lenovo U Series Computers are "goods" under Cal. Civ. Code § 1761(a), and Plaintiff Kacsuta and Class members are "consumers" under Cal. Civ. Code § 1761(d), and the CLRA applies to Defendant's conduct because Defendant's

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1  conduct was intended to result, and did result, in the sale of goods for personal,
2  family, or household use.

3       102.  The CLRA prohibits the failure to disclose a fact when the omission is
4  of a fact the defendant was obliged to disclose. A defendant is obliged to disclose a
5  fact when the defendant has exclusive knowledge of a material fact.

6       103.  Defendant had a duty to disclose the existence of the Wi-Fi Defect in
7  the Lenovo U Series Computers to Plaintiff Kacsuta and all Class members because
8  Defendant had exclusive knowledge of material facts—i.e., the existence of and
9  inability to repair the Wi-Fi Defect—not known to Plaintiff Kacsuta and the Class.

10      104.  The Wi-Fi Defect that Defendant failed to disclose is material to
11  reasonable consumers. A reasonable consumer would expect that the Lenovo U
12  Series Computers do not suffer from the Wi-Fi Defect. The existence of the Wi-Fi
13  Defect is the sort of information that would be relied upon by reasonable consumers
14  in deciding whether to purchase the Lenovo U Series Computers. Defendant's
15  failure to disclose the existence of the Wi-Fi Defect is likely to deceive, and did
16  deceive reasonable consumers, including Plaintiff Kacsuta.

17      105.  Plaintiff Kacsuta and Class members relied on Defendant's failure to
18  disclose the existence of the Wi-Fi Defect. Had Plaintiff Kacsuta and Class
19  members known that the Lenovo U Series Computers suffered from the Wi-Fi
20  Defect, Plaintiff Kacsuta and Class members would not have purchased the Lenovo
21  U Series Computers.

22      106.  As a result of Defendant's omission, Plaintiff Kacsuta and Class
23  members have been damaged in the amount of the entire purchase price of their
24  defective Lenovo U Series Computers.

25      107.  Accordingly, Plaintiff Kacsuta and Class members seek an injunction
26  requiring Defendant to establish a common fund to repair Class members' Lenovo
27  U Series Computers.

28

KIESEL  LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

## COUNT II

**(By Plaintiff Kacsuta, Individually and on Behalf of All Class Members that Purchased A Lenovo U Series Computer in the State of California, for Violations of the California Consumers Legal Remedies Act,
CAL. CIV. CODE §§ 1750 *et seq.*)**

108.   Plaintiff Kacsuta incorporates and re-alleges all of the foregoing paragraphs.

109.   Throughout the Class Period, the CLRA was in effect.   The CLRA prohibits "unfair or deceptive acts or practices."

110.   This Count is based on Defendant's failure to disclose the existence of the Wi-Fi Defect.

111.   The Lenovo U Series Computers are "goods" under Cal. Civ. Code § 1761(a), and Plaintiff Kacsuta and Class members are "consumers" under Cal. Civ. Code § 1761(d), and the CLRA applies to Defendant's conduct because Defendant's conduct was intended to result, and did result, in the sale of goods for personal, family, or household use.

112.   The CLRA prohibits the failure to disclose a fact when the omission is of a fact the defendant was obliged to disclose.   A defendant is obliged to disclose a fact when the defendant has exclusive knowledge of a material fact.

113.   Defendant had a duty to disclose the existence of the Wi-Fi Defect to Plaintiff Kacsuta and all Class members because Defendant had exclusive knowledge of material facts—i.e., the existence of and inability to repair the Wi-Fi Defect—not known to Plaintiff Kacsuta and the Class.

114.   The Wi-Fi Defect that Defendant failed to disclose is material to reasonable consumers.   A reasonable consumer would expect the Lenovo U Series Computers do not suffer from the Wi-Fi Defect. The existence of the Wi-Fi Defect is the sort of information that would be relied upon by reasonable consumers in deciding whether to purchase the Lenovo U Series Computers.   Defendant's failure to disclose the existence of the Wi-Fi Defect is likely to deceive, and did deceive

1  reasonable consumers, including Plaintiff Kacsuta.

2  115.  Plaintiff Kacsuta and Class members relied on Defendant's failure to

3  disclose the existence of the Wi-Fi Defect.  Had Plaintiff Kacsuta and Class

4  members known that the Lenovo U Series Computers suffered from the Wi-Fi

5  Defect, Plaintiff Kacsuta and Class members would not have purchased the Lenovo

6  U Series Computers.

7  116.  As a result of Defendant's omission, Plaintiff Kacsuta and Class

8  members have been damaged in the amount of the entire purchase price of their

9  defective Lenovo U Series Computers.

10  117.  On or about March 13, 2013 Plaintiff Kacsuta wrote to Defendant

11  pursuant to Cal. Civ. Code § 1782(a) in order to provide Defendant with notice of

12  its violation of its warranty and the CLRA ("Plaintiff's CLRA Letter").  In

13  particular, Plaintiff Kacsuta informed Defendant that the Lenovo U Series

14  Computers suffer from the Wi-Fi Defect, a material fact of which Defendant was

15  aware yet failed to disclose.   Plaintiff Kacsuta requested that Defendant

16  immediately cease the manufacture and sale of the Lenovo U Series Computers,

17  acknowledge the existence of the Wi-Fi Defect and refund to Plaintiff Kacsuta and

18  all Class members the purchase price incurred for the purchase of the Lenovo U

19  Series Computers.

20  118.  To date, Defendant has failed to provide the requested relief to all

21  members of the Class.  Instead, on April 10, 2013, Defendant, inappropriately

22  sought to "pick off" Plaintiff Kacsuta by inappropriately offering to settle only

23  Plaintiff Kacsuta's individual claim.  However, Defendant refused to settle claims

24  asserted by and on behalf of all of the Class members whom Plaintiff seeks to

25  represent.  Because Defendant offered to settle only Plaintiff Kacsuta's individual

26  claim, Plaintiff Kacsuta, who is a fiduciary to the Class he seeks to represent,

27  refused Defendant's offer.

28  119.  Because Defendant has refused to provide the relief requested in

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

Plaintiff Kacsuta's CLRA Letter to all members of the Class, Plaintiff Kacsuta and members of the Class are entitled to an award of actual damages.

**COUNT III**

**(By Plaintiff Kacsuta, Individually and on Behalf of All Class Members that Purchased A Lenovo U Series Computer in the State of California for Violations of the Unfair Competition Law, CAL. BUS. & PROF. CODE §§ 17200 *et seq.*)**

120.   Plaintiff Kacsuta incorporates and re-alleges all of the foregoing paragraphs.

121.   Defendant's practices as alleged in this Complaint constitute unlawful, unfair business acts and practices under the UCL, Bus. & Prof. Code §§ 17200, *et seq.*

122.   The UCL prohibits acts of "unfair competition," including any unlawful, unfair, or fraudulent business act or practice.

123.   A violation of another law is treated as "unlawful competition" that is independently actionable.   A business practice is "unfair" if (i) the utility of Defendant's conduct is substantially outweighed by the gravity of the harm to the alleged victim; (ii) Defendant's practice violates public policy as declared by specific constitutional, statutory, or regulatory provisions or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers; or (iii) Defendant's practice would deceive a reasonable consumer.

124.   Defendant committed unlawful practices because it violated the CLRA and the SBA.

125.   Defendant committed unfair practices because it failed to disclose that the Lenovo U Series Computers suffer from the Wi-Fi Defect to Plaintiff Kacsuta and other Class members, despite knowledge of the Wi-Fi Defect throughout the Class Period.

126.   Plaintiff Kacsuta and Class members relied on such omission.   Had

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

Plaintiff Kacsuta and Class members known that the Lenovo U Series Computers suffered from the Wi-Fi Defect, Plaintiff Kacsuta and Class members would not have purchased the Lenovo U Series Computers.

127. Accordingly, Plaintiff Kacsuta and Class members seek an injunction requiring Defendant to establish a common fund to repair Class members' Lenovo U Series Computers, restitution, and all other relief this Court deems appropriate.

## COUNT IV

**(By Plaintiff Wheeler, Individually and on Behalf of All Subclass Members that Purchased A Lenovo U Series Computer in the District of Columbia for Violation Of District Of Columbia Consumer Protection and Procedures Act (DCCPPA) D.C. Official Code, 2012 §§ 28–3901 *et seq.*)**

128. Plaintiff Wheeler, individually, on behalf of all others similarly situated and the general public of the District of Columbia, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

129. The conduct described above and throughout this Complaint took place within the District of Columbia and constitutes unfair business practices in violation of District of Columbia's Consumer Protection and Procedures Act, D.C. Official Code, 2012 §§ 28–3901 et seq. (hereinafter, "DCCPPA").

130. The Affected Computers are consumer goods within the meaning of the DCCPPA in that they are items that a "person does or would purchase, lease (as lessee), or receive and normally use for personal, household, or family purposes." D.C. Official Code, 2012 §§ 28–3901(a)(2)(B)(i).

131. Plaintiff Wheeler and those Subclass Members who purchased their IdeaPad U-Series

132. Ultrabook computers in the District of Columbia are consumers within the meaning of the DCCPPA as they are people who do "or would purchase, lease (as lessee), or receive consumer goods or services," D.C. Official Code, 2012 §§

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

2ND AMENDED CLASS ACTION COMPLAINT

28–3901(a)(2)(A).

133.   Defendant is a merchant within the meaning of the DCCPPA in that it directly and indirectly sells the Lenovo U Series Computers, as well as other consumer goods, in the ordinary course of business. D.C. Official Code, 2012 §§ 28–3901(a)(3).

134.   The DCCPPA applies to the claims of all the District of Columbia members of the Subclass because the conduct which constitutes violations of the DCCPPA by the Defendant occurred within the District of Columbia.

135.   The DCCPPA prohibits "unlawful trade practices," including: Representation "that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; . . .

> (b)   Represent that goods or services are of a particular standard, quality, style, or model, if in fact they are of another;
>
> (c)   Misrepresent as to a material fact which has a tendency to mislead;
>
> (d)   Fail to state a material fact if such failure tends to mislead;
>
> (d-1)  Use innuendo or ambiguity as to a material fact, which has a tendency to mislead; . . . [and]
>
> (e)   Advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered".

D.C. Official Code, 2012 §§ 28–3904.

136.   Defendant made omissions of material fact which had a tendency to mislead consumers, including Plaintiff Wheeler and the Subclass.  Such omissions of material fact include the following:

> (a)   Defendant's failure to disclose the problems that the Lenovo U Series Computers were experiencing with Wi-Fi functionality detailed herein;
>
> (b)   Defendant's failure to disclose that it was unable to repair the problems that the Lenovo U Series Computers were experiencing with Wi-Fi

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1   functionality detailed herein; and

2   (c)   Defendant's failure to disclose that its remedy is inadequate as it does
3   not solve the problem.

4   137.  Defendant failed to advise Plaintiff Wheeler and other members of the
5   Subclass who purchased the Lenovo U Series Computers that they were defective
6   and not fit for the use for which they were purchased.

7   138.  Defendant's omissions and non-disclosure of material facts in regard to
8   the Wi-Fi functionality of the Lenovo U Series Computers as alleged above had a
9   tendency to mislead Plaintiff Wheeler and other members of the Subclass.

10   139.  The unlawful and deceptive trade acts and practices in regard to the
11   Lenovo U Series Computers have directly, foreseeably, and proximately caused
12   actual damages to Plaintiff Wheeler and District of Columbia Subclass Members.
13   Plaintiff Wheeler and other Subclass Members are damaged in that, contrary to
14   Defendant's previous representations, the Lenovo U Series Computers are defective
15   and not fit for use as mobile devices. Additionally, Defendant's remedy is
16   inadequate as it does not solve the problem.

17   140.  In addition, in violation of the DCCPA, Defendant employed unlawful
18   trade practices, misrepresentation, and the knowing concealment, suppression, or
19   omission of material facts in their sale and advertisement of the Lenovo U Series
20   Computers in the District of Columbia, including by representing that the
21   Ultrabooks have characteristics, uses, or benefits that they do not have; the
22   Ultrabooks were of particular standard, quality, grade, style, or model, when in fact
23   were are of another; by misrepresenting as to a material fact which has a tendency
24   to mislead; and/or by failing to state a material fact if such failure tends to mislead.

25   141.  Specifically, Defendant made the following false and deceptive
26   representations of the quality, characteristics, uses, and benefits of the Lenovo U
27   Series Computers, in its advertising and marketing materials:

28   (a)   That the Lenovo U Series Computers "take the era of thin, lightweight

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

and ultra-responsive mobile computing to a new level of affordability, without compromising quality or style."

(b)     That the Lenovo U Series Computers "offer the performance to handle any mobile computing task"

(c)     That the Lenovo U Series Computers "meet the needs of today's most demanding mobile users."

(d)     That the Lenovo U Series Computers can "handle any mobile computing task."

(e)     That the Lenovo U Series Computers are excellent for consumers who are "always on-the-go."

(f)     That the Lenovo U Series Computers possess Wi-Fi functionality and contain "built-in antennas ensur[ing] optimal reception of wireless radio."

(g)     That the Lenovo U Series Computers are "mobile enough to go wherever you want," and "dependable enough to use whenever you want."

142.   Contrary to Defendant's representations, the Defendant failed to disclose that the Lenovo U Series Computers do not possess Wi-Fi functionality and therefore are not dependable, mobile, or able to handle the mobile computing needs of consumers. Defendant either knew, or should have known, that Lenovo U Series Computers was defectively designed and/or manufactured as represented to be by the Defendant as alleged herein.

143.   Upon information and belief, at the time that the Lenovo U Series Computers left Defendant's control, it knew that they contained a defect because it is unable to reliably and consistently maintain a Wi-Fi connection as represented by Defendant in its marketing of the Lenovo U Series Computers to consumers.

144.   Despite the foregoing, Defendant failed to inform or educate retailers, Plaintiff Wheeler, and Subclass Members about the defects and deficiencies regarding the Lenovo U Series Computers at the time of sale. Defendant was in a superior position to know, and actually did know, the true facts about the hidden

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

defects of the Lenovo U Series Computers. Defendant's acts and omissions, detailed herein, had the tendency to deceive retailers, Plaintiff Wheeler, and Subclass Members, and did in fact deceive Plaintiff Wheeler and Subclass Members to their detriment.

145. Defendant knew that the Lenovo U Series Computers were defective and would that the Wi-Fi functionality of the Lenovo U Series Computers would fail. Defendant also knew that their warranty failed its essential purpose and would not make Plaintiff Wheeler or Subclass Members whole, and breached its warranty by failing to repair or replace the Lenovo U Series Computers. Because of these facts, deception or unfairness was present at both the time of contract formation and at the time of Defendant's breach of warranty.

146. As a direct and proximate cause of the violation of the DCCPPA, described above, Plaintiff Wheeler and members of the Subclass have been injured in that they have purchased the defective Lenovo U Series Computers based on nondisclosure and misrepresentation of material facts alleged above. Had Plaintiff Wheeler and Subclass Members known the defective nature of the Lenovo U Series Computers, they would not have purchased them or would have paid a lower price for their IdeaPad U Series Ultrabooks.

147. Defendant used unfair methods of competition and unlawful or deceptive acts or practices in conducting its businesses within the meaning of the DCCPPA. This unlawful conduct is continuing, with no indication that Defendant will cease.

148. Defendant acted willfully, knowingly, intentionally, unconscionably, and with reckless indifference when it committed these unlawful trade practices.

149. As a direct and proximate result of Defendant's unlawful and deceptive acts and practices, Plaintiff Wheeler and the other members of the Subclass have suffered and/or will suffer damages, which include, without limitation, costs to inspect, repair, or replace their Lenovo U Series Computers, in an amount to be

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1  determined at trial.

2  150.  As a result of the acts of unlawful trade practices described above,

3  Plaintiff Wheeler and the Subclass Members have suffered ascertainable loss in the

4  form of actual damages that include the purchase price of the products for which

5  Defendant is liable to the Plaintiff Wheeler and the District of Columbia Subclass

6  Members for treble their ascertainable losses or statutory damages in the amount of

7  $1,500 per violation, whichever is greater, pursuant to D.C. Code § 28–3905(k)(1).

8  Plaintiff Wheeler and the District of Columbia Subclass Members further seek

9  punitive damages, attorneys' fees and costs plus interest, along with equitable relief

10  prayed herein in this Complaint.

11

12  <u>**COUNT V**</u>

13  **(By Plaintiff Wheeler, Individually and on Behalf of All Subclass Members**

14  **that Purchased A Lenovo U Series Computer in the District of Columbia for**

**Breach of Express Warranty)**

15  151.  Plaintiff Wheeler, individually, and on behalf of all others similarly

16  situated members of the Subclass, adopts and incorporates by reference all

17  allegations contained in the foregoing paragraphs as though fully set forth herein.

18  152.  As set forth above, Defendant expressly warranted that IdeaPad U

19  Series Ultrabooks would be free from defects in materials and workmanship.

20  153.  Defendant also extended express warranting to consumers, including

21  Plaintiff Wheeler and the Subclass, by way of product descriptions and

22  representations as to product qualities and characteristics made in sales literature at

23  retailers, on its website, and via advertisements, among other methods, including the

24  representations regarding appearance durability as described above.

25  154.  Lenovo IdeaPad U-Series Ultrabooks do not perform as represented

26  because they lack the Wi-Fi functionality they were represented by Defendant to

27  have. This defect was known by the Defendant prior to the sale of the Lenovo U

28  Series Computers to Plaintiff Wheeler and the Subclass. Accordingly, the IdeaPad

54      2ND AMENDED CLASS ACTION COMPLAINT

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1    U-Series Ultrabooks purchased by Plaintiff Wheeler and the Subclass were not free
2    from defects in material and workmanship.

3        155.  Defendant's express warranty provides that they will repair or replace
4    the defective product or refund the purchase price. Defendant has breached the
5    written warranty, as set forth above, by failing to repair or replace the defective
6    product or refund the purchase price. Plaintiff Wheeler did not negotiate or bargain
7    for the terms of the express warranty provisions and any purported limitations
8    contained therein. Upon information and belief, the other customers of Defendant
9    did not and could not negotiate or bargain for the terms of the express warranty
10   provisions and any purported limitations contained therein. Instead, Defendant
11   stood in a position of domination and control over the terms.

12       156.  At the time that Defendant extended these express warranties to
13   Plaintiff Wheeler and the Subclass, Defendant knew that the Lenovo U Series
14   Computers had a defect in their Wi-Fi capabilities. Nevertheless, Defendant
15   continued to place the defective product on the market and failed and omitted to
16   inform its customers, including Plaintiff Wheeler and the Subclass of this inherent
17   defect.

18       157.  Defendant has received sufficient and timely notice of the breaches of
19   warranty alleged herein. Despite this notice and Defendant's knowledge of the
20   defect in the Lenovo U Series Computers, Defendant has failed and refused to honor
21   its express warranty.

22       158.  Defendant's failure to remedy the defect in the Lenovo U Series
23   Computers and all associated damages constitutes a breach of express warranty.

24       159.  The foregoing breaches of express warranty at issue were substantial
25   factors in causing damages to Plaintiff Wheeler and the Subclass.

26       160.  As a result of the foregoing, Plaintiff Wheeler and members of the
27   Subclass have suffered damages (in the form of, inter alia, out-of-pocket
28   expenditures for the repairs and/or replacement of the Lenovo U Series Computers)

that were directly and proximately caused by the defective design and manufacture of the Lenovo U Series Computers. Moreover, if Plaintiff Wheeler and members of the Subclass had known the true facts about the defects in the Lenovo U Series Computers, they would have considered that information material in their decisions to purchase the IdeaPad Ultrabooks.

161. Plaintiff Wheeler and members of the Subclass are entitled to the full remedies provided under Article 2 of the Uniform Commercial Code as adopted by the District of Columbia as well as all other applicable remedies.

## COUNT VI

**(By Plaintiff Wheeler, Individually and on Behalf of All Subclass Members that Purchased A Lenovo U Series Computer in the District of Columbia for Breach of Implied Warranty Of Merchantability)**

162. Plaintiff Wheeler, individually, and on behalf of all others similarly situated members of the Subclass, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

163. Defendant is a merchant who sold the Lenovo U Series Computers to Plaintiff Wheeler and the Subclass for personal and business use.

164. Defendant impliedly represented and warranted that the Lenovo U Series Computers were free of defects, were of good and merchantable quality, fit for their intended purpose, and fit for the ordinary purposes for which such goods are used.

165. In fact, Defendant has sold, directly or indirectly (through distributors and other retail outlets), thousands of Lenovo U Series Computers nationwide and at least hundreds in the District of Columbia, to individuals and businesses.

166. Defendant designed, manufactured, marketed, advertised, warranted, and sold Lenovo U Series Computers to Plaintiff Wheeler and members of the Subclass.

167.   Plaintiff Wheeler and members of the Subclass were in privity with Defendant because (1) they purchased their Lenovo U Series Computers from an actual or apparent agent of Defendant, and (2) have a contractual relationship stemming from Defendant's warranty provided in conjunction with purchases of the Lenovo U Series Computers.

168.   Any limitation, or attempt at limitation, on the implied warranty of merchantability is unconscionable under all of the circumstances, and is unenforceable.

169.   Defendant breached the aforementioned representations and implied warranties, as the Lenovo U Series Computers suffer from a defect in its Wi-Fi functionality. This defect was known to Defendant prior to sale and distribution of the Lenovo U Series Computers at the time it left Defendant's control.

170.   This defect rendered the Lenovo U Series Computers unsuitable for the ordinary purposes for which they were used and purchased.

171.   Plaintiff Wheeler provided notice to Defendant of the defect in his IdeaPad U410 Ultrabook and requested that Defendant repair the defect. In addition, members of the Class, by virtue of claims for repair and/or replacement made pursuant to the express warranties, also notified Defendant of the defects in their Lenovo U Series Computers. By virtue of the foregoing, Defendant has received notice of the breach of the warranties.

172.   As a result of the foregoing, Plaintiff Wheeler and situated members of the Subclass have suffered damages (in the form of, inter alia, out-of-pocket expenditures for replacement and/or repair of the Lenovo U Series Computers) that were directly and proximately caused by the defective Lenovo U Series Computers. Moreover, if Plaintiff Wheeler and the members of the Class had known the true facts about the defects, they would not have purchased the Lenovo U Series Computers Computers.

173.   Plaintiff Wheeler and members of the Subclass are entitled to the full

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

remedies provided under Article 2 of the Uniform Commercial Code as adopted by the District of Columbia as well as all other applicable remedies.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that this Court:

a.   Certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiffs as the Class representatives, and appoint the undersigned as Class counsel;

b.   Issue a permanent injunction or other appropriate equitable relief requiring Defendant to establish a common fund for repairs for the Lenovo U Series Computers;

c.   Order Defendant to pay Plaintiffs and other Class and Subclass members an amount of actual, statutory, and punitive damages, and restitution in an amount to be determined at trial, and where allowed by law;

d.   Issue an order granting Plaintiffs' reasonable costs and attorneys' fees;

e.   Granting Plaintiff Wheeler, the Subclass and the general public of the District of Columbia treble damages or statutory damages in the amount of $1,500 per violation, whichever is greater;

f.   Grant such other relief as may be just and proper.

1

2  DATED: August 22, 2014

3  By: _____

4      Paul O. Paradis, Esq.

5      Gina M. Tufaro, Esq.
       PARADIS LAW GROUP, PLLC
6      570 7th Avenue, 20th Floor
       New York, NY 10018
7      Telephone:  (212) 986-4500
       Facsimile:   (212) 986-4501
8

9      Paul R. Kiesel, Esq.
10     KIESEL LAW LLP
       8648 Wilshire Boulevard
11     Beverly Hills, CA 90211
       Telephone:  (310) 854-4444
12     Facsimile:   (310) 854-0812
13

14

15     Gary E. Mason, Esq.
       Nicholas A. Migliaccio, Esq.
16     Jason S. Rathod, Esq.
       WHITFIELD BRYSON & MASON LLP
17     1625 Massachusetts Ave., NW, Suite 605
       Washington, D.C.  20036
18     Telephone:  (202) 429-2290
       Facsimile:  (202) 429-2294
19

20

21     Jordan L. Chaikin, Esq.
       PARKER WAICHMAN LLP
22     3301 Bonita Beach Road, Suite 101
       Bonita Springs, Florida 34134
23     Telephone: (239) 390-1000
       Facsimile: (239) 390-0055
24

25

26     Attorneys for Plaintiffs, individually and on
       behalf of all others similarly situated.
27

28

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable.

DATED: August 22, 2014

By: _____

Paul O. Paradis, Esq.
Gina M. Tufaro, Esq.
PARADIS LAW GROUP, PLLC
570 7th Avenue, 20th Floor
New York, NY 10018
Telephone:  (212) 986-4500
Facsimile:   (212) 986-4501

Paul Kiesel
KIESEL LAW LLP
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Telephone: (310) 854-4444
Facsimile: (310) 854-0812

Gary E. Mason, Esq.
Nicholas A. Migliaccio, Esq.
Jason S. Rathod, Esq.
WHITFIELD BRYSON & MASON LLP
1625 Massachusetts Ave., NW, Suite 605
Washington, D.C.  20036
Telephone:  (202) 429-2290
Facsimile:  (202) 429-2294

Jordan L. Chaikin, Esq.
PARKER WAICHMAN LLP
3301 Bonita Beach Road, Suite 101
Bonita Springs, Florida 34134
Telephone: (239) 390-1000
Facsimile: (239) 390-0055

Attorneys for Plaintiffs