**KIESEL LAW LLP**
Paul R. Kiesel (Bar No. CA 119854)
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Telephone: (310) 854-4444
Facsimile: (310) 854-0812

**PARADIS LAW GROUP, PLLC**
Paul O. Paradis, Esq. (Pro Hac Vice)
Gina M. Turafo, Esq. (Pro Hac Vice)
570 Seventh Avenue – 20th Floor
New York, New York, 10018
Telephone (212) 986-4500
Facsimile: (212) 986-4501

Interim Class Counsel

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| GARRETT KACSUTA and MICHAEL WHEELER, individually and on behalf of all others similarly situated, | Case No. SACV 13-00316-CJC(RNBx) |
|---|---|
| Plaintiffs, | **DECLARATION OF GINA M. TUFARO IN SUPPORT OF CLASS COUNSELS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** |
| v. | |
| LENOVO (United States) Inc., | |
| Defendant. | Hearing Date: December 15, 2014<br>Time:         1:30 p.m.<br>Department:  Courtroom 9B<br>Judge:        Cormac J. Carney |

1

I, Gina M Tufaro, under penalty of perjury, hereby declare that the following is true and correct to the best of my knowledge and belief:

1.    I am over the age of 18 and am fully familiar with the facts and circumstances set forth herein and could competently testify thereto if called upon to do so.

2.    I am a Partner of the Paradis Law Group, PLLC, one of the Court-appointed Interim Class Counsel for Plaintiffs and the Class in this action.   I submit this Declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Request for Attorneys' Fees, Reimbursement of Expenses and Plaintiffs' Reimbursement Awards in the above-entitled action.

3.    Before Plaintiffs even filed their initial complaints, Class Counsel engaged the services of a Engineering Experts to identify the precise reason why so many purchasers of the Class Computers, including Plaintiffs, had repeatedly and routinely experienced an inability to connect to Wi-Fi networks or attain Wi-Fi data transmission/reception at speeds sufficient to engage in Internet browsing with their Class Computers.

4.    During this pre-filing period, Plaintiff Kacsuta's counsel and Plaintiff's Engineering Experts worked closely to devise certain tests that measured the Wi-Fi functionality of the Class Computers.  Among other things, these tests captured the amount of time necessary for the Class Computers (Test Computer) to receive files transmitted from another computer (Source Computer) across a Wi-Fi communication link.

5.    The tests conducted during the pre-filing period employed a dedicated wireless communication link that was established solely between the Source Computer and the Test Computer.  In one particular rigorous test, a file comprised of a 175 MB video file in .avi format (the "File") was placed in a folder on the Source Computer for test purposes.  Using sophisticated programming commands

DECLARATION OF GINA M. TUFARO IN SUPPORT OF CLASS COUNSELS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

1  that were executed on the Test Computer, the File was then transmitted from the
2  Source Computer across the dedicated wireless communication link and onto the
3  Test Computer.

4      6.    Both the amount of time necessary for the Test Computer to receive the
5  File transfer, and the rate of speed at which the data transfer across the dedicated
6  wireless communication link occurred were measured and recorded to determine
7  the transfer time and transfer speed of the Test Computer's Wi-Fi reception
8  capability.

9      7.    To ensure that the test results obtained were of evidentiary quality,
10  Plaintiffs' Engineering Experts designed and employed a testing protocol that
11  involved testing a large number of models of the Class Computers and which
12  therefore rendered statistically significant test results.

13      8.    This pre-filing testing process was extremely time consuming, however,
14  this extensive testing process repeatedly proved invaluable in helping Class
15  Counsel and Plaintiffs' Engineering Experts gain an in-depth understanding of the
16  Wi-Fi Defect.

17      9.    As a result of this initial engineering investigation, on February 21,
18  2013 Plaintiff Kacsuta filed his initial complaint, which was 50 pages in length.
19  Plaintiff Kacsuta's initial complaint asserted eight causes of action including:
20  breach of express warranty under North Carolina law, violations of the California
21  Consumer Legal Remedies Act, violations of the California Unfair Competition
22  Law, violations of California False Advertising Law, violations of California's
23  Song Beverly Act, unjust enrichment under California law, and breach of implied
24  contract under California law.

25      10.    On October 22, 2013, Plaintiff Wheeler filed his initial complaint,
26  which asserted four causes of actions including: violations of the District of

27

28

DECLARATION OF GINA M. TUFARO IN SUPPORT OF CLASS COUNSELS' APPLICATION FOR
AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

1  Columbia Consumer Protection and Procedures Act, breach of express warranty,
2  breach of the implied warranty of merchantability, unjust enrichment.

3      11.   Lenovo moved to dismiss Plaintiff Kacsuta and Plaintiff Wheeler's
4  complaints on June 7, 2013 and January 16, 2014, respectively.

5      12.   In its motion to dismiss Plaintiff Kacsuta's initial complaint, Lenovo
6  contended that various factors affect the performance of Wi-Fi, and, therefore, not
7  all Class members' experiences with the Lenovo U-series computers would be
8  uniform.

9      13.   To test Lenovo's assertions, and to determine whether Plaintiff Kacsuta
10  would oppose the motion or amend his complaint, Plaintiff Kacsuta's Counsel
11  once again worked closely with Plaintiffs' Engineering Experts to develop and
12  conduct certain tests that targeted the various factors cited by Lenovo in its motion
13  to dismiss.

14      14.   Similar to the testing that Plaintiffs and their Engineering Experts had
15  previously performed, this testing also took place over the course of several weeks.

16      15.   Based on the work conducted by Plaintiffs' Engineering Experts in
17  conjunction with Plaintiff Kacsuta's Counsel, Plaintiff Kacsuta and Plaintiff
18  Kacsuta's Counsel decided not to oppose Lenovo's motion to dismiss, but rather to
19  amend Plaintiff Kacsuta's complaint in order to provide the Court with the
20  extremely strong evidence obtained by Plaintiffs during these tests.

21      16.   On May 28, 2013, Plaintiff Kacsuta filed the First Amended Class
22  Action Complaint in the Kacsuta Action, which is 52 pages in length.

23      17.   Plaintiff Kacsuta's First Amended Complaint contains extensive, highly
24  detailed graphs/charts, which depict the data generated from Plaintiffs'
25  Engineering Experts' additional tests.

26      18.   In light of Plaintiff Kacsuta's counsel's consideration of certain of the
27  legal arguments raised by Lenovo in its motion to dismiss Plaintiff Kacsuta's

28

4

initial complaint and Plaintiff Kacsuta's counsel's continued legal research, Plaintiff Kacsuta's counsel advanced legal theories in Plaintiff Kacsuta's First Amended Complaint that varied from those advanced in Plaintiff Kacsuta's initial complaint.

19.   Plaintiff Wheeler's counsel also researched and drafted the First Amended Complaint in the Wheeler Action to address certain arguments by Lenovo that Plaintiff Wheeler had not properly pled the consumer fraud claims alleged in the Wheeler Action.

20.   From September 2013 through March 2014, the Parties engaged in a candid self-directed dialogue and informal discovery that was intended to better inform the Parties concerning the respective strengths and weaknesses of Plaintiffs' case-in-chief and Defendant's defenses thereto.

21.   On March 17, 2014, in response to Defendant's request, Plaintiffs provided Defendant with Plaintiffs' Confidential Settlement Demand.

22.   On April 4, 2014, Defendant provided Plaintiffs with Defendant's confidential settlement counter proposal.

23.   Although Plaintiffs rejected Defendant's counter proposal, the Parties continued to conduct telephonic settlement negotiations.

24.   These telephonic settlement negotiations were concluded by Plaintiffs' counsel informing Defendant's counsel that Plaintiffs would not engage in further settlement discussions unless Defendant agreed to certain terms demanded by Plaintiffs, including, but not limited to, negotiating a nationwide settlement.

25.   After Lenovo had agreed to negotiate a nationwide settlement, the Parties ultimately agreed to participate in a mediation session.  On June 5, 2014, the Parties participated in a contentious and protracted day-long mediation at JAMS in Los Angeles before the Honorable Dickran Tevrizian (Ret.).

DECLARATION OF GINA M. TUFARO IN SUPPORT OF CLASS COUNSELS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

26. At the conclusion of that mediation session, the Parties reached agreement on the material terms of the proposed Settlement that are reflected in the Settlement Agreement.

27. The proposed Settlement enables Settlement Class Members to elect from the following four settlement benefits, either: (1) repair to the wireless capability of a Settlement Class Member's Class Computer; (2) a cash refund in the amount of one hundred dollars ($100) paid by Lenovo; or (3) a two hundred fifty dollar ($250) credit certificate issued by Lenovo that may be utilized to purchase any brand of product listed for sale on www.lenovo.com, in addition to warranty extensions or renewals.

28. In addition to electing either (1), (2) or (3) in the foregoing paragraph, Settlement Class Members may also elect to receive a one hundred percent (100%) reimbursement for actual out-of-pocket expenses incurred by a Settlement Class Member for the repair of the wireless capability of a Class Computer.

29. The first component of the Settlement provides Settlement Class Members who have not previously returned their Class Computer to Lenovo with the opportunity to have the wireless capability of their Class Computer repaired by Lenovo.

30. All Settlement Class Members who have not previously returned their Class Computer for repair of the wireless capability and who desire to have Lenovo repair the wireless capability of their Class Computer are entitled to return their Class Computer to Lenovo in order to permit Lenovo to repair the wireless capability of their Class Computer, and the warranty period for any Wi-Fi related issue shall be: (i) extended for a period of one additional year from the date of such warranty repair in situations where the original warranty has not yet expired; or (ii) renewed for a period of one additional year from the date of such warranty repair in situations where the original warranty has expired.

31.   The entire cost of such repair, including all costs associated with insured shipping of such Settlement Class Member's Class Computer to Lenovo and the return of the Class Computer to the Settlement Class Member will be borne exclusively by Lenovo.

32.   According to sworn testimony provided by a Lenovo representative a total of 83,320 Class Computers were sold and 119 of these were returned for servicing related to or including wireless capabilities. Therefore, a total of 83,201 Settlement Class Members may avail themselves of the Repair Option, which Plaintiffs' Valuation Expert, Professor Mark T. Williams, has valued at $50,515,487.15 (which includes the cost of repair, roundtrip shipping and Wi-Fi issue warranty extension/renewal).

33.   All Settlement Class Members who *do not* elect to have their Class Computers repaired, may elect to receive one of the following forms of settlement consideration:

      a.  a cash refund in the amount of one hundred dollars ($100) paid by Lenovo; *or*

      b.  a two hundred fifty dollar ($250) credit certificate toward the purchase of any product listed for sale on www.lenovo.com.  The $250 credit certificate shall be issued by Lenovo and shall be transferable within the immediate family of the original claimant and is capable of being combined with any other credit, voucher, coupon, sale, or other discount of any kind and shall expire no less than two years after issuance.

34.   Additionally, the warranty period for those Settlement Class Members who select either the Cash Refund or the Credit Certificate shall be: (a) extended for a period of 120 days from the date of final approval of the Settlement in situations where the original warranty has not yet expired; or (b) renewed for a

1  period of 120 days from the date of final approval of the Settlement in situations
2  where the original warranty has expired.

3    35.    Given the number of Class Computers sold, the cash component plus
4  the extended 120 day full coverage warranty component of the Settlement is
5  valued at as much as $12,687,136.40.

6    36.    Additionally, Professor Williams has opined that the: (i) $250 Credit
7  Certificates; plus the (ii) extended 120 day full coverage warranty
8  extensions/renewals are collectively valued at between $20,440,062.40 and
9  $22,348,923.40.

10    37.    In addition, all Settlement Class Members who elect to receive either
11  the Cash Refund or Credit Certificate, and who, through the submission of
12  satisfactory documentary evidence, demonstrate that they previously incurred
13  actual, out-of-pocket expenses associated with the repair of their Class Computer,
14  shall be reimbursed for one hundred percent (100%) of the amount of such
15  expenses by Lenovo upon the submission of a valid Claim Form, accompanied by
16  the required documentation.

17    38.    Based on the data reviewed by Professor Williams, he has opined that
18  the "average value" of this particular form of settlement consideration is estimated
19  to be valued at $125.00 per claim, which adds further value to the Settlement.

20    39.    Although Plaintiffs believe strongly in the underlying merits of this
21  case, Plaintiffs are also aware that consumer cases, such as this one, are difficult to
22  prove.

23    40.    For example, while many Class Members complained vociferously
24  about their Class Computers' weak Wi-Fi capabilities, others did not.
25  Accordingly, Defendant would certainly have argued that this lack of uniformity
26  should be seen as an insurmountable hurdle to Plaintiffs in the context of class
27  certification.

28

8

DECLARATION OF GINA M. TUFARO IN SUPPORT OF CLASS COUNSELS' APPLICATION FOR
AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

41.     Difficulties such as this detract from the strength of Plaintiffs' case. The certainty provided by the Settlement, however, buttresses both the fairness and adequacy of the Settlement.

42.     While Plaintiffs believe they could have prevailed at trial, they also recognize and understand the numerous risks associated with continuing the litigation against Defendant.   For example, while Plaintiffs initially claimed that Defendant failed to resolve the Wi-Fi Defect, confirmatory discovery has revealed that Lenovo eventually instituted a remedial measure that substantially improved the Wi-Fi capabilities of the Class Computers.

43.     Accordingly, there is a real risk that Defendant may have successfully prevailed on a Motion for Summary Judgment or at trial.

44.     Even if Plaintiffs were to prevail at trial, which would be a costly endeavor, risks to the Class remain.   For example, in *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict for plaintiffs after an extended trial. Based upon the jury's findings, recoverable damages would have exceeded $100 million. However, weeks later, the trial court overturned the verdict, entering judgment *n.o.v.* for the individual defendants, and ordered a new trial with respect to the corporate defendant.

45.     Plaintiffs might not have been successful at the class certification stage. Although Plaintiffs and Class Counsel believe that the Wi-Fi Defect is uniform across all models of the Class Computers, Defendant certainly would have attempted to demonstrate a lack of uniformity in an attempt to defeat Plaintiffs' class certification motion.

46.     The proposed Settlement, however, provides very substantial benefits and eliminates the risks associated with the continued litigation and of obtaining and maintaining class action status, thus favoring final approval.

DECLARATION OF GINA M. TUFARO IN SUPPORT OF CLASS COUNSELS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

47.     The fact that all parties to the litigation support the Settlement weighs heavily in favor of its approval. Class Counsel endorses the Settlement after negotiating at arm's-length, and weighing, among others, the numerous factors discussed in Plaintiffs' Memorandum of Law In Support of Final Approval.

48.     This action has been litigated by experienced and competent counsel on both sides.  Collectively, Class Counsel has over 50 years experience litigating complex class actions, such as this one.

49.     True and correct copies of the firm resumes of Class Counsel, which provide a more detailed discussion of Class Counsel's experience, are annexed as Exhibit A to Exhibits 1-4 hereto.

50.     A team of highly skilled defense attorneys from Dykema Gossett, PLLC represented Lenovo.  Their credentials in the vigorous defense of class action lawsuits are similarly unquestionable.

51.     This litigation did not have a governmental participant.

52.     Plaintiffs Garrett Kacsuta and Michael Wheeler have testified that they "personally approve" of the Settlement, that the Settlement represents an "excellent benefit" for the Class and, accordingly, "strongly urge the Court to approve the Settlement."

53.     Further confirming the fairness of the settlement is the favorable reaction by absent members of the Class.  As a testament to the strength of the Settlement achieved on behalf of Class members and the overwhelming support that Class members have shown for this Settlement.  Although the deadline for objections has not yet occurred, to date, Class Counsel has received only one objection to the Settlement out of approximately 83,320 Settlement Class Members.

DECLARATION OF GINA M. TUFARO IN SUPPORT OF CLASS COUNSELS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

54.   Plaintiffs strongly believe that the recovery obtained through the Settlement is exceptional and provides excellent value to Settlement Class Members.

55.   As described in detail in the Williams Declaration, here the Settlement is valued at as much as $50,515,487.15.

56.   Additionally, the warranty period for those Settlement Class Members who select either the Cash Refund or the Credit Certificate shall be extended or renewed for a period of 120 days.

57.   Professor Williams has opined that the: (i) $250 Credit Certificates; plus the (ii) extended 120 day full coverage warranty extensions/renewals are collectively valued at between $20,440,062.40 and $22,348,923.40.

58.   In reaching the valuation of the $250 certificate, Professor Williams calculated the Present Value (PV) of the $250 certificate and applied a discount Rate (r), which took into consideration the following limiting factors: (i) duration of three years; (ii) transferability within a Settlement Class Members' Immediate Family; (iii) stackability; (iv) redemption at www.lenovo.com.

59.   Settlement Class Members may have up to three years to redeem the $250 certificate, given that the Claims Period is one year from the date of Final Approval, and the certificate, itself, has a redemption period of two years.

60.   Professor Williams' analysis is based on the $250 Credit Certificate's PV because the $250 Credit Certificate is akin to cash and is not a coupon.

61.   Here, the $250 Credit Certificate is not a coupon for two reasons.  First, a Settlement Class Member may use the $250 certificate without having to spend any additional monies to purchase a product.  In fact, based on Class Counsel's research, there are several hundred products that can be purchased for $250 or less available on www.lenovo.com.

DECLARATION OF GINA M. TUFARO IN SUPPORT OF CLASS COUNSELS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

62.　While the $250 certificate must be used on www.lenovo.com, it need not be used to buy a *Lenovo-brand product.*

63.　Based on Class Counsel's research www.lenovo.com offers several hundred products that are manufactured by companies other than Lenovo that are priced below $250. In fact, there are even laptop computers that can be purchased for less than $250 on this website.

64.　Accordingly, the $250 Credit Certificate may be used to purchase products other than those "offered by the defendant."

65.　All Settlement Class Members who elect to receive either the Cash Refund or Credit Certificate described above, and who, through the submission of satisfactory documentary evidence, demonstrate that they previously incurred actual, out-of-pocket expenses associated with the repair of their Class Computer, shall be reimbursed for one hundred percent (100%) of the amount of such expenses by Lenovo.

66.　The high quality of the benefits obtained is further confirmed by comparing the Settlement benefits achieved here with those obtained in the settlement achieved in *Fraser v. Asus Computer International*, 12cv00652 (N.D. Ca. Oct. 1, 2012), another class action that involved a Wi-Fi defect in tablet computers.

67.　In *Fraser*, the plaintiff brought a class action lawsuit against Asus Computer International ("ASUS") alleging that certain of Asus' computers contained a design defect that resulted in significant loss or reduction of Wi-Fi capabilities. The parties in *Fraser* settled that action in exchange for a cash payment in the amount of $17.00 to each class member and a free Wi-Fi dongle being provided to each Class member.

68.　In stark contrast to the meager $17 cash benefit provided by the settlement in the *Fraser* Action, here the Settlement, here, provides Class members

DECLARATION OF GINA M. TUFARO IN SUPPORT OF CLASS COUNSELS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

the ability to elect to receive: a large $100 cash component, a Credit Certificate with a face value of $250, or a complete repair of the Wi-Fi Defect, which Professor Williams has estimated is valued at $607.15 per computer.

69.     Additionally, Settlement Class Members can also receive 100% reimbursement for any expenses occurred as a result of a repair of the Wi-Fi capabilities of their Lenovo U-series computers.

70.     Plaintiff Kacsuta's Counsel has expended a total of 3,856 hours litigating the *Kacsuta* Action and Plaintiff Wheeler's Counsel spent over 916 hours litigating the *Wheeler* Action.

71.     Plaintiffs' Counsel spent these hours accomplishing the following tasks: (i) pre-filing engineering and fact investigation for initial complaint; (ii) researching and drafting the initial complaint; (iii) engineering and fact investigation regarding an amended complaint; (iv) researching and drafting an amended complaint; (v) researching and drafting oppositions to Lenovo's motions to dismiss; (vi) post-filing discovery; (vii) post-filing engineering investigation; (viii) developing a settlement proposal and engaging in mediation regarding Plaintiffs' and the Class' claims; (ix) drafting Plaintiffs' motion for preliminary approval and related exhibits; and (x) final approval and ongoing discussions with Claims Administrator concerning settlement administration.

72.     Plaintiff Kacsuta's Counsel spent a total of 425 hours conducting a pre-filing investigation of Plaintiff Kacsuta's and the Class' claims, which included extensive engineering testing regarding the existence of the Wi-Fi Defect.

73.     Additionally, Plaintiff Wheeler's Counsel spent a total of 110 hours conducting a pre-filing investigation.

74.     During this time, Plaintiff Kacsuta's and Plaintiff's Engineering Expert worked closely to devise certain tests that measured the Wi-Fi functionality of the Class Computers.  Among other things, these tests captured the amount of time

1  necessary for the Class Computers (Test Computer) to receive a file transmitted
2  from another computer (Source Computer) across a Wi-Fi communication link.

3      75.   Throughout the entirety of the *Kacsuta* litigation, Lenovo **never**
4  challenged the validity of the test protocol employed by Plaintiffs, or **any** of the
5  results obtained from this test protocol.

6      76.   Plaintiffs and Class Counsel firmly believe that it was the extensive
7  testing performed by Class Counsel that caused Lenovo to explore settlement at a
8  relatively early stage of the litigation.   Simply stated, the very expensive
9  investment in extensive testing at several points in this litigation yielded an
10  excellent return for Plaintiffs and Class members and resulted in a strong
11  settlement being obtained for Plaintiffs and Class members.

12      77.   Plaintiff Kacsuta's Counsel spent a total of 199.5 hours preparing and
13  drafting Plaintiff Kacusta's initial complaint and Plaintiff Wheeler's Counsel spent
14  115 hours preparing and drafting Plaintiff Wheeler's initial complaint. During this
15  time, Plaintiffs' Counsel engaged in an extensive analysis of both the law and the
16  facts.

17      78.   Plaintiff Kacsuta's Counsel's analysis culminated with the filing of a
18  highly detailed initial complaint, which contained numerous Figures.   In light of
19  the length and complexity of the initial compliant, the hours expended on its
20  preparation are reasonable.

21      79.   Plaintiff Kacsuta's Counsel spent a total of 305.50 hours conducting
22  additional engineering tests regarding Plaintiff Kacsuta's First Amended
23  Complaint and 212 hours preparing and drafting Plaintiff Kacsuta's First Amended
24  Complaint.

25      80.   Additionally, Plaintiff Wheeler's Counsel expended 74 hours preparing
26  and drafting Plaintiff Wheeler's amended complaint.

27

28

DECLARATION OF GINA M. TUFARO IN SUPPORT OF CLASS COUNSELS' APPLICATION FOR
AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

81. Plaintiff Kacsuta's Counsel expended 440.5 hours opposing this motion, which included legal research and drafting.

82. On March 5, 2014, Lenovo filed its motion to dismiss Plaintiff Wheeler's Amended Complaint.

83. Plaintiff Wheeler's Counsel expended 135.25 hours opposing this motion.

84. Both motions to dismiss attacked each of the Plaintiffs' claims on multiple grounds, including the failure to plead fraud with particularity, failure to plead a duty to disclose, the economic loss rule, lack of entitlement to injunctive relief and failure to plead a breach of an implied contract and certain warranties.

85. The manner in which Plaintiffs' Counsel staffed the opposition process demonstrates that Plaintiffs' Counsel worked efficiently on the respective oppositions and that the hours spent opposing the motions were reasonable. For example, Plaintiff Kacsuta's counsel assigned the bulk of the task of researching and preparing the initial draft of the Opposition to two junior associates, Mr. Mark Butler and Mr. Peter Demato, whose work was then carefully reviewed and edited by more senior counsel. Plaintiff Wheeler's counsel acted in a similar manner.

86. Plaintiff Kacsuta's counsel spent 197 hours conducting post-filing discovery. Plaintiff Wheeler's Counsel spent 8.75 hours conducting post-filing discovery.

87. During this time, Plaintiff Kacsuta's counsel drafted and served disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure, researched and drafted a Protective Order governing the production of discoverable materials, and researched, drafted and negotiated an extremely complicated order governing the production of Electronically Stored Information (ESI).

88. Plaintiff Kacsuta's Counsel spent a total of 673 hours conducting a post-filing engineering investigation. Plaintiff Wheeler's Counsel spent 16.5 hours conducting a post-filing engineering investigation.

89. Throughout the course of the litigation, Lenovo contended that it had developed certain remedial measures that completely eliminated the existence of the Wi-Fi Defect.

90. In light of the import of Lenovo's argument, Plaintiff Kacsuta's counsel, with Plaintiffs' Engineering Expert, developed tests that specifically targeted the efficacy of Lenovo's remedial measures.

91. These tests were extremely detailed, and involved multiple comparisons/contrasts between Lenovo U-series computers manufactured prior to the time when the remedial measures had been implemented with those that were manufactured after the implementation of the remedial measures.

92. Because Lenovo claimed that more than one remedial measure had been put into place – several of which involved software-based "driver updates," Plaintiffs' Engineering Experts worked closely with Plaintiff Kacsuta's Counsel to develop multiple types of tests, designed to explore each remedial measure.

93. Plaintiff Kacsuta's Counsel spent a total of 741.5 hours developing a settlement proposal and engaging in mediation discussions. Plaintiff Wheeler's counsel also spent 196.75 hours developing this settlement proposal and engaging in mediation discussions.

94. During this phase of litigation, Plaintiff Kacsuta's counsel discussed the possibility of a settlement with two additional experts retained by Plaintiffs' for the purpose of developing a potential settlement structure that would fairly compensate Class members and satisfy the legal requirements imposed by applicable case law other consumer class actions.

DECLARATION OF GINA M. TUFARO IN SUPPORT OF CLASS COUNSELS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

95. Furthermore, for settlement purposes, Plaintiff Kacsuta's counsel worked with Plaintiffs' Engineering Expert to develop and test certain remedial measures that might be incorporated into such a settlement structure.

96. As with the tests that Plaintiff Kacsuta's Counsel and Plaintiffs' Engineering Experts previously developed, these sophisticated tests were designed to address very specific issues.

97. Based on the conversations with Plaintiffs' experts, and based on the testing data gathered by Plaintiffs' Engineering Experts, Class Counsel developed a multi-tiered confidential settlement proposal, which Class Counsel then sent to Lenovo. Lenovo then provided Class Counsel with a counter proposal, which the parties discussed.

98. Additionally, the parties participated in a day long mediation session conducted by the Hon. Dickran Tevrizaian (Ret.).

99. Although the parties to the Lenovo Actions came to an agreement on the material terms of a settlement at the conclusion of this mediation session, the parties continued to negotiate the details of the settlement over the course of the next 10-12 weeks.

100. Class Counsel spent a total of 485 hours drafting Plaintiffs' Motion for Preliminary approval and related documents, including the Settlement Agreement, the Long Form Notice, the Short form Notice and Claim Form

101. Class Counsel spent a total of 385.5 hours on preparing for the final approval hearing and engaging in communications with the Claims Administrator and Class members concerning the Settlement.

102. Class Counsel has researched and drafted Plaintiffs' Motion for Final Approval and all related exhibits.

DECLARATION OF GINA M. TUFARO IN SUPPORT OF CLASS COUNSELS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

103.   Additionally, Plaintiffs' Counsel has worked closely with the Claims Administrator to establish an automated claims process as well as a website dedicated to the submission of claims for Settlement Class Members.

104.   The *Kacsuta* Action and *Wheeler* Action were litigated as two entirely separate and distinct actions until the parties reached agreement on the material terms of the Settlement at the conclusion of the June 5, 2014 Mediation conducted by the Hon. Tevrizian (Ret.).  Following the Mediation, the *Wheeler* Action was stayed by agreement and Plaintiff Wheeler and his counsel worked in unison with Plaintiff Kacsuta and his counsel and Plaintiff Wheeler became a named Plaintiff in the *Kacsuta* Action on August 22, 2014 when Plaintiffs filed their Second Amended Class Action Complaint naming both Kacsuta and Wheeler as named Plaintiffs in the *Kacsuta* Action.  On September 4, 2014, the Court appointed both Kacsuta and Wheeler as Class Representatives in the *Kacsuta* Action.   The *Wheeler* Action remains stayed and will be dismissed if the Court finally approves the Settlement.

105.   In light of the highly technical nature of the claims, as well as the questioned efficacy of certain remedial measures implemented by Lenovo, it was necessary for Class Counsel to work very closely with Plaintiffs' Engineering Experts to develop and implement certain tests on the Class Computers, synthesize the data, and re-test where necessary.

106.   As a result of the time consuming nature of this Action, Class Counsel had to refuse engagements in other matters and actions in order to ensure that Plaintiffs and Class members received superior representation.

107.   This Action presented several legal and factual challenges.   In particular, Plaintiffs might not have been able to establish that Lenovo intended to deceive the public or that its remedial measure was not efficacious.  Despite these "undesirable" aspects, Class Counsel litigated this Action zealously.

18

108. Attached as Exhibit 1 hereto is the Declaration of Paul O. Paradis In Support of Class Counsels' Application for an Award of Attorneys' Fees and Reimbursement of Expenses.

109. Attached as Exhibit 2 hereto is the Declaration of Paul R. Kiesel In Support of Class Counsels' Application for an Award of Attorneys' Fees and Reimbursement of Expenses.

110. Attached as Exhibit 3 hereto is the Declaration of Jordan L. Chaikin In Support of Class Counsels' Application for an Award of Attorneys' Fees and Reimbursement of Expenses.

111. Attached as Exhibit 4 hereto is the Declaration of Nicholas A. Migliaccio In Support of Class Counsels' Application for an Award of Attorneys' Fees and Reimbursement of Expenses.

112. Attached as Exhibit 5 hereto is the Declaration of Plaintiff Garrett Kacsuta In Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Attorneys' Fees, Reimbursement of Expenses and Plaintiffs' Reimbursement Awards.

113. Attached as Exhibit 6 hereto is the Declaration of Michael Wheeler In Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Attorneys' Fees, Reimbursement of Expenses and Plaintiffs' Reimbursement Awards.

\\

\\

\\

\\

\\

19

1           I declare under penalty of perjury under the laws of the United States

2   of America that the foregoing is true and correct.   Executed this 8th day of

3   October, 2014 at New York, New York.

 

                                                    _____

                                                       Gina M. Tufaro

DECLARATION OF GINA M. TUFARO IN SUPPORT OF CLASS COUNSELS'APPLICATION FOR
AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

# TUFARO

# DECLARATION

# EXHIBIT

# 1

1 | **KIESEL LAW LLP**
2 | Paul R. Kiesel (Bar No. CA 119854)
 | 8648 Wilshire Boulevard
3 | Beverly Hills, California 90211-2910
4 | Telephone: (310) 854-4444
 | Facsimile: (310) 854-0812
5 |
6 | **PARADIS LAW GROUP, PLLC**
7 | Paul O. Paradis, Esq. (Pro Hac Vice)
 | Gina M. Turafo, Esq. (Pro Hac Vice)
8 | 570 Seventh Avenue – 20th Floor
9 | New York, New York, 10018
 | Telephone (212) 986-4500
10 | Facsimile: (212) 986-4501
11 |
12 | Interim Class Counsel

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARRETT KACSUTA and MICHAEL WHEELER, individually and on behalf of all others similarly situated, | Case No. SACV 13-00316-CJC(RNBx) |
| Plaintiffs, | **DECLARATION OF PAUL O. PARADIS IN SUPPORT OF CLASS COUNSELS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** |
| v. | |
| LENOVO (United States) Inc., | |
| Defendant. | Hearing Date: December 15, 2014 |
| | Time:          1:30 p.m. |
| | Department:  Courtroom 9B |
| | Judge:         Cormac J. Carney |

1

I, Paul O. Paradis, under penalty of perjury, hereby declare that the following is true and correct to the best of my knowledge and belief:

1. I am over the age of 18 and am fully familiar with the facts and circumstances set forth herein and could competently testify thereto if called upon to do so.

2. I am a Partner of the Paradis Law Group, PLLC, one of the Court-appointed Interim Class Counsel for Plaintiffs and the Class in this action. I submit this Declaration in support of Class Counsels' Application for an Award of Attorneys' Fees and Reimbursement of Expenses and my firm's application for an award of attorneys' fees and reimbursement of expenses in connection with services rendered in the above-entitled action.

3. My firm represents Plaintiffs Garrett Kacsuta and Michael Wheeler in this Action.

4. The identification and background of my firm and its partners and associates is attached hereto as Exhibit A.

5. The total number of hours spent on this litigation by my firm is 3,574.5, as reflected in the following chart:

DECLARATION OF PAUL O. PARADIS IN SUPPORT OF CLASS COUNSELS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

| TIME CATEGORY | TOTAL HOURS EXPENDED |
|---|---|
| Pre-Complaint Engineering Investigation & Factual Research Prior to Filing Initial Complaint | 387.5 |
| Research & Draft Initial Complaint | 199.5 |
| Engineering & Fact Investigation for First Amended Complaint | 282.5 |
| Legal Research & Draft First Amended Complaint | 212.0 |
| Legal Research & Draft Opposition to Deft's Motion to Dismiss | 423.0 |
| Post Filing Discovery | 197.0 |
| Post Filing Engineering Investigation to Assess Effectiveness of Lenovo's Remedial Measures | 673.0 |
| Design Settlement Proposal, Draft Mediation Statement & Mediate Plaintiffs' and Class Members' Claims | 648.0 |
| Negotiate Settlement Agreement, Draft Settlement Agmt., Draft Notice, Summary Notice, Preliminary Approval Order, Final Approval Order, Pltfs' Motion for Preliminary Approval and Supporting Documents & Exhibits | 343.0 |
|  |  |

3

DECLARATION OF PAUL O. PARADIS IN SUPPORT OF CLASS COUNSELS'APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

| | |
|---|---|
| Perform Ongoing Work with Claims Administrator to Get Claims Process and Automated Claim Form Website Fully Operational, Draft Pltfs' Motion for Final Settlement Approval and All Supporting Exhibits, Ongoing Communications With Class Members and Claims Administrator to Facilitate Ongoing Claims Administration Process | 209.0 |
| Total | 3,574.5 |

6.     The total lodestar amount for attorney and paralegal time based on the firm's current rates is $2,305,432.

7.     The number of hours worked and tasks performed by each attorney and paralegal who worked on this matter are set forth in Exhibit B hereto.

8.     The hourly rates shown in the following chart are the current usual and customary rates for each individual based on their experience and years of practice, and are in line with the prevailing rates in the community for similar services by lawyers of reasonably comparable skill, experience and reputation who handle complex class action litigation in federal courts.  A summary breakdown of the lodestar is set forth in the table immediately below.

4

DECLARATION OF PAUL O. PARADIS IN SUPPORT OF CLASS COUNSELS' APPLICATION
FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

| NAME | TITLE | HOURS WORKED | HOURLY RATE | LODESTAR |
|---|---|---|---|---|
| Paul O. Paradis | P | 846.5 | $895.00 | $757,617.50 |
| M. Schwartz | P | 184.5 | $875.00 | $161,437.50 |
| Gina Tufaro | P | 1,063.5 | $825.00 | $877,387.50 |
| Mark Butler | A | 945.5 | $375.00 | $354,562.50 |
| Peter DeMato | A | 495.0 | $300.00 | $148,500.00 |
| Molly Briere | PL | 39.5 | $150.00 | $5,925.00 |
| | | | | |
| TOTALS | | 3,574.5 | | $2,305,432.00 |

(P) Partner

(A) Associate

(PL) Paralegal

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

5

9.     My firm incurred a total of $275,816 in expenses in connection with the prosecution of this litigation.  They are broken down as follows:

### EXPENSES

| DISBURSEMENT | TOTAL |
|---|---|
| Experts, Consultants, Investigators | $239,897.00 |
| Meals, Hotels & Transportation | $12,739.00 |
| LEXIS, Westlaw, Online Library Research | $11,977.00 |
| Mediation Fees | $7,550.00 |
| Photocopies, Elec. Discovery & Data Mgmt. | $1,979.00 |
| Telephone & Facsimile | $977.00 |
| Messenger & Overnight Delivery | $697.00 |
| | |
| **TOTAL** | $275,816.00 |

The expenses pertaining to this case are reflected in the books and records of the firm.   These books and records are prepared from expense vouchers, check records and other documents and are an accurate record of the expenses.

DECLARATION OF PAUL O. PARADIS IN SUPPORT OF CLASS COUNSELS'APPLICATION
FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

1    I declare under penalty of perjury under the laws of the United States of

2  America that the foregoing is true and correct.  Executed this 8th day of October,

3  2014 at New York, New York.

4

5

6

7    _____

8                        Paul O. Paradis

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF PAUL O. PARADIS IN SUPPORT OF CLASS COUNSELS' APPLICATION
FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

# EXHIBIT A

# PARADIS LAW GROUP, PLLC

570 Seventh Avenue, 20th Floor
New York, NY 10018
Telephone: 212-986-4500
Facsimile: 212-986-4501

### Firm Résumé

Paradis Law Group, PLLC ("PLG" or the "Firm") specializes in large, complex litigation in the fields of securities, mergers and acquisitions, corporate governance, consumer protection, commercial law, investor arbitration, unfair employment practices and antitrust. The Firm's attorneys have litigated hundreds of cases in both state and federal courts throughout the United States, and are committed to protecting shareholders and victims of corporate and consumer wrongdoing.

Throughout the course of the past thirty years, the attorneys of PLG have been appointed lead or co-lead counsel in cases resulting in billions of dollars in recoveries on behalf of investors and aggrieved parties. As demonstrated below, the attorneys of PLG have served as a lead counsel in some of the largest securities and consumer fraud class action settlements.

## THE FIRM'S RECENT ACHIEVEMENTS

In re Bank of America Corp. Stockholder Derivative Litigation, CA. No. 4307-VCS (Del. Ch.). Attorneys of PLG were appointed co-lead counsel in stockholder derivative action brought on behalf of Bank of America against the members of the Board of Directors of Bank of America in connection with the acquisition of Merrill Lynch & Co. The efforts of attorneys from PLG resulted in a settlement of $62.5 million.

The NVIDIA GPU Litigation, Case No. C 08-04312 (N.D. Cal.). Attorneys of PLG represented a class of purchasers of certain computers alleging consumer fraud claims arising out of purchases of NVIDIA's defective graphics processing units. In connection with the settlement of these claims, class members were entitled to receive either a replacement computer, repair of a computer or reimbursement for repair. A settlement fund of $2 million was established.

In re Ticketmaster Sales Practice Litig., 09-cv-0912 (C.D. Cal.). Attorneys of PLG were appointed Co-Lead Counsel to represent a class of purchasers of tickets from TicketsNow.com alleging consumer fraud violations based upon deceptive ticket sales practices. The litigation was resolved for compensation valued at $16.5 million.

In re: Toyota Motor Corp. Hybrid Brake Marketing, Sales Practices and Products Liability Litigation, 2:10-CV-00946 (C.D. Ca). Attorneys of PLG were appointed interim lead counsel to represent a class of purchasers of certain defective Toyota vehicles.

In re Philips/Magnavox Television Litigation, 09-cv-3072 (D. N.J.). Attorneys of PLG were appointed interim co-lead counsel to represent a class of purchasers of certain defective

Philips/Magnavox flat screen televisions.  On September 2, 2010, the court denied in material part Philips' motion to dismiss the complaint.  In connection with the settlement of the action, a $4 million settlement fund was created to reimburse class members for the cost of repairs to their televisions.

Conseco Annuity Assurance Co., et al. v. Citigroup, H-03-2240 (S.D. Tx.).  Attorneys of PLG represented Conseco Annuity Assurance Company, IHC Health Plans, Inc., and other purchasers of $2.4 billion Credit Linked Notes issued by Citigroup in a class action alleging securities fraud that was consolidated with Newby v. Enron, et al. The litigation was successfully resolved as a part of a $2 billion settlement with Citigroup.

Hudson Soft Co., Ltd. v. Credit Suisse First Boston, Inc., H-03-0860 (S.D. Tx.). Attorneys of PLG represented Sapporo, Japan-based Hudson Soft Co., Ltd. in an individual action alleging violation of the federal securities laws by Credit Suisse First Boston, Inc. ("CSFB") in connection with the sales of credit-linked notes issued by CSFB. Litigation was successfully resolved for a confidential sum.

In re Abbott Labs. Derivative S'holders Litig., No. 99 C 7246 (N.D. Ill.). Attorneys of PLG represented stockholders of Abbott Laboratories in a stockholder derivative action that was successfully resolved for corporate governance changes.

Corwin v. Abbott Laboratories, No. 2-03-1283 (Ill. App. Ct. – 2d Dist.).  Attorneys of PLG represented stockholders of Abbott Laboratories in a mandamus action calling for the production of the Company's books and records relating to the actions of certain officers in connection with Medicaid fraud.  This action proceeded through trial where the trial court ruled in favor of plaintiffs.  The trial court's ruling was upheld on appeal.

Daugherity v. International Business Machines Corp., No. 23,162 (Tex. – 21st Dist.). Attorneys of PLG represented purchasers of defective computer hard disk drives in an action against International Business Machines Corp. that was successfully resolved in a settlement valued at $35 million.

Danis v. USN Commun. Inc., No. 98 C 7482, (N. D. Ill.). Attorneys of PLG represented purchasers of USN, Inc. securities in a class action alleging securities fraud. Litigation was successfully resolved for $44.7 million.

In re Salomon Bros. Treasury Litig., 91 Civ. 5471 (S.D.N.Y.).  Attorneys of PLG represented purchasers of United States Treasury securities in a class action alleging securities fraud, anti-trust and racketeering violations. Litigation was successfully resolved for $100 million.

## PROMINENT CASES

The success of the attorneys of PLG in prosecuting large, complex litigation in the fields of securities, mergers and acquisitions, corporate governance, consumer protection, unfair employment practices and antitrust is demonstrated by the significant results the Firm has

achieved for its clients and others.  The following is only a representative list of some of the more notable cases that have been, or are currently being, litigated by the attorneys of PLG:

In re Bank of America Corp. Stockholder Derivative Litigation, CA. No. 4307-VCS (Del. Ch.).

In re American Honda Motor Co. Oil Filter Products Liability Litig., 06-cv-1737 (C.D. Cal.);

In re Philips/Magnavox Television Litigation, 09-cv-3072 (D.N.J.);

In re: Toyota Motor Corp. Hybrid Brake Marketing, Sales Practices and Products Liability Litigation, 2:10-CV-00946 (C.D. Cal.):

Marchese v. Cablevision Systems Corporation, 10-cv-2190 (D.NJ)

## THE FIRM'S LAWYERS

The Firm's attorneys have successfully prosecuted both complex individual and class actions involving some the largest corporations in the world.

### PARTNERS

### PAUL O. PARADIS

Paul O. Paradis is the Partner responsible for Firm's Complex Litigation practice and Investigation Group, and is one of the Firm's senior litigators. Throughout his career, Mr. Paradis has specialized in handling highly complex multi-party litigation in federal and state courts across the United States.

Prior to becoming a Partner of the Firm, Mr. Paradis was a Partner at Abbey Spanier Rodd Abrams & Paradis, LLP from 2001 through 2007. Prior to that time, Mr. Paradis was a Senior Partner at Wolf Popper LLP from 1998 to 2001. Mr. Paradis began his legal career at Pomerantz Haudek Block & Grossman as an associate, and became a Partner of the firm in 1996, where he remained until 1998.  Prior to practicing law, Mr. Paradis was employed as a portfolio manager at a major Wall Street financial institution.

Mr. Paradis is admitted to the Bar of the State of New York, the State of New Jersey, the United States District Courts for the Southern and Eastern Districts of New York, District of New Jersey, and Eastern District of Michigan.  He received his B.S. from Bentley College in 1986, and his J.D. (cum laude) from New York Law School in 1990, where he was a member of the New York Law School Law Review.

## MICHAEL A. SCHWARTZ

Michael A. Schwartz is a senior litigator. Like Mr. Paradis, throughout Mr. Schwartz's career, Mr. Schwartz has specialized in handling highly complex multi-party litigation in federal and state courts across the United States.

Prior to becoming a Partner of the Firm, Mr. Schwartz was a Partner at Wolf Popper LLP from 1998 to 2007. Mr. Schwartz began his legal career at Pomerantz Haudek Block & Grossman as an associate.

Mr. Schwartz is admitted to the Bar of the State of New York, the United States District Courts for the Southern District of New York, the United States Courts of Appeals for the First and Third Circuits. He received his B.S. from Brooklyn College in 1988, and his J.D. from Brooklyn Law School in 1992.

## GINA M. TUFARO

Ms. Tufaro is a Partner of the Firm specializing in complex civil litigation.

Ms. Tufaro received her B.A. (magna cum laude) from Rutgers University in 1999 and her J.D. (magna cum laude) from New York Law School in 2002 where she served as Managing Editor of The Journal of Human Rights. Ms. Tufaro is admitted to the Bar of the State of New York, the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second, Fifth, Seventh and Ninth Circuits. Published works include: Will Carnivore Devour the Fourth? An Exploration into the Constitutionality of the FBI Created Program, 18 N.Y.L.J. Hum. Rts. 305.

Prior to becoming a Partner of the Firm, Ms. Tufaro was an associate at Abbey Spanier Rodd Abrams & Paradis, LLP where she specialized in complex class and individual actions brought on behalf of victims of corporate, consumer and securities fraud.

## ASSOCIATES

## MARK BUTLER

Mr. Butler received his B.A. from Syracuse University in 2007, where he graduated *cum laude*, and received his J.D. from New York Law School in 2010, where he served as a Senior Editor of the *New York Law School Law Review* and graduated *magna cum laude*. He was also a Dean's List recipient in Fall 2007 and Spring 2008 and was a High Honors Dean's List Recipient in Fall 2008, Spring 2009, Fall 2009, and Spring 2010. Mr. Butler is admitted to the New York State Bar.

## PETER DEMATO

Mr. Demato received his B.S. from Stonybrook University in 2010 and received his J.D. from Brooklyn Law School in 2013 where he was a member of the *Brooklyn Journal of Corporate, Financial and Commercial Law*. He was also a recipient of the CALI Excellence for the Future Award in Criminal Law in 2010 and the CALI Excellence for the Future Award in Corporate Finance in 2012. Mr. Demato is admitted to the New York State Bar.

## MARK MAHAN

Mr. Mahan received his B.A. from William Patterson University in 2008 and received his J.D. from Rutgers University School of Law - Newark in 2011 where he served as an editor on the *Rutgers Law Review*. He also served as a Teaching Assistant for Legal Writing at the law school. Mr. Mahan is admitted to the New York State Bar.

## PROFESSIONALS

## THOMAS J. HALL

Thomas J. Hall is a Forensic Engineer responsible for investigative and technical analysis of defective consumer products.

Prior to working for the Firm, Mr. Hall owned and managed MaxG Technology LLC, a technical consulting and training company, specializing in Vehicle Braking and Stability technology for the transportation industry. Mr. Hall was formerly the Chief Engineer for Global Brake Systems - General Motors for the Robert Bosch Chassis Systems Division. Prior to that, Mr. Hall was the Engineering Manager for System Design and Validation at ITT Automotive, Continental Teves.

Mr. Hall's experience also includes development of ABS, TCS and Stability Control Systems, responsibility for application of system engineering principles and process to the brake industry and development and promotion of brake system proposals and advance braking technologies.

Mr. Hall holds a B.S. in mechanical engineering from the University of Michigan and a M.S. in Finance from Walsh College.

# EXHIBIT B

**Paradis Law Group, PLLC**

| Activity | Paradis Partner | Schwartz Partner | Tufaro Partner | Butler Associate | Demato Associate | Briere Paralegal | Total Time This Activity | % of Total Time | Total Lodestar This Activity | % of all Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|
| Pre-Compliant Engineering & Fact Investigation Prior to Filing Initial Complaint | 101.50 | 127.50 | - | 158.50 | - | - | 387.50 | 10.84% | $ 261,843 | 11.36% |
| Research & Draft Initial Complaint | 30.00 | 12.00 | 60.50 | 27.00 | 70.00 | - | 199.50 | 5.58% | $ 118,388 | 5.14% |
| Engineering & Fact Investigation for First Amended Complaint | 47.00 | 25.00 | 70.00 | 89.00 | 51.50 | - | 282.50 | 7.90% | $ 170,515 | 7.40% |
| Research & Draft First Amended Complaint | 32.50 | 5.50 | 58.00 | 65.00 | 37.50 | 13.50 | 212.00 | 5.93% | $ 119,400 | 5.18% |
| Research & Draft Opposition To Motion To Dismiss | 24.50 | 8.50 | 79.50 | 162.00 | 122.50 | 26.00 | 423.00 | 11.83% | $ 196,353 | 8.52% |
| Post Filing Discovery | 6.50 | 6.00 | 61.50 | 77.50 | 45.50 | - | 197.00 | 5.51% | $ 104,517 | 4.53% |
| Post Filing Engineering Investigation To Assess Effectiveness of Lenovo's Remedial Measures | 133.00 | - | 131.00 | 242.50 | 166.50 | - | 673.00 | 18.83% | $ 367,998 | 15.96% |
| Design Settlement Proposal, Draft Mediation Statement & Mediate Plaintiffs' & Class Member Claims | 247.00 | - | 275.50 | 124.00 | 1.50 | - | 648.00 | 18.13% | $ 495,303 | 21.48% |
| Negotiate Settlement Agmt., Draft Settlement Agmt., Draft Notice, Summary Notice, Preliminary Approval Order, Final Approval Order, Draft Plaintiffs' Motion for Preliminary Approval and Supporting Documents & Exs. | 131.50 | - | 211.50 | - | - | - | 343.00 | 9.60% | $ 292,180 | 12.67% |
| Ongoing Work with Claims Administrator to get claims process and automated Claim Form website up and running, Final Approval and All Supporting Exhibits, Communications with Class Members and Claims Administrator to Facilitate Ongoing Claims Process | 93.00 | - | 116.00 | - | - | - | 209.00 | 5.85% | $ 178,935 | 7.76% |
| | 846.50 | 184.50 | 1,063.50 | 945.50 | 495.00 | 39.50 | 3,574.50 | 100.00% | $ 2,305,432 | 100.00% |

# TUFARO

# DECLARATION

# EXHIBIT

# 2

**KIESEL LAW LLP**
Paul R. Kiesel (Bar No. CA 119854)
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Telephone: (310) 854-4444
Facsimile: (310) 854-0812

**PARADIS LAW GROUP, PLLC**
Paul O. Paradis, Esq. (Pro Hac Vice)
Gina M. Turafo, Esq. (Pro Hac Vice)
570 Seventh Avenue – 20th Floor
New York, New York, 10018
Telephone (212) 986-4500
Facsimile: (212) 986-4501

Interim Class Counsel

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARRETT KACSUTA and MICHAEL WHEELER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LENOVO (United States) Inc.,<br><br>Defendant. | Case No. SACV 13-00316-CJC(RNBx)<br><br>**DECLARATION OF PAUL R. KIESEL IN SUPPORT OF CLASS COUNSELS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**<br><br>Hearing Date: December 15, 2014<br>Time:           1:30 p.m.<br>Department:  Courtroom 9B<br>Judge:         Cormac J. Carney |

1

DECLARATION OF PAUL R. KIESEL IN SUPPORT OF CLASS COUNSELS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

1    I, Paul R. Kiesel, under penalty of perjury, hereby declare that the following is
2  true and correct to the best of my knowledge and belief:

3

4    1.    I am over the age of 18 and am fully familiar with the facts and
5  circumstances set forth herein and could competently testify thereto if called upon
6  to do so.

7    2.    I am a Partner of Kiesel Law, LLP, one of the Court-appointed Interim
8  Class Counsel for Plaintiffs and the Class in this action. I submit this Declaration
9  in support of Class Counsels' Application for an Award of Attorneys' Fees and
10  Reimbursement of Expenses and my firm's application for an award of attorneys'
11  fees and reimbursement of expenses in connection with services rendered in the
12  above-entitled action.

13    3.    My firm represents Plaintiffs Garrett Kacsuta in this Action.

14    4.    The identification and background of my firm and its partners and
15  associates is attached hereto as Exhibit A.

16    5.    The total number of hours spent on this litigation by my firm is 281.5,
17  as reflected in the following chart:

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF PAUL R. KIESEL IN SUPPORT OF CLASS COUNSELS' APPLICATION FOR
AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

| **TIME CATEGORY** | **TOTAL HOURS EXPENDED** |
|---|---|
| Pre-Complaint Engineering Investigation & Factual Research Prior to Filing Initial Complaint | 37.5 |
| Research & Draft Initial Complaint | - |
| Engineering & Fact Investigation for First Amended Complaint | 23.0 |
| Legal Research & Draft First Amended Complaint | - |
| Legal Research & Draft Opposition to Deft's Motion to Dismiss | 17.5 |
| Post Filing Discovery | - |
| Post Filing Engineering Investigation to Assess Effectiveness of Lenovo's Remedial Measures | - |
| Design Settlement Proposal, Draft Mediation Statement & Mediate Plaintiffs' and Class Members' Claims | 93.5 |
| Negotiate Settlement Agreement, Draft Settlement Agmt., Draft Notice, Summary Notice, Preliminary Approval Order, Final Approval Order, Pltfs' Motion for Preliminary Approval and Supporting Documents & Exhibits | 39.5 |
| | |

DECLARATION OF PAUL R. KIESEL IN SUPPORT OF CLASS COUNSELS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

| Perform Ongoing Work with Claims Administrator to Get Claims Process and Automated Claim Form Website Fully Operational, Draft Pltfs' Motion for Final Settlement Approval and All Supporting Exhibits, Ongoing Communications With Class Members and Claims Administrator to Facilitate Ongoing Claims Administration Process | 70.5 |
|---|---|
| Total | 281.5 |

6.    The total lodestar amount for attorney and paralegal time based on the firm's current rates is $309,650.

7.    The number of hours worked and tasks performed by each attorney and paralegal who worked on this matter are set forth in Exhibit B hereto.

8.    The hourly rates shown in the following chart are the current usual and customary rates for each individual based on their experience and years of practice, and are in line with the prevailing rates in the community for similar services by lawyers of reasonably comparable skill, experience and reputation who handle complex class action litigation in federal courts.  A summary breakdown of the lodestar is set forth in the table immediately below.

| NAME | TITLE | HOURS WORKED | HOURLY RATE | LODESTAR |
|---|---|---|---|---|
| Paul R. Kiesel | P | 281.5 | $1,100 | $309,650.00 |
| | | | | |
| TOTALS | | 281.5 | | $309,650.00 |

(P) Partner

(A) Associate

(PL) Paralegal

4

9.     My firm incurred a total of $3,188.58 in expenses in connection with the prosecution of this litigation.  They are broken down as follows:

## EXPENSES

| DISBURSEMENT | TOTAL |
|---|---|
| Experts, Consultants, Investigators | $ - |
| Meals, Hotels & Transportation | $987.00 |
| LEXIS, Westlaw, Online Library Research | $476.25 |
| Mediation Fees | $ - |
| Photocopies, Elec. Discovery & Data Mgmt. | $979.5 |
| Telephone & Facsimile | $98.00 |
| Messenger & Overnight Delivery | $247.83 |
| Filing Fees | $400.00 |
| | |
| **TOTAL** | $3,188.58 |

The expenses pertaining to this case are reflected in the books and records of the firm.  These books and records are prepared from expense vouchers, check records and other documents and are an accurate record of the expenses.

DECLARATION OF PAUL R. KIESEL IN SUPPORT OF CLASS COUNSELS' APPLICATION FOR
AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

1    I declare under penalty of perjury under the laws of the United States of

2    America that the foregoing is true and correct.  Executed this 7th day of October,

3    2014 at Beverly Hills, California.

4

5

6                                                Paul R. Kiesel

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

# EXHIBIT A



# Kiesel Law

8648 Wilshire Boulevard
Beverly Hills, California 90211

Telephone: (310) 854-4444
E-mail: info@kiesel-law.com
Facsimile: (310) 854-0812

www.kiesel-law.com

**Kiesel Law LLP** is one of the most accomplished consumer law firms in the United States. KL successfully represents classes or groups of persons, individuals, businesses, and public and private entities in courts nationwide in the areas of personal injury, mass torts, pharmaceutical and medical device litigation, privacy, construction and product defects, toxic exposure, consumer protection, professional malpractice, financial fraud, insurance bad faith, and human rights. We possess the sophisticated skills and financial resources necessary to litigate and resolve large, complex cases on our clients' behalf.

KL and its predecessor firms have a long history of extensive litigation in complex matters. KL has litigated and resolved some of the most important civil cases in the nation. Our attorneys possess a diverse range of professional skills and come from a wide variety of backgrounds.

## A. CASE PROFILES

### 1. Mass Torts

*Clergy Cases I, II, & III*, California JCCPs 4286, 4297, and 4359. In 2002, the state of California passed a law that opened a one-year window of time to file civil suits based on claims of sexual abuse of a minor that would otherwise have been time-barred as of January 1, 2003. That year, in the wake of the very public Clergy sexual abuse scandal involving Boston's Archdiocese, many hundreds of survivors came forward to file civil suits based on these revived claims. These survivors alleged that the Church was liable for the molestations because, among other things, it (1) knew or had reason to know that the priests were molesting minors, and yet failed to supervise the priests to ensure that the priests would not molest again; (2) concealed facts relating to the priests' molestations; and (3) harbored, aided, and concealed the priests to avoid arrest and prosecution.

KL led the fight for justice and accountability in California against numerous corrupt Church entities on behalf of hundreds of these survivors, and was



appointed Liaison Counsel on behalf of hundreds more who filed revived claims against the Dioceses of Orange, Los Angeles, San Diego, and Fresno.

### Diocese of Orange

Ninety survivors of Clergy sexual abuse filed lawsuits against the Roman Catholic Diocese of Orange. In December 2004, after nearly two years of intense negotiations, the firm helped to successfully settle all claims against the Roman Catholic Diocese of Orange ("Diocese of Orange") for $100 million. One of the key terms of the settlement was a promise that the secret files of the Diocese of Orange would be made public.

### Archdiocese of Los Angeles

Five-hundred and eight survivors of clergy sexual abuse filed lawsuits against the Roman Catholic Archbishop of Los Angeles ("Archdiocese of Los Angeles"). KL was appointed Liaison Counsel on behalf of these individuals, all of whom were sexually abused as minors, and many of whom were abused by priests who were incardinated.

Over the course of five years and as a result of hard-fought discovery battles, the mountain of damning evidence in support of the plaintiffs' claims continued to grow. For example, many of the accused priests had multiple victims because they were moved by their superiors from one parish to another as accusations arose. The documents from priest-perpetrator files revealed that the Church had failed time and again to protect its most innocent and vulnerable parishioners from harm.

In July 2007, on the very eve of the first of more than a dozen scheduled trials, KL reached an agreement with the Roman Catholic Archbishop of Los Angeles ("Archdiocese of Los Angeles") to settle all cases against it for $660 million. KL is well-regarded for having successfully negotiated this, the largest settlement with any diocese in the United States. More importantly, KL never faltered in keeping its promise to ensure that the Archdiocese of Los Angeles kept one of the key terms of the settlement: that it make certain of its confidential files public to shed light on exactly what Church officials knew about the abuse accusations, and when they learned about them.

### Archdiocese of San Diego

One-hundred and forty-four survivors were sexually abused by Clergy members in the Roman Catholic Diocese of San Diego under lax supervision by the Church. In September 2007, the Diocese agreed to pay nearly $200 million to these 144 survivors. This is the second-largest settlement by a Roman



Kiesel Law LLP
Page 3

Catholic diocese nationwide since claims of sexual abuse by clergy members came to light in 2002.

*Chatsworth Metrolink Collision Cases*, Lead Case No. PC043703, Los Angeles Superior Court. On the afternoon of Friday, September 12, 2008, Metrolink Train 111 collided head-on with a Union Pacific freight train in the Chatsworth district of Los Angeles, resulting in twenty-four passenger deaths and numerous passenger injuries, many of them serious and permanent. The National Transportation Safety Board ("NTSB") investigated the cause of the collision and concluded that the Metrolink engineer ran through a red signal before entering a section of single track where the opposing freight train had the right of way. The NTSB determined that the engineer was distracted by text messages that he was sending while on duty.

The Union Pacific engineer triggered the emergency air brake two seconds before impact, but the Metrolink engineer never applied the brakes on his train at all. When the two trains collided, the Metrolink train went from traveling at approximately forty-two miles per hour to traveling backward. The Metrolink locomotive telescoped into the passenger compartment of the first passenger car, then caught fire.

Afterward, the family members of deceased passengers and most of the injured passengers filed suit against Metrolink and other defendants to recover through the California judicial system. KL represented passengers and family members in eleven of the cases, and in 2008 Paul Kiesel was selected and appointed Plaintiffs' Liaison Counsel in the coordinated proceedings. Working closely with other members of the Plaintiffs' Steering Committee and with counsel for the defendants, Mr. Kiesel successfully negotiated the recovery of $200 million for the plaintiffs, the maximum amount that the defendants could be required to pay under federal law.

*Federal Express Vehicle Collision Cases*, Judicial Council Coordination Proceeding No. 4788, Los Angeles Superior Court. Interim Lead and Liaison Counsel for Plaintiffs. On Thursday, April 10, 2014, a Federal Express truck driver towing two 28 foot-long freight trailersbegan to make a lane change from the southbound Interstate 5 number two lane into the number one southbound lane. However, the tractor and trailers did not stop and, instead, crossed over the rumble strip on the eastern edge of the southbound lanes, veered into and crashed through and across a 58' center median, crossed over the rumble strip on the western edge of the northbound lanes, entered into the northbound number one lane of I-5 where it struck a Nissan Altima automobile, continued into the number two northbound lane and, four seconds after beginning his original lane change, struck a northbound 2014 Setra bus. The



Kiesel Law LLP
Page 4

impact was so massive that it forced the tractor trailer and the bus onto the shoulder where they caught fire and burned in an uncontrolled conflagration.

## 2. Privacy

*In re: Pellicano Cases*, Lead Case No. BC316318 (Los Angeles Superior Court). Once a high-profile private investigator, Anthony Pellicano is currently serving a lengthy sentence in federal prison for unlawful wiretapping and racketeering. In 2008, KL was appointed Co-Lead Class Counsel in this putative class action case arising from Mr. Pellicano's wiretapping in violation of California Penal Code Sections 630 *et seq*.

*Nader v. Capital One Bank (U.S.A.), N.A.* (United States District Court – Central District of California), Case No. 12-CV-01265-DSF; *Stone v. Howard Johnson International, Inc.* (United States District Court – Central District of California), Case No. 12-CV-1684-PSG; *Greenberg v. E-Trade Financial Corporation*, Case No. BC360152 (Los Angeles Superior Court); *Mount v. Wells Fargo Home Mortgage, Inc.*, Case No. BC395959 (Los Angeles Superior Court); *Raymond v. Carsdirect.com*, Case No. BC256282 (Los Angeles Superior Court). Businesses provide the familiar admonition that telephone calls with consumers "may be recorded for quality assurance and training purposes" in order to comply with California law, which requires the consent of all parties to a telephone conversation before it may be recorded. Failure to comply with this requirement constitutes a serious personal privacy violation for which consumers may recover monetary damages. In these cases, KL represented classes of California individuals, in both federal and state court, whose called were recorded without their knowledge or permission.

## 3. Construction Defect

*In Re: Galvanized Steel Pipe Litigation*, Case No. BC174649 (Los Angeles Superior Court). As Class Counsel, KL prosecuted and settled claims made on behalf of thousands of named plaintiff and class member homeowners against the developer defendants and cross-defendants for defective plumbing in this complex suit involving nineteen separate individual and class action product liability cases. The actions resolved for more than $41 million.

*Silver v. Del Webb, Nevada Case*. No. A437325. Paul Kiesel and Bill Larson were appointed Lead Counsel in this certified class construction defect suit to recover for the installation of faulty plumbing systems in approximately 3,000 new homes in Las Vegas. KL negotiated a resolution of the case for $21 million on the day before trial was to begin. At the time, this was the largest construction defect case in Nevada history.



Kiesel Law LLP
Page 5

4.    **Economic Injury Product Defects**

*In Re: Avandia Marketing, Sales Practices and Product Liability Litigation.* The Plaintiffs' Steering Committee for this multi-district litigation selected Paul Kiesel to serve as Lead Counsel for the Plaintiffs' Steering Committee in March 2011. This national litigation involves numerous federal lawsuits brought against defendant GlaxoSmithKline PLC, manufacturer of the onetime "blockbuster" type 2 diabetes drug Avandia, which has been pulled from the shelves in Europe, India, and New Zealand, and which is only available in the United States as a drug of last resort. KL represents the County of Santa Clara in a claim for the return of all moneys used to purchase this toxic drug.

*In re: Rio Hair Naturalizer Products Liability Litigation*, MDL 1055 (E.D. MI). In 1995, Paul Kiesel was appointed Co-Lead Counsel in multi-district litigation arising from a defective hair straightening product that injured over 50,000 plaintiffs. The matter resolved successfully as a limited fund, non-opt-out class action.

*In re: Packard Bell Consumer Certified Class Action Litigation*, Case No. BC125671 (Los Angeles County Superior Court). In 1995, Paul Kiesel was a member of the Plaintiffs' Steering Committee in this consumer class action involving product defect claims, and which resolved successfully.

*Mikhail v. Toshiba America Inc.*, Case No. BC278163 (Los Angeles Superior Court); *Kan v. Toshiba, Inc.*, Case No. BC327273 (Los Angeles Superior Court). KL was appointed Lead Counsel in these class actions brought to recover for the distribution of faulty computers. The cases resolved with class members eligible to receive up to $36 million (*Kan*) and $50 million (Mikhail).

*Anderson v. Toshiba America*, Case No. BC299977 (Los Angeles Superior Court). In 2003, KL was counsel for the plaintiffs in a class action alleging product defects, and which resolved successfully.

5.    **Personal Injury Product Defects**

*Wright Hip System Cases*, California JCCP 4710. In November, 2012, KL was appointed Liaison Counsel in this coordinated proceeding involving injuries arising out of the defective design of metal-on-metal hip implants.

*In Re: Wright Medical Technology, Inc., Conserve Hip Implant Products Liability Litigation*, Multidistrict Litigation 2329. In May, 2012, KL was appointed Co-Lead Counsel in this federal coordinated action arising out of injuries sustained as a result of implantation of defective metal-on-metal hip devices.



Kiesel Law LLP
Page 6

> *Yaz, Yasmin and Ocella Contraceptive Cases*, California JCCP 4608. KL was appointed Co-Liaison Counsel in this litigation arising out of injuries and deaths that occurred following the ingestion of oral contraceptives.
>
> *In Re: Toyota Motor Corp. Hybrid Brake Marketing, Sales Practices, and Products*, Federal Multidistrict Litigation 2172. KL was appointed Liaison Counsel in this case involving defective automotive brakes.
>
> *Serrano v. City of Los Angeles*, Case No. BC144230, Los Angeles County Superior Court. Paul Kiesel was appointed Lead Counsel in this multi-fatality product liability litigation which led to an $8.2 million settlement.
>
> *In Re: Diet Drug Litigation*, California JCCP 4032. In 2003, KL served as the Plaintiffs' Lead Counsel in this action involving claims arising out of use of the diet drug Phen-Fen, and which settled confidentially.
>
> *Algario et al. v. Eli Lilly and Company et al.*, Lead Case No. BC347855, Los Angeles Superior Court. In 2006, KL was appointed Lead Counsel in this class action to recover for injuries resulting from ingestion of the medication Zyprexa. The case settled favorably.
>
> *In Re: Vioxx Cases*, California JCCP 4247. In 2007, KL served on the Plaintiffs' Executive Committee for this California JCCP which involved claims arising out of the use of the drug Vioxx.

### 6.   Unfair Employment Practices

> *In Re: The Securitas Security Services*, California JCCP 4460. KL represented the plaintiffs in this class action to recover for violations of California labor laws, which resolved successfully.

### 7.   Toxic Exposure

> *In Re: Unocal Refinery Litigation*, Case No. C94-0414. Paul Kiesel served as a member of the Direct Action Steering Committee and as Chair of the Allocation Committee in this case involving the toxic contamination of several communities. Mr. Kiesel developed a methodology and plan of allocation for an $80 million settlement on behalf of approximately 1,500 plaintiffs.
>
> *Zachary et al. v. Arco et al.*, Case No. BC 209944 (Los Angeles County Superior Court). Paul Kiesel was appointed Lead Counsel in this mass toxic tort case resulting from a ruptured oil pipeline. The case resolved successfully.



Kiesel Law LLP
Page 7

*Tosco Refinery Fire*, Lead Case No. NC028924 (Los Angeles Superior Court). KL was appointed Lead Counsel in the Tosco Refinery Fire mass toxic tort litigation, in which thousands of people were affected as a result of an explosion and blaze at the Tosco refinery facility in Wilmington, California. The toxic plume caused by this massive fire affected over three thousand people. The matter settled with all defendants on July 1, 2005.

## 8.    Consumer Protection

*Pilkington v. U.S. Search.com*, Case No. BC234858 (Los Angeles Superior Court). In 2000, Paul Kiesel was appointed Lead Counsel in this matter involving a technically flawed online search facility which purported to provide adoptees and their biological parents with information about one another upon demand.

*Black v. Blue Cross of America*, Case No. BC250339 (Los Angeles Superior Court). KL was co-counsel in this class action against the largest health care service plan in California for improper mid-year contract modifications. KL prosecuted and settled claims made on behalf of the named plaintiff and class members. Following a finding of liability against the insurer for breach of contract and breach of the covenant of good faith and fair dealing, KL successfully reached agreement to settle all claims for $25 million. The terms of the settlement called for a reimbursement of 100 percent of the actual damages to nearly 66,000 overpaying subscribers.

*Draucker Development and True Communication, Inc. v. Yahoo!, Inc.*, Case No. CV06-2737 JFW (Rcx) (C.D. Cal.). KL was a member of the Plaintiffs' Steering Committee in this matter in which advertisers sought to recover from an online search engine for breach of contract and unfair business practices.

*In re Carrier IQ, Inc. Consumer Privacy Litigation*, Case No. 3:12-md-2330 (N.D. Cal). KL is a member of the Plaintiffs' Executive Committee in this class action involving alleged interception and manipulation of consumers' personal communications on smart phones.

*In re Facebook Internet Tracking Litigation*, Case No. 5:12-md-02314 (N.D. Cal.) KL serves as Liaison Counsel for Plaintiffs in this proceeding alleging the interception of Facebook users' internet communications and activity after logging out of Facebook.



Kiesel Law LLP
Page 8

9.   **Antitrust**

*In re: Wholesale Electricity Antitrust Cases I & II*, California JCCP 4204-00005 and 4204-00006. In 2000, Paul Kiesel was a member of the Plaintiffs' Steering Committee in this litigation which the plaintiffs sought to recover damages from energy traders for unfair business practices.

10.   **Financial Misconduct**

*In re: Transient Occupancy Tax Cases*, California JCCP 4472. In 2004, KL acted as Co-Lead Counsel representing the City of Los Angeles in a class action on behalf of all cities in the state of California to recover unremitted occupancy taxes from certain online travel companies.

*American Medical Association et al. v. Wellpoint, Inc.*, MDL 09-2074 (C.D. Cal.). In 2009, KL was appointed Co-Lead Counsel in this multi-district litigation in which physicians and physician groups seek to recover payments for treatment that they provided to certain of their medical patients.

*Murray v. Belka - "First Pension"*, California JCCP 3131. KL joined forces with Aguirre & Meyer to take on a corrupt pension plan administrator, one of the nation's largest law firms, and the world's largest accounting firm to achieve settlements in providing full restitution for 340 mostly elderly consumers who had lost their life savings to a Ponzi scheme. In July 2000 after a six month trial, the jury found the accounting firm liable for fraud, misrepresentation, aiding and abetting a fraud, and concealment, and issued eighteen findings supporting punitive damages. PWC subsequently settled for a confidential amount which made the investors whole.

*In re: Hilton Hotels Corporation Shareholder Litigation*, Case No. BC373765 (Los Angeles Superior Court). In 2007, KL was appointed Co-Lead Counsel in this class action in which Hilton shareholders sought to block a proposed merger with the Blackstone Group.

11.   **Insurance Bad Faith**

*In re: Northridge Earthquake Litigation*, Lead Case No. BC265082 (Los Angeles Superior Court). In 2002, KL served as Plaintiffs' Liason Counsel in suits against State Farm Insurance, 21st Century Insurance, Farmers Insurance, and the USAA Insurance Company.



## B. FIRM BIOGRAPHY

### 1. Partners

**PAUL R. KIESEL,** admitted to practice in California, 1985; admitted to practice before the United States Supreme Court; United States District Court, Central District of California; United States District Court, Northern District of California; Southern District of California; United States District Court, Eastern District of California. *Education.* Connecticut College, B.A. 1982; Whittier College School of Law, J.D. 1985, Honorary Doctor of Law 2005. *Awards and Honors.* California Judicial Council 2014 Distinguished Service Award—Stanley Mosk Defender Of Justice Award; 2014 State Bar President's Access to Justice Award; 2014 Daily Journal Top 100 Attorneys in California; Chief Justice Award for Exemplary Service and Leadership, 2012; Named one of the Twelve Techiest Lawyers in America, ABA Journal, 2012; Access to Justice Award Lawyers' Club of San Francisco, 2012. Named one of 500 Leading Lawyers in America, Lawdragon, 2009-2011; AV Peer Review Rated, Martindale-Hubbell; Named one of the one hundred most influential attorneys in California by the California Business Journal; Named one of the top fifty trial lawyers in Los Angeles by the Los Angeles Business Journal. *Publications and Presentations.* Co-author, Matthew Bender Practice Guide: California Pretrial Civil Procedure (treatise); Co-author, Matthew Bender Practice Guide: California Civil Discovery (treatise); frequent presenter for continuing legal education programs; frequent speaker and writer on subjects related to technology in the practice of law. *Member.* California State Bar Association; Appointed by California Supreme Court Chief Justice Ronald George to the California Judicial Council Civil and Small Claims Advisory Committee; Executive Committee, President-Elect, Los Angeles County Bar Association; Co-Chair, California Open Courts Coalition; Board of Governors, Association of Business Trial Lawyers, 2001-2005; Emeritus Member of the Board of Governors, Consumer Attorneys of California; Emeritus Member of the Board of Governors, Consumer Attorneys Association of Los Angeles.

**HELEN E. ZUKIN,** admitted to practice in California, 1985; admitted to practice before the United States Supreme Court; United States District Court, Central District of California; United States District Court, Northern District of California; Southern District of California; United States District Court, Eastern District of California. *Education*: University of California at Santa Cruz, B.A., 1980; Loyola Law School, J.D. 1985. *Employment.* Greene, O'Reilly, Agnew & Broillet, 1985-1990; Simke, Chodos, Silberfeld & Anteau, 1990-95; Special Indoor Air Quality



Counsel, Carrier Corporation, Syracuse, New York, 1991-98; Law Offices of Helen E. Zukin, 1995-2007; Kiesel Law, 2007-present. *Member*. Los Angeles County Superior Court Committee on Cost Reduction and Judicial Efficiency in Civil Operations, Member, 2012, Federal Magistrate Judge Merit Selection Panel, 2011-present, Los Angeles County Bar Association Judicial Appointments Committee, Vice-Chair, 2011-present, The Chancery Club, Member, 2011-present, Los Angeles Ethics Commission, President, 2008-2011, Vice President, 2007-2008, Commissioner, 2007-2007, Temporary Judges Program Los Angeles Superior Court, Participant, 2005-present, Commission on Judicial Nominees Evaluation (JNE) of the State Bar of California, Chair, 1998-99, Vice-Chair, 1997-98, Review Committee Chair, 2004-05, Annual Lecturer, 1999–present, Member, 1995-99, 2002-04; Chancery Club, Los Angeles County Bar Association; Executive Committee, Litigation Section, Los Angeles County Bar Association; Board Member Emeritus, Consumer Attorneys Association of Los Angeles; Board of Governors, Consumer Attorneys Association of Los Angeles; Consumer Attorneys of California; American Association for Justice; Women Lawyers Association of Los Angeles. *Awards & Honors*. City of Los Angeles City Council Commendation for Service to the Los Angeles City Ethics Commission; Commendation, Consumer Attorneys Association of Los Angeles, 2002; President's Award for Outstanding Contribution to the Association; Consumer Attorneys Association of Los Angeles, 2000. *Publications*. Editor in Chief, *Indoor Air Pollution Law Report* (1991-94); *How to Identify a Good Toxic Tort Case*, Consumer Attorneys Association of Los Angeles, 1997; Editor, Indoor Air Quality Handbook for Building Owners and Operators, Carrier Corporation, March 1997; *Proving Causation in a Toxic Tort Case*, Consumer Attorneys Association of Los Angeles, 1996; *How to Avoid Becoming a Target Defendant in an Indoor Air Quality Case*, American Society of Heating and Refrigerating Engineers Annual Journal, April 1992; *Legal Ramifications of Indoor Air Pollution*, University of Tulsa Environmental Journal, May 1992; *The Use of Experts in an Indoor Air Quality Case*, Indoor Air Pollution Law Report, March 1992; *What Is a Sick Building Syndrome Case?*, The Advocate, February 1992; *How to Prove a Sick Building Syndrome Case*, Indoor Air Pollution Law Report, December 1992; *Emerging Issues in Toxic Tort Cases*, Environmental Law Reporter, November 1990. *Presentations*. American Institute of Architecture; American Society of Heating and Refrigerating Engineers; Building Owners & Managers Association; Consumer Attorneys Association of Los Angeles; Continuing Education of the California State Bar; The Rutter Group; Mealey's Legal Publications; University of Tulsa Annual Environmental Symposium. *Community Service*. Los Angeles City Ethics Commission, President, 2008-11, Vice



Kiesel Law LLP
Page 11

President, 2007-08, Commissioner, 2006-07; Temporary Judges Program, Los Angeles Superior Court, 2005-09; Environmental Protection Agency/Santa Susan Field Laboratory Task Force, 1990-97; Board of Directors, The Buckley School; Board of Trustees, California Historical Society; Chair, Board of Directors, The Brandeis-Bardin Institute.

STEVEN D. ARCHER, admitted to practice in California, 1975; United States Supreme Court, 1980; United States District Court, Central District of California, 1975; United States District Court, Eastern District of California; United States District Court, Southern District of California; United States District Court, Northern District of California; United States District Court, Eastern District of Pennsylvania; United States Court of Appeals, Ninth Circuit; United States Court of Federal Claims. *Education*. University of California at Los Angeles, B.A. in American History, Dean's List, 1970; Loyola Law School, Los Angeles, J.D., Dean's Honor List, 1974. *Employment*. Silber, Benezra & Taslitz, 1973-78; Belli & Choulos / Belli, Sayre, Archer & Sabih, Associate, Partner, 1978-82; Simke, Chodos, Silberfeld & Soll, Inc. / Simke, Chodos, Silberfeld & Anteau, Inc., Associate, Partner, 1982-95; Robins, Kaplan, Miller & Ciresi L.L.P., Partner, 1995-2010; Kiesel Law LLP, Partner, 2010-present. *Awards & Honors*. AV Peer Review Rated, Martindale-Hubbell; Super Lawyer, Law & Politics, 2006-present; Humanitarian Award, American Civil Liberties Union of Southern California, 2008; Advocate of the Year, Public Counsel, 2009; Nominee, Consumer Lawyer of the Year, Consumer Attorneys of California, 2009. *Publications*. *Update: Increased Concern over Mounting Numbers of Reported Deaths and Serious Injuries Prompt the FDA to Order Testing of Medical Devices Containing Heparin*, June 13, 2008; *Consumer Alert: Digitek Heart Failure Medications Recalled - A Serious Risk of Injury or Death to the Patient*, May 21, 2008; *Federal Judge Approves Settlement Over Baxter Infusion Pumps*, July 13, 2006; *Consumer Alert: Bausch & Lomb's Renu with MoistureLoc Soft Contact Lens Solution Recalled*, April 26, 2006; *The Dangers of the "Usual Stipulation" in Deposition Practice*, Los Angeles County Bar Association New Lawyers Manual, Fall 2005; *Consumer Alert: F.D.A. Orders Class 1 Recall of Baxter International's Colleague Volumetric Infusion Pumps*, July 13, 2006; *Consumer Alert: Guidant Ancure Endograft System Abdominal Aortic Stents*, September 2003; *Consumer Alert: St. Gobain Prozyr Zirconia Ceramic Coated Femoral Head Hip Implant Components*, February 2002; *A Practical Guide to Code of Civil Procedure Section 2032 - Taking Control of Defense Medical Examinations*, The Advocate, September 2000; *Trying the Soft Tissue Damages Case in California*, The National Business Institute, October 1995 (co-authored); Auto Accident Manual, Los



Angeles Trial Lawyers Association, March 1985 (contributing author); *Using Thermograms to Argue Soft Tissue Damages*, Trial Magazine, February 1983. *Presentations.* Using Tort Law to Effect Social Change, Pepperdine University School of Law, November 17, 2009; Getting the Most Out of Discovery: Parts I and II, State Bar of California Continuing Education of the Bar, July 13, 2009, August 3, 2009; Discovery - Planning, Strategy and Dealing with Abusive Discovery Tactics, State Bar of California Continuing Education of the Bar, July 25, 2008; The Art of Advocacy: Tailoring the Message - Storytelling and Framing (moderator), American Association for Justice, July 14, 2008; Mock Mediation: Strategies for Successful Mediation of the Toxic Tort Case, ABA Tort Trial and Insurance Practice Section, April 12, 2008. *Member.* State Bar of California; American Association of Justice; Public Justice; Consumer Attorneys of California, Consumer Attorneys Association of Los Angeles; Los Angeles County Bar Association. *Community Service.* Pending Legislation Sub-Committee, Consumer Attorneys of California; Past Vice-Chair, Member, Client Relations Committee, Los Angeles County Bar Association; Los Angeles County Bar Association Lawyer Referral and Information Service (past member); Dependency Court Tort Committee, Los Angeles Juvenile Court (past member); Advisory Board, Loyola Law School Center for Conflict Resolution; Board of Directors, Public Counsel; Board of Directors, Los Angeles Conservancy (past member); Member Development Committee, Los Angeles Conservancy (past member); Legal Committee, Los Angeles Conservancy (past member); Board of Directors, Mt. Olympus Property Owners' Association (past member); Legal Counsel to the Board of Directors, Mt. Olympus Property Owners' Association.

**JEFFREY A. KONCIUS**, Admitted to practice in California, 1997; New Jersey, 1995; New York, 1997; admitted to practice before the United States District Court, Central District of California; United States District Court, Southern District of California; United States District Court, Northern District of California; United States District Court, Eastern District of California; United States District Court, District of New Jersey; United States District Court, Eastern District of New York; United States District Court, Southern District of New York; United States Court of Appeals for the Ninth Circuit. *Education.* Johns Hopkins University, B.A., 1989; Benjamin N. Cardozo School of Law, J.D., 1995. *Reported Decisions. Spielman v. Ex'pression Center for New Media*, 191 Cal. App. 4th 420 (2010); *Loeffler v. Target Corp.*, 58 Cal. 4th 1081 (2014); *Pioneer Electronics (USA) Inc. v. Superior Court*, 40 Cal. 4th 360 (2007); *Bush v. Cheaptickets, Inc.*, 425 F.3d 683 (9th Cir. 2005); *Morohoshi v. Pacific Home*, 34 Cal. 4th 482 (2004); *Bird, Marella, Boxer & Wolpert v.*



Superior Court, 106 Cal. App. 4th 419 (2003). Awards and Honors. Supervising Editor, Cardozo Law Review, 1994-95. Employment. Cohn Lifland Pearlman Herrmann & Knopf, 1995-97; Law Office of Joseph J.M. Lange, 1997-2000; Lange & Koncius, LLP, 2000-11; Kiesel Law LLP, 2011-present. Member. Board of Governors, Association of Business Trial Lawyers (Los Angeles); At-Large Board Member, Consumer Attorneys of California; California State Bar Association; New York State Bar Association; New Jersey State Bar Association; American Association for Justice; Consumer Attorneys Association of Los Angeles; Los Angeles County Bar Association; Public Justice Foundation. Additional. Past entrepreneur.

## 2. Associates

**MARIANA ARODITIS** joined Kiesel Law in 2013, where her practice focuses on consumer class actions, wrongful death and other complex litigation cases. Ms. Aroditis has a strong foundation in litigation. Prior to joining Kiesel Law, Ms. Aroditis worked on numerous high profile cases. During law school, Ms. Aroditis externed for the Honorable S. James Otero of the U.S. District Court, Central District. Ms. Aroditis earned her B.A. in Political Science from Pepperdine University and her J.D. from Southwestern Law School, cum laude. While in law school, Ms. Aroditis was a member of the Southwestern Law Review. Ms. Aroditis is licensed to practice before all the courts of the State of California as well as the United States District Courts of the Central District, Southern District, Northern District and Eastern District.

**CHERISSE HEIDI A. CLEOFE**, admitted to practice in California, 2013, U.S. District Court, Central District of California, 2013. Education. University of California, San Diego, B.S. in Management Science, 2003, University of San Francisco School of Law, J.D., 2012. Employment. Practice Development Coordinator for JAMS, 2012-2013; Frank C. Newman Intern for the University of San Francisco International Human Rights Clinic, 2012; Law Clerk for Law Offices of Waukeen McCoy, 2011; Acción Política y Redes Legal Research Intern for ALBOAN. Awards and Honors: University of San Francisco Student Bar Association Award, 2012; Zeif Award Scholarship Recipient, 2011; Blum Fund Scholarship Recipient, 2009. Member. State Bar of California, American Bar Association, Los Angeles County Bar Association, Orange County Bar Association, Philippine American Bar Association. Community Service: Volunteer Attorney at Legal Aid Society of Orange County, 2013 -2014; Volunteer Attorney at Filipino Migrant Center and the Marian Outreach Center Community Legal Clinic, 2013.



Kiesel Law LLP
Page 14

**JOEL M. GORDON**, admitted to practice in California, 2011, U.S. District Court, Central District of California, 2011. *Education*. Washington University in St. Louis, B.A. in History, 1997; University of Southern California, PhD, 2010; University of Southern California Gould School of Law, J.D., 2011. *Employment.* Extern for the Honorable Gregory Alarcon in the Los Angeles Superior Court, 2009; Law clerk for the Federal Trade Commission (specializing in consumer fraud); Intern for the Los Angeles District Attorney's Office in the habeas and appellate divisions, 2011. *Member.* Los Angeles County Bar Association, Beverly Hills Bar Association.

**TIFFANY J. HOWARD**, admitted to practice in California, 2013, U.S. District Court, Central District of California, 2013. *Education*. Wellesley College, B.A. in History and Political Science, 2009 (graduated with honors in History and member of Pi Sigma Alpha, the National Political Science Honors Society); University of San Francisco School of Law, J.D., 2012. *Employment*. Intern for the Army Judge Advocate General's Corps, 2010; Intern for the California Army National Guard Judge Advocate General's Corps, 2011; Extern for the Coast Guard Judge Advocate General's Corps, 2010-2012. *Awards and Honors*: First Year Distinction, Wellesley College, 2006; Grant from the University of San Francisco Public Interest Law Foundation, 2011. *Member.* State Bar of California, American Bar Association, Los Angeles County Bar Association, Beverly Hills Bar Association, Consumer Attorneys of Los Angeles, Consumer Attorneys of California. *Community Service*: Staff Attorney at Bayview/Hunters Point Community Legal, San Francisco, 2013.

**MELANIE MENESES**, admitted to practice in California, 2012, U.S. District Court, Northern District of California, 2012. *Education*. University of San Francisco, B.A. in Psychology, 2009; University of San Francisco School of Law, J.D., 2012. *Experience*. Deputy City Attorney for the City of Los Angeles, 2013-2014; Certified Clerk, Child Advocacy Clinic for the University of San Francisco School of Law, 2011-2012; Certified Clerk, Children's Law Center Los Angeles, 2011; Criminal Defense Extern, Law Office of Jonah Chew, 2010; Juvenile Rights Intern, Legal Aid of Cambodia, 2010. *Awards and Honors*: Grant from the University of San Francisco Public Interest Law Foundation, 2011. *Member*. State Bar of California, American Bar Association, Los Angeles County Bar Association, Philippine American Bar Association, Beverly Hills Bar Association, Consumer Attorneys Association of Los Angeles. Community Service: Board Member, Search to Involve Pilipino Americans, 2014; Americorps VISTA, Los Angeles County Community Development Commission, 2009-2010.



Kiesel Law LLP
Page 15

**MATTHEW A. YOUNG**, admitted to practice in California, 2009; United States Court of Appeals, Ninth Circuit, 2009; United States District Court, Central District of California, 2009. *Education*. University of California at Berkeley, B.A. with honors in Economics, 2005; University of Southern California School of Law, J.D., 2009; Southern California Interdisciplinary Law Journal, 2007-2009. *Publications*. *Adapting to Adaptive Reuse: Comments and Concerns About the Impacts of a Growing Phenomenon*, 18 S. Cal. Interdisc. L.J. 703 (2009) (proposals set forth in article subsequently adopted by the City of Los Angeles); *"Personal Injury: survive the changing court environment*," L.A. Daily Journal, Vol. 126, No. 078 (Apr. 23, 2013). *Member*. State Bar of California, American Bar Association, Los Angeles County Bar Association, Consumer Attorneys of California, Beverly Hills Bar Association, Public Justice Foundation. *Employment*. Los Angeles City Attorney's Office, extern, 2007-2008. *Community Service*. Oakland Asian Students Educational Services. *Additional*. Watersports.

# EXHIBIT B

## Kiesel Law, LLP

| Activity | Kiesel Partner | Total Time This Activity | % of Total Time | Total Lodestar This Activity | % of all Lodestar |
|---|---|---|---|---|---|
| Pre-Complaint Engineering & Fact Investigation Prior to Filing Initial Complaint | 37.50 | 37.50 | 13.32% | $ 41,250 | 13.32% |
| Research & Draft Initial Complaint | - | - | 0.00% | $ - | 0.00% |
| Engineering & Fact Investigation for First Amended Complaint | 23.00 | 23.00 | 8.17% | $ 25,300 | 8.17% |
| Research & Draft First Amended Complaint | - | - | 0.00% | $ - | 0.00% |
| Research & Draft Opposition To Motion To Dismiss | 17.50 | 17.50 | 6.22% | $ 19,250 | 6.22% |
| Post Filing Discovery | - | - | 0.00% | $ - | 0.00% |
| Post Filing Engineering Investigation To Assess Effectiveness of Lenovo's Remedial Measures | - | - | 0.00% | $ - | 0.00% |
| Negotiate Settlement Agmt., Draft Settlement Agmt., Draft Notice, Summary Notice, Preliminary Approval Order, Final Approval Order, Draft Plaintiffs' Motion for Preliminary Approval and Supporting Documents & Exs. | 39.50 | 39.50 | 14.03% | $ 43,450 | 14.03% |
| Design Settlement Proposal, Draft Mediation Statement & Mediate Plaintiffs' & Class Member Claims | 93.50 | 93.50 | 33.21% | $ 102,850 | 33.21% |
| Ongoing Work with Claims Administrator to get claims process and automated Claim Form website up and running, Draft Plaintiffs' Motion for Final Approval and All Supporting Exhibits, Communications with Class Members and Claims Administrator to Facilitate Ongoing Claims Process | 70.50 | 70.50 | 25.04% | $ 77,550 | 25.04% |
| | 281.50 | 281.50 | 100.00% | $ 309,650 | 100.00% |

# TUFARO

# DECLARATION

# EXHIBIT

# 3

1

**KIESEL LAW LLP**

2
Paul R. Kiesel (Bar No. CA 119854)
8648 Wilshire Boulevard

3
Beverly Hills, California 90211-2910

4
Telephone: (310) 854-4444
Facsimile: (310) 854-0812

5

6
**PARADIS LAW GROUP, PLLC**

7
Paul O. Paradis, Esq. (Pro Hac Vice)
Gina M. Turafo, Esq. (Pro Hac Vice)

8
570 Seventh Avenue – 20th Floor

9
New York, New York, 10018
Telephone (212) 986-4500

10
Facsimile: (212) 986-4501

11

12
Interim Class Counsel

13
**UNITED STATES DISTRICT COURT**

14
**CENTRAL DISTRICT OF CALIFORNIA**

15
GARRETT KACSUTA and MICHAEL

16
WHEELER, individually and on behalf
of all others similarly situated,

17

18
Plaintiffs,

19
v.

20

21
LENOVO (United States) Inc.,

22
Defendant.

23

24

25

26

27

28

| | |
|---|---|
| Case No. SACV 13-00316-CJC(RNBx) | |
| **DECLARATION OF JORDAN L. CHAIKIN IN SUPPORT OF CLASS COUNSELS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** | |
| Hearing Date: | December 15, 2014 |
| Time: | 1:30 p.m. |
| Department: | Courtroom 9B |
| Judge: | Cormac J. Carney |

1

1      I, Jordan L. Chaikin, under penalty of perjury, hereby declare that the

2 following is true and correct to the best of my knowledge and belief:

3

4      1.      I am over the age of 18 and am fully familiar with the facts and

5 circumstances set forth herein and could competently testify thereto if called upon

6 to do so.

7      2.      I am a Partner of Parker Waichman LLP, one of the Court-appointed

8 Interim Class Counsel for Plaintiffs and the Class in this action.  I submit this

9 Declaration in support of Class Counsels' Application for an Award of Attorneys'

10 Fees and Reimbursement of Expenses and my firm's application for an award of

11 attorneys' fees and reimbursement of expenses in connection with services

12 rendered in the above-entitled action.

13      3.      My firm represents Plaintiff Michael Wheeler in this Action.

14      4.      The identification and background of my firm and its partners and

15 associates is attached hereto as Exhibit A.

16      5.      The total number of hours spent on this litigation by my firm is 449.25,

17 as reflected in the following chart:

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JORDAN L. CHAIKIN IN SUPPORT OF CLASS COUNSELS'APPLICATION
FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

| TIME CATEGORY | TOTAL HOURS EXPENDED |
|---|---|
| Pre-Complaint Engineering Investigation & Factual Research Prior to Filing Initial Complaint | 106.50 |
| Research & Draft Initial Complaint | 40.00 |
| Engineering & Fact Investigation for First Amended Complaint | 23.00 |
| Legal Research & Draft First Amended Complaint | 25.25 |
| Legal Research & Draft Opposition to Deft's Motion to Dismiss | 24.00 |
| Post Filing Discovery | - |
| Post Filing Engineering Investigation to Assess Effectiveness of Lenovo's Remedial Measures | 14.25 |
| Design Settlement Proposal, Draft Mediation Statement & Mediate Plaintiffs' and Class Members' Claims | 87.75 |
| Negotiate Settlement Agreement, Draft Settlement Agmt., Draft Notice, Summary Notice, Preliminary Approval Order, Final Approval Order, Pltfs' Motion for Preliminary Approval and Supporting Documents & Exhibits | 62.50 |
|  |  |

3

| | |
|---|---|
| Perform Ongoing Work with Claims Administrator to Get Claims Process and Automated Claim Form Website Fully Operational, Draft Pltfs' Motion for Final Settlement Approval and All Supporting Exhibits, Ongoing Communications With Class Members and Claims Administrator to Facilitate Ongoing Claims Administration Process | 66.00 |
| Total | 449.25 |

6.    The total lodestar amount for attorney and paralegal time based on the firm's current rates is $259,475.

7.    The number of hours worked and tasks performed by each attorney and paralegal who worked on this matter are set forth in Exhibit B hereto.

8.    The hourly rates shown in the following chart are the current usual and customary rates for each individual based on their experience and years of practice, and are in line with the prevailing rates in the community for similar services by lawyers of reasonably comparable skill, experience and reputation who handle complex class action litigation in federal courts.   A summary breakdown of the lodestar is set forth in the table immediately below.

| NAME | TITLE | HOURS WORKED | HOURLY RATE | LODESTAR |
|---|---|---|---|---|
| J. Chaikin | P | 329.00 | $650 | $213,850.00 |
| A. Goodwin | A | 85.75 | $400 | $34,300.00 |
| J. McCarthy | A | 30.75 | $350 | $10,762.50 |
| Whelan | PL | 3.75 | $150 | $562.50 |
| | | | | |
| TOTALS | | 449.25 | | $259,475.00 |

(P) Partner

(A) Associate

(PL) Paralegal

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

5

DECLARATION OF JORDAN L. CHAIKIN IN SUPPORT OF CLASS COUNSELS' APPLICATION
FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

9. My firm incurred a total of <u>$5,195.87</u> in expenses in connection with the prosecution of this litigation. They are broken down as follows:

## EXPENSES

| DISBURSEMENT | TOTAL |
|---|---|
| Experts, Consultants, Investigators | $0 |
| Meals, Hotels & Transportation | $3,835.87 |
| LEXIS, Westlaw, Online Library Research | $0 |
| Mediation Fees | $0 |
| Photocopies, Elec. Discovery & Data Mgmt. | $1,360.00 |
| Telephone & Facsimile | $0 |
| Messenger & Overnight Delivery | $0 |
| | |
| **TOTAL** | $5,195.87 |

The expenses pertaining to this case are reflected in the books and records of the firm. These books and records are prepared from expense vouchers, check records and other documents and are an accurate record of the expenses.

DECLARATION OF JORDAN L. CHAIKIN IN SUPPORT OF CLASS COUNSELS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

1      I declare under penalty of perjury under the laws of the United States of

2 America that the foregoing is true and correct.  Executed this 8th day of October,

3 2014 at Bonita Springs, Florida.

4

5

6

7                                                        _____

8                                                        Jordan L. Chaikin

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

DECLARATION OF JORDAN L. CHAIKIN IN SUPPORT OF CLASS COUNSELS' APPLICATION<br>FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

# EXHIBIT A

# P\W Parker | Waichman LLP
## A NATIONAL LAW FIRM

NEW YORK | LONG ISLAND | NEW JERSEY | WASHINGTON D.C. | FLORIDA

27300 Riverview Center Boulevard
Suite 103
Bonita Springs, Florida 34134
Phone 239-390-1000
Fax 239-390-0055
800 LAW INFO (529-46361)
www.yourlawyer.com

## Parker Waichman LLP

**Main Office:**
6 Harbor Park Drive
Port Washington, New York 11050
516-466-6500
516-466-6665 fax

**Manhattan Office:**
111 John Street, 14th Floor
New York, New York 10038
212-267-6700

## 1-800-LAW-INFO

**Florida Office:**
27300 Riverview Center Blvd., Suite 103
Bonita Springs, Florida 34134
239-390-1000
239-390-0055 fax

**New Jersey Office:**
2300 Woodbridge Avenue
Edison, New Jersey 08817
732-985-8888

**Jerrold S. Parker** is a founding partner of the national law firm **Parker Waichman LLP** and has served on numerous plaintiffs' steering committees and sub-committees in highly complex multi-district litigations over the past two decades.

**Parker Waichman LLP** is nationally recognized as a leader in the field of personal injury negligence law and mass tort litigation. Our personal commitment to our clients and good, old-fashioned hard work by our attorneys and support staff are the major factors in gaining their respect and loyalty.  We pride ourselves on staying abreast of trends and developments in the law so that our clients can reap the benefits of any changes in the law or new interpretations of existing law. We have met the challenges presented by today's landmark cases by winning precedent setting victories, by advocating new theories of liability and recovery and by fostering ground breaking legislation in some of the most significant cases of our time.

**Parker Waichman LLP** litigates cases involving mass torts, class actions, motor vehicle accidents, defective products, medical and other professional malpractice, defective and dangerous drugs, defective medical devices, construction site accidents, general negligence, nursing home negligence and abuse, municipal liability, toxic substances, lead poisoning, sexual abuse, clergy abuse, negligent supervision, insurance bad faith, consumer fraud, and whistleblower cases.  We are involved in litigation involving environment disasters such as Hurricane Katrina Levee failures and toxic-trailers scandal as well as complex litigation involving chemical exposure, spills, contamination, fires and explosions.  We are advocates for veterans of our armed forces providing legal representation to guide them through the complex regulations of a Veteran's Disability case.  We work with clients nationwide assisting them in successfully negotiating the complex administrative process of social security disability claims.  We are proud recipient of a Martindale-Hubbell rating of "AV® Preeminent™ 5.0 out of 5", the firms' founding partners are members of the Million Dollar Advocates Forum, and a founding partner has been voted by peers into Best Lawyers® for Personal Injury Litigation.  We pride ourselves on being one of the most

technologically advanced law firms in the country, and our-state-of-the-art computerized case management system, which we designed from the ground up, integrates every aspect of law office management.

The firms' partners and associates have been appointed to numerous committees and sub-committees in various multi-district litigations. These include memberships in the Executive Committee of the Plaintiffs' Steering Committee, Prozac Multi-District Litigation No. 907; Plaintiffs' Steering Committee for the World Trade Center Bombing Litigation; New York State Diet Drug – Steering Committee for Fen-Phen; New York State Steering Committee for Rezulin Litigation; Plaintiffs' Steering Committee and Discovery Subcommittee – Zyprexa Multi-District Litigation No. 1596; Nursing Home Litigation Group of the American Association for Justice, Million Dollar Advocates Forum; American Association for Justice Leader's Forum; Member of the Executive Committee of the Plaintiffs' Steering Committee, MDL #1742, In re Ortho Evra Products Liability Litigation; Co-Chair, American Association for Justice (AAJ), Ortho Evra Litigation Group, Plaintiffs' Steering Committee Kugel Mesh Multi-District Litigation No. 1842; Plaintiffs' Steering Committee for the New York State Bausch & Lomb, ReNu with MoistureLoc Litigation as well as the Plaintiffs' Steering Committee Gadolinium Multi-District Litigation No. 1909; Co-Chair, Discovery Committee Vytorin Multi-District Litigation No. 1938; Plaintiffs' Steering Committee and Trial Team Member Chinese-Manufactured Drywall Multi-District Litigation No. 2047; Co-Lead Plaintiffs' Steering Committee for Denture Cream Multi-District Litigation No. 2051; Discovery and Expert Sub-Committees of the Plaintiffs' Steering Committee for the Denture Cream Multi-District Litigation No. 2051; Discovery and Law & Briefing Sub-Committees for Denture Cream Multi-District Litigation No. 2051; Plaintiffs' Steering Committee for Yasmin & Yaz (Drospirenone) Marketing, Sales Practices & Products Liability Multidistrict Litigation No. 2100; Discovery Sub-Committee for Yasmin & Yaz (Drospirenone) Marketing, Sales Practices & Products Liability Multidistrict Litigation No. 2100; Plaintiffs' Steering Committee for Heparin Multi-District Litigation No. 1953; Plaintiffs' Steering Committee for Digitek Multi-District Litigation No. 1968; Member of the Executive Committee of the Plaintiffs' Steering Committee for Bayer Multi-District Litigation No. 2023; Bellwether Preparation Committee for Ortho Evra Products Liability Litigation Multi-District Litigation No. 1742; Expert Committee for Kugel Mesh Products Liability Multi-District Litigation No. 1842; Bayer Discovery Committee for Gadolinium Products Liability Litigation Multi-District Litigation No. 1909; the Law and Briefing and Discovery Sub-Committees of the Plaintiffs' Steering Committee for the Guidant Multi-District Litigation No.05-1708; Plaintiffs' Steering Committee Kaba Keyless Pushbutton Lock Multi-District Litigation No. 2220; Law and Briefing, Damages and Client Relations Committee for Apple IPhone 3G and 3GS Marketing and Sales Practices Multi-District Litigation No. 2116; Law and Pleading and Discovery Committees for Light Tobacco Marketing Litigation Sales Practices Multi-District Litigation No. 2068; Plaintiffs' Steering Committee, Ford Navistar Diesel Engine Products Liability Multi-District Litigation No. 2223; Plaintiffs' Steering Committee In re Dial Complete Marketing and Sales Practices Multi-District Litigation No. 2263; Plaintiffs' Steering Committee In re Colgate-Palmolive Softsoap Antibacterial Soap Hand Soap Marketing and Sales Practices Multi-District Litigation No. 2320;

Plaintiff's Steering Committee American Medical Systems, Inc., Pelvic Repair Systems Products Liability Litigation No. 2325 (through 2103); Plaintiff's Steering Committee Boston Scientific Corp., Pelvic Repair Systems Products Liability Litigation No. 2326n (through 2013); and Plaintiff's Steering Committee Ethicon, Inc., Pelvic Repair Systems Products Liability Litigation No. 2327 (through 2013); Plaintiffs' Steering Committee In re MI Windows and Doors, Inc., Products Liability Multi-District Litigation No. 2333; Plaintiff's Steering Committee for Biomet M2a Magnum Hip Implant Products Liability Litigation No. 2391; Co-Lead Plaintiff's Steering Committee Mirena IUD Products Liability Litigation No. 2434;  Plaintiff's Steering Committee, In Re Long Island Power Authority Hurricane Sandy Litigation, No. 602288/2012; Plaintiff's Executive Committee, In re: Emerson Electric Co. Wet/Dry Vac Marketing and Sales Litigation No. 2382; Plaintiff's Steering Committee for Atlas Roofing Corporation Chalet Single Product Liability Litigation MDL No. 2495 and Plaintiff's Steering Committee for In Re Pella Corporation Architect and Designer Series Windows Marketing, Sales Practices and Products Liability Litigation MDL No. 2514.

**Parker Waichman LLP** maintains offices in New York, New Jersey and Florida and is staffed by 25 attorneys and more than 85 paralegals, legal assistants and other support staff.

# EXHIBIT B

**Parker Waichman LLP**

| Activity | Chaikin Partner | Goodwin Associate | McCarthy Associate | Whelan Paralegal | Total Time This Activity | % of Total Time | Total Lodestar This Activity | % of all Lodestar |
|---|---|---|---|---|---|---|---|---|
| Pre-Complaint Engineering & Fact Investigation Prior to Filing Initial Complaint | 73.25 | 26.50 | 6.75 | | 106.50 | 23.71% | $ 60,575.00 | 23.35% |
| Research & Draft Initial Complaint | 27.50 | 6.75 | 2.00 | 3.75 | 40.00 | 8.90% | $ 21,837.50 | 8.42% |
| Engineering & Fact Investigation for First Amended Complaint | 15.75 | 4.75 | 2.50 | | 23.00 | 5.12% | $ 13,012.50 | 5.01% |
| Research & Draft First Amended Complaint | 17.50 | 6.00 | 1.75 | | 25.25 | 5.62% | $ 14,387.50 | 5.54% |
| Research & Draft Opposition To Motion To Dismiss | 19.50 | 4.50 | | | 24.00 | 5.34% | $ 14,475.00 | 5.58% |
| Post Filing Discovery | - | | | | - | 0.00% | | 0.00% |
| Post Filing Engineering Investigation To Assess Effectiveness of Lenovo's Remedial Measures | 14.25 | | | | 14.25 | 3.17% | $ 9,262.50 | 3.57% |
| Negotiate Settlement Agmt., Draft Settlement Agmt., Draft Notice, Summary Notice, Preliminary Approval Order, Final Approval Order, Draft Plaintiffs' Motion for Preliminary Approval and Supporting Documents & Exs. | 55.25 | 4.75 | 2.50 | | 62.50 | 13.91% | $ 38,687.50 | 14.91% |
| Design Settlement Proposal, Draft Mediation Statement & Mediate Plaintiffs' & Class Member Claims | 61.50 | 16.50 | 9.75 | | 87.75 | 19.53% | $ 49,987.50 | 19.26% |
| Ongoing Work with Claims Administrator to get claims process and automated Claim Form website up and running, Final Approval and All Supporting Exhibits, Communications with Class Members and Claims Administrator to Facilitate Ongoing Claims Process | 44.50 | 16.00 | 5.50 | | 66.00 | 14.69% | $ 37,250.00 | 14.36% |
| | 329.00 | 85.75 | 30.75 | 3.75 | 449.25 | 100.00% | $259,475.00 | 100.00% |

# TUFARO

# DECLARATION

# EXHIBIT

# 4

**KIESEL LAW LLP**
Paul R. Kiesel (Bar No. CA 119854)
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Telephone: (310) 854-4444
Facsimile: (310) 854-0812

**PARADIS LAW GROUP, PLLC**
Paul O. Paradis, Esq. (Pro Hac Vice)
Gina M. Turafo, Esq. (Pro Hac Vice)
570 Seventh Avenue – 20th Floor
New York, New York, 10018
Telephone (212) 986-4500
Facsimile: (212) 986-4501

Interim Class Counsel

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARRETT KACSUTA and MICHAEL WHEELER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LENOVO (United States) Inc.,<br><br>Defendant. | Case No. SACV 13-00316-CJC(RNBx)<br><br>**DECLARATION OF NICHOLAS A. MIGLIACCIO IN SUPPORT OF CLASS COUNSELS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**<br><br>Hearing Date: December 15, 2014<br>Time:            1:30 p.m.<br>Department:   Courtroom 9B<br>Judge:          Cormac J. Carney |

1

1    I, Nicholas A. Migliaccio, under penalty of perjury, hereby declare that the

2  following is true and correct to the best of my knowledge and belief:

3

4    1.    I am over the age of 18 and am fully familiar with the facts and

5  circumstances set forth herein and could competently testify thereto if called upon

6  to do so.

7    2.    I am a Partner of Whitfield, Bryson & Mason, LLP, one of the Court-

8  appointed Interim Class Counsel for Plaintiffs and the Class in this action.   I

9  submit this Declaration in support of Class Counsels' Application for an Award of

10  Attorneys' Fees and Reimbursement of Expenses and my firm's application for an

11  award of attorneys' fees and reimbursement of expenses in connection with

12  services rendered in the above-entitled action.

13    3.    My firm represents Plaintiff Michael Wheeler in this Action.

14    4.    The identification and background of my firm and its partners and

15  associates is attached hereto as Exhibit A.

16    5.    The total number of hours spent on this litigation by my firm is 466.75,

17  as reflected in the following chart:

18

19

20

21

22

23

24

25

26

27

28

---

2

| TIME CATEGORY | TOTAL HOURS EXPENDED |
|---|---|
| Pre-Complaint Engineering Investigation & Factual Research Prior to Filing Initial Complaint | 3.50 |
| Research & Draft Initial Complaint | 75.00 |
| Engineering & Fact Investigation for First Amended Complaint | 28.25 |
| Legal Research & Draft First Amended Complaint | 48.75 |
| Legal Research & Draft Opposition to Deft's Motion to Dismiss | 111.25 |
| Post Filing Discovery | 8.75 |
| Post Filing Engineering Investigation to Assess Effectiveness of Lenovo's Remedial Measures | 2.25 |
| Design Settlement Proposal, Draft Mediation Statement & Mediate Plaintiffs' and Class Members' Claims | 109.00 |
| Negotiate Settlement Agreement, Draft Settlement Agmt., Draft Notice, Summary Notice, Preliminary Approval Order, Final Approval Order, Pltfs' Motion for Preliminary Approval and Supporting Documents & Exhibits | 40.00 |
|  |  |

DECLARATION OF NICHOLAS A. MIGLIACCIO IN SUPPORT OF CLASS COUNSELS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

| | |
|---|---|
| Perform Ongoing Work with Claims Administrator to Get Claims Process and Automated Claim Form Website Fully Operational, Draft Pltfs' Motion for Final Settlement Approval and All Supporting Exhibits, Ongoing Communications With Class Members and Claims Administrator to Facilitate Ongoing Claims Administration Process | 40.00 |
| Total | 466.75 |

6.      The total lodestar amount for attorney and paralegal time based on the firm's current rates is $248,256.

7.      The number of hours worked and tasks performed by each attorney and paralegal who worked on this matter are set forth in Exhibit B hereto.

8.      The hourly rates shown in the following chart are the current usual and customary rates for each individual based on their experience and years of practice, and are in line with the prevailing rates in the community for similar services by lawyers of reasonably comparable skill, experience and reputation who handle complex class action litigation in federal courts.   A summary breakdown of the lodestar is set forth in the table immediately below.

DECLARATION OF NICHOLAS A. MIGLIACCIO IN SUPPORT OF CLASS COUNSELS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

| NAME | TITLE | HOURS WORKED | HOURLY RATE | LODESTAR |
|------|-------|--------------|-------------|----------|
| Gary Mason | P | 85.50 | $750 | $64,125.00 |
| N. Migliaccio | P | 256.25 | $600 | $153,750.00 |
| Scott Harris | P | 1.00 | $520 | $520.00 |
| Esfand Nafisi | A | 3.00 | $430 | $1,290.00 |
| Jason Rathod | A | 48.75 | $390 | $19,012.50 |
| Branda | LC | 12.00 | $150 | $1,800.00 |
| Goldstein | LC | 24.75 | $115 | $2,846.25 |
| Kelly | PL | .75 | $170 | $127.50 |
| DiCocco | PL | 34.75 | $180 | $6,255.00 |
|  |  |  |  |  |
| TOTALS |  | 466.75 |  | $248,256 |

(P) Partner

(A) Associate

(LC) Law Clerk

(PL) Paralegal

\\
\\
\\
\\
\\
\\
\\
\\
\\

5

DECLARATION OF NICHOLAS A. MIGLIACCIO IN SUPPORT OF CLASS
COUNSELS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT
OF EXPENSES

9.    My firm incurred a total of  $16,103.87 in expenses in connection with the prosecution of this litigation.  They are broken down as follows:

## EXPENSES

| DISBURSEMENT | TOTAL |
|---|---|
| Experts, Consultants, Investigators | $0 |
| Meals, Hotels & Transportation | $ 4,107.56 |
| LEXIS, Westlaw, Online Library Research | $ 10,487.79 |
| Mediation Fees | $0 |
| Photocopies, Elec. Discovery & Data Mgmt. | $0 |
| Telephone & Facsimile | $ 24.00 |
| Messenger & Overnight Delivery | $ 27.67 |
| Filing Fees | $ 1,456.85 |
| | |
| **TOTAL** | $ 16,103.87 |

The expenses pertaining to this case are reflected in the books and records of the firm.  These books and records are prepared from expense vouchers, check records and other documents and are an accurate record of the expenses.

6

1

2        I declare under penalty of perjury under the laws of the United States of

3  America that the foregoing is true and correct.  Executed this 8th day of October,

4  2014 at Washington, D.C..

5

6

7

8                                   Nicholas A. Migliaccio

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF NICHOLAS A. MIGLIACCIO IN SUPPORT OF CLASS
COUNSELS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT
OF EXPENSES

# EXHIBIT A



WHITFIELD BRYSON
& MASON LLP
ATTORNEYS AT LAW

**FIRM RESUME**

## FIRM PROFILE

With offices located in Washington, D.C., Raleigh, N.C., and Madisonville, Kentucky Whitfield Bryson & Mason LLP is dedicated to representing plaintiffs in class actions, mass torts and individual actions in courts throughout the United States. Founded in January 2012, the firm was created by a merger of three firms with decades of experience representing plaintiffs.

For the past ten years, Mason LLP exclusively represented plaintiffs in class actions and mass torts and obtained settlements totaling more than $1 billion in a variety of contexts, including consumer fraud, toxic torts, civil rights and antitrust price fixing. Bryson Law was recognized nationally as a leading construction negligence law firm and recovered tens of millions of dollars for homeowners and homeowner associations throughout the United States. For more than 15 years, Whitfield & Cox has represented plaintiffs and recovered tens of millions of dollars for victims of mining accidents, auto and truck accidents, medical malpractice and other negligent conduct throughout the Commonwealth of Kentucky.

## FIRM RESUME
### Attorney Profiles

**Gary E. Mason**
**Founding and Managing Partner**

Gary is a nationally recognized leader of the class action bar. Focusing on consumer class actions and mass torts, Gary has recovered more than $1.5 billion in the 22 years he has represented plaintiffs.

With his broad experience, Gary is nationally known for representing consumers in class actions involving a wide range of defective products, including Chinese drywall, fire retardant plywood, polybutylene pipe, high-temperature plastic venting, hardboard siding, pharmaceutical products, consumer electronics and automobiles.

Gary has served in leadership positions in many consumer class actions in State and Federal Courts nationwide as well as in Multi-District Litigation (see Practice Highlights, below).

Gary graduated magna cum laude, Phi Beta Kappa, from Brown University in 1984 and earned his law degree from Duke University Law School. He then clerked for the Honorable Andrew J. Kleinfeld, U.S. District Court Judge, in Anchorage, Alaska.

Case 8:13-cv-00316-CJC-RNB  Document 64  Filed 10/08/14  Page 87 of 104  Page ID
#:1749
Case 8:13-cv-00316-CJC-RNB  Document 45  Filed 08/22/14  Page 82 of 91  Page ID #:1377

**John C. Whitfield**
**Founding Partner**

For nearly 30 years, John has been one of Kentucky's premier trial attorneys. He has represented numerous injured parties in the Paducah, Ohio Valley and Western Kentucky areas. He has concentrated primarily on complex civil litigation cases, and over his career has brought to settlement or judgment over 30 cases in excess of a million dollars each.

John is certified as a civil trial specialist by the National Board of Trial Advocacy* and has represented individuals in all walks of life against negligent workplace practices, reckless physicians, predatory businesses, and inattentive automobile and truck drivers.

Throughout his career, John has represented scores of patients who have been the victims of medical negligence, obtaining verdicts and settlements in both state and federal courts. He has handled cases for landowners victim to fraudulent mine royalty practices, for homeowners whose homes and business contained defective concrete, and for Kentucky residents who were overcharged for premium insurance taxes. In addition, John's trial experience extends to the defense of individuals in criminal cases.

John is a frequent lecturer of litigation subjects with the Kentucky Justice Association and American Association for Justice, and has been recognized as a Kentucky Super Lawyer. He is AV rated by the Martindale-Hubbell rating service.

**Daniel K. Bryson**
**Founding Partner**

Dan is one of the nation's most respected and experienced attorneys in the areas of construction defects involving mass torts, class actions or individual lawsuits.

For over 20 years, Dan has focused his practice on complex civil litigation, successfully representing thousands of homeowners in a wide variety of defective construction product suits, class actions, and various mass torts and recovering more than $1.25 billion for his clients in numerous states throughout the country.

Dan frequently collaborates with other attorneys in order to assemble the most effective team possible. He is a frequent lecturer on a variety of defective construction products and consumer mass tort related disputes. Dan has been quoted by a variety of media outlets including the Wall Street Journal, Washington Post, and New York Times. He has been named as a member of the Legal Elite and Super Lawyers in North Carolina on numerous occasions. Dan is the past chair of the NC Bar Association, Construction Law Section.

He has also been involved with a number of AAJ litigation groups and committees through the years and is currently the Co-Chair of the AAJ Chinese Drywall Litigation Group and a member of the Plaintiffs' Steering Committee for the Multi-District Litigation involving Chinese Drywall.

A settlement approaching $1 billion was recently announced involving one of the primary defendants, Knauf Plasterboard Tianjin. Dan served on the trial team in Federal Court in Louisiana for the first two Chinese Drywall bellwether cases.

Dan was recently assigned to the Science Committee of the DePuy MDL matter "In re: DePuy Orthopaedics, Inc., ASR Hip Implant Products Liability Litigation."

**Nicholas A. Migliaccio**
**Founding Partner**

Nick represents plaintiffs in a variety of cases including claims for wage and hour violations, civil rights violations, defective products, environmental torts, and unfair and deceptive trade practices.

Nick joined his previous law firm, Mason LLP, as an associate in 2003 and became a partner in 2011. Prior to that, he was an associate at Environmental Protection International in Washington, D.C.

Nick earned his undergraduate degree *cum laude* from the State University of New York at Binghamton, and went on to earn his law degree from Georgetown University Law Center where he served as an editor of the Georgetown International Environmental Law Review. He is admitted to practice in New York; the District of Columbia; the United States Courts of Appeal for the Third, Fourth and Sixth Circuits; the United States District Courts for the Districts of Maryland, the District of Columbia, and the Southern District of New York.

**Scott Harris**
**Associate**

Scott Harris has been with Whitfield Bryson & Mason since its inception.

Scott's practice is focused on fighting for individuals and homeowners in complex litigation, including construction defect, mass tort, product liability, and wrongful death litigation. Scott has played a key role in securing substantial verdicts and settlements in a variety of cases, including a multi-million dollar verdict in favor of homeowners for a developer's unfair and deceptive advertising and shoddy road construction, a legal malpractice case, and several defective condominium construction cases.

Scott earned his law degree from Wake Forest University School of Law in 2006 and his Bachelor of Arts from Hampden-Sydney College, in 2001. While at Hampden-Sydney College, Scott was Chairman of the Honor Committee and a member of the national leadership honor society, Omicron Delta Kappa.

**Matthew Lee**
**Associate**

4

Matt has been with Whitfield Bryson & Mason since its inception. Matt's practice is focused on fighting for individuals and homeowners in complex litigation, including construction defect, mass tort, product liability, and wrongful death cases. Matt has played a key role in securing substantial verdicts and settlements in a variety of cases, including a multi-million dollar verdict in favor of homeowners for a developers' unfair and deceptive advertising and shoddy road construction, a confidential pre-trial settlement on behalf of an individual in a defamation matter, and two substantial wrongful death settlements.

Matt earned his law degree from Wake Forest University School of Law in 2006 and his Bachelor of Arts from The Catholic University of America, *cum laude*, in 2001. While at Wake Forest, Matt was the Zeliff Trial Competition Champion, a member of the AAJ Trial Team that advanced to the regional finals in 2006, the AAJ Student Chapter President, and was selected as a member of the Order of Barristers. Matt is also a recent graduate of Leadership Raleigh 25 with the Greater Raleigh Chamber of Commerce.

**Jason Rathod**
**Associate**

Jason litigates complex class actions related to consumer protection, worker rights, civil rights and public fee recovery.

His consumer protection practice focuses on defective products. His worker rights practice focuses on the improper denial of minimum wages and overtime pay. His civil rights practice focuses on violations of due process rights, and his public recovery practice focuses on the recovery of taxes and fees for local governments improperly evaded by corporations.

After graduating with honors from Grinnell College, Jason traveled to six countries on a Watson Fellowship, studying the Indian Diaspora. At the Duke University School of Law, he was an articles editor of the Duke Law Journal and did legal work for the Self-Employed Women's Association in Ahmedabad, India. He has also published a law review article and note on racial discrimination.

**Notable Cases**

*Craig v. Rite Aid Corporation*, Civil No. 08-2317 (M.D. Pa.) (FLSA collective action and class action settled for $20.9 million)

*In re: TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.) (combined settlement totaling nearly $1.1 billion in suit alleging the illegal formation of an international cartel to restrict competition in the LCD panel market).

*In re: Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047, No. 2:09-md-02047 (E.D. La.) (litigation arising out of defective drywall) (appointed Co-Chair, Insurance Committee).

*In re Google Buzz Privacy Litigation*, CV 10-00672 (N.D. Cal.) (court-appointed Lead Class Counsel; $8.5 million *cy pres* settlement).

*Cordes et al v. IPEX, Inc.*, No. 08-cv-02220-CMA-BNB (D. Col.) (class action arising out of defective brass fittings; court-appointed member of Plaintiffs' Steering Committee).

*Sutton, et al v. The Federal Materials Company, Inc., et al*, No. 07-CI-00007 (Kty. Cir. Ct) ($10.1 million class settlement for owners of residential and commercial properties constructed with defective concrete).

*Stillman v. Staples, Inc.*, Civil No. 07-849 (D.N.J. 2009) (FLSA collective action, plaintiffs' trial verdict for $2.5 million; national settlement approved for $42 million).

*Lew v. Pizza Hut of Maryland, Inc.*, Civil No. CBB-09-CV-3162 (D. Md.) (FLSA collective action, statewide settlement for managers-in-training and assistant managers, providing recompense of 100% of lost wages).

*In re: Dept. of Veterans Affairs (VA) Data Theft Litig.*, MDL 1796 (D.D.C.) (Co-lead counsel representing veterans whose privacy rights had been compromised by the theft of an external hard drive containing personal information of approximately 26.6 million veterans and their spouses; creation of a $20 million fund for affected veterans and a cy pres award for two non-profit organizations).

*Ersler, et. al v. Toshiba America et. al*, 07-civ- 2304 (D.N.J.) (settlement of claims arising from allegedly defective television lamps).

*Nnadili, et al. v. Chevron U.S.A., Inc*, No. 02-cv-1620 (D.D.C.) ($6.2 million settlement for owners and residents of 200 properties located above underground plume of petroleum from former Chevron gas station).

*In re General Motors Corp. Speedometer Products Liability Litigation*, MDL 1896 (W.D. Wash.) (national settlement for repairs and reimbursement of repair costs incurred in connection with defective speedometers).

Case 8:13-cv-00316-CJC-RNB   Document 64   Filed 10/08/14   Page 91 of 104   Page ID
#:1753
Case 8:13-cv-00316-CJC-RNB   Document 45   Filed 08/22/14   Page 86 of 91   Page ID #:1381

*Penobscot Indian Nation et al v United States Department of Housing and Urban Development*, N. 07-1282 (PLF) (D.D.C. 2008) (represented charitable organization which successfully challenged regulation barring certain kinds of down-payment assistance; Court held that HUD's promulgation of rule violated the Administrative Procedure Act).

*Nichols v. Progressive Direct Insurance Co., et al.*, No. 2:06cv146 (E.D. Ky.) (Class Counsel; class action arising from unlawful taxation of insurance premiums; statewide settlement with Safe Auto Insurance Company and creation of $2 million Settlement Fund; statewide settlement with Hartford Insurance Company and tax refunds of $1.75 million ).

*Staton v. IMI South, et al.* (Kentucky Cir. Ct) (class settlement for approximately $30 million for repair and purchase of houses built with defective concrete).

*Maytag Neptune Washing Machines* (class action settlement for owners of Maytag Neptune washing machines).

*Roberts v. Fleet Bank (R.I.), N.A.*, Civil Action No. 00-6142 (E. D. Pa.) ($4 million dollar settlement on claims that Fleet changed the interest rate on consumers' credit cards which had been advertised as "fixed.")

*Bruce, et. al. v. County of Rensselaer et. al.*, Case no. 02-CV-0847 (N.D.N.Y.) (class settlement of claims that corrections officers and others employed at the Rensselaer County Jail (NY) engaged in the practice of illegally strip searching all individuals charged with only misdemeanors or minor offenses).

*Baugh v. The Goodyear Tire & Rubber Company* (class settlement of claims that Goodyear sold defective tires that are prone to tread separation when operated at highway speeds; Goodyear agreed to provide a combination of both monetary and non-monetary consideration to the Settlement Class in the form of an Enhanced Warranty Program and Rebate Program).

*Stalcup, et al. v. Thomson, Inc.* (Illinois Cir. Ct.) (class settlement of claims that certain GE, PROSCAN and RCA televisions may have been susceptible to temporary loss of audio when receiving broadcast data packages that were longer than reasonably anticipated or specified).

*Hurkes Harris Design Associates, Inc., et al. v. Fujitsu Computer Products of America, Inc.* (settlement provides $42.5 million to pay claims of all consumers and other end users who bought certain Fujitsu Desktop 3.5" IDE hard disk drives).

*Lubitz v. Daimler Chrysler Corp.* (national settlement for repairs and reimbursement of repair costs incurred in connection with defective brake system; creation of $12 million fund; 7th largest judgment or settlement in New Jersey in 2007).

*Turner v. General Electric Company*, No. 2:05-CV-186 (M.D. Fl) (settlement of claims arising from allegedly defective refrigerators).

*Galanti v. Goodyear Tire & Rubber Co.*, No. 03-209 (D.N.J. 2003) (national settlement and creation of $330 million fund for payment to owners of homes with defective radiant heating systems).

*In re Synthetic Stucco Litigation*, Civ. Action No. 5:96-CV-287-BR(2) (E.D.N.C.) (member of Plaintiffs' Steering Committee; settlements with four EIFS Manufacturers for North Carolina homeowners valued at more than $50 million).

*In re Synthetic Stucco (EIFS) Products Liability Litigation*, MDL No. 1132 (E.D.N.C.) (represented over 100 individuals homeowners in lawsuits against homebuilders and EIFS manufacturers).

*Posey, et al v Dryvit Systems, Inc.*, Case No. 17,715-IV (Tenn. Cir. Ct) (Co-Lead Counsel; national class action settlement provided cash and repairs to more than 7,000 claimants).

*In re Swanson Creek Oil Spill Litigation*, No. 00-1429 (D. Md.) (Lead Counsel; $2.25 million settlement of litigation arising from largest oil spill in history of State of Maryland).

# EXHIBIT B

**Whitfield Bryson & Mason LLP**

| Activity | Mason Partner | Migliaccio Partner | Harris Painter | Rathod Associate | Nafisi Associate | Branda Law Clerk | Goldstein Law Clerk | Kelley Paralegal | DiCocco Paralegal | Total Time This Activity | % of Total Time | Total Lodestar This Activity | % of all Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Pre-Complaint Engineering & Fact Investigation Prior to Filing Initial Complaint | 3.50 | | | | | | | | | 3.50 | 0.75% | $ 630 | 0.25% |
| Research & Draft Initial Complaint | 5.00 | 39.00 | | | | 12.00 | | | 19.00 | 75.00 | 16.07% | $ 32,370 | 13.04% |
| Engineering & Fact Investigation for First Amended Complaint | 12.75 | 15.50 | | | | | | | | 28.25 | 6.05% | $ 18,863 | 7.60% |
| Research & Draft First Amended Complaint | 0.50 | 22.25 | 1.00 | 14.75 | 3.00 | | | | 7.25 | 48.75 | 10.44% | $ 22,593 | 9.10% |
| Research & Draft Opposition To Motion To Dismiss | 0.75 | 68.00 | | 34.00 | | | | | 8.50 | 111.25 | 23.84% | $ 56,153 | 22.62% |
| Post Filing Discovery | | 8.00 | | | | | | 0.75 | | 8.75 | 1.87% | $ 4,926 | 1.98% |
| Post Filing Engineering Investigation To Assess Effectiveness of Lenovo's Remedial Measures | 2.25 | | | | | | | | | 2.25 | 0.48% | $ 1,688 | 0.68% |
| Design Settlement Proposal, Draft Mediation Statement & Mediate Plaintiffs & Class Member Claims | 28.25 | 56.00 | | | | | 24.75 | | | 109.00 | 23.35% | $ 57,634 | 23.22% |
| Negotiate Settlement Agmt, Draft Settlement Agmt, Draft Notice, Summary Notice, Preliminary Approval Order, Final Approval Order, Draft Plaintiffs' Motion for Preliminary Approval and Supporting Documents & Exs. | 18.00 | 22.00 | | | | | | | | 40.00 | 8.57% | $ 26,700 | 10.76% |
| Ongoing Work with Claims Administrator to get claims process and automated Claim Form website up and running, Draft Plaintiffs' Motion for Final Approval and All Supporting Exhibits, Communications with Class Members and Claims Administrator to Facilitate Ongoing Claims Process | 18.00 | 22.00 | | | | | | | | 40.00 | 8.57% | $ 26,700 | 10.76% |
| | 85.50 | 256.25 | 1.00 | 48.75 | 3.00 | 12.00 | 24.75 | 0.75 | 34.75 | 466.75 | 100.00% | $ 248,256 | 100.00% |

# TUFARO

# DECLARATION

# EXHIBIT

# 5

1   **KIESEL LAW LLP**
2   Paul R. Kiesel (Bar No. CA 119854)
    8648 Wilshire Boulevard
3   Beverly Hills, California 90211-2910
4   Telephone: (310) 854-4444
    Facsimile: (310) 854-0812
5
6   **PARADIS LAW GROUP, PLLC**
7   Paul O. Paradis, Esq. (Pro Hac Vice)
    Gina M. Turafo, Esq. (Pro Hac Vice)
8   570 Seventh Avenue – 20th Floor
9   New York, New York, 10018
    Telephone (212) 986-4500
10  Facsimile: (212) 986-4501
11
    Interim Class Counsel
12
13              **UNITED STATES DISTRICT COURT**
14              **CENTRAL DISTRICT OF CALIFORNIA**
15  GARRETT KACSUTA and MICHAEL      | Case No. SACV 13-00316-CJC(RNBx)
16  WHEELER, individually and on behalf |
    of all others similarly situated,   |
17                                       | **DECLARATION OF GARRETT**
                                         | **KACSUTA IN SUPPORT OF**
18           Plaintiffs,                 | **PLAINTIFFS' MOTION FOR FINAL**
                                         | **APPROVAL OF CLASS ACTION**
19                                       | **SETTLEMENT and APPROVAL OF**
        v.                               | **ATTORNEYS' FEES, REIMBURSEMENT**
20                                       | **OF EXPENSES and PLAINTIFFS'**
21  LENOVO (United States) Inc.,         | **REIMBURSEMENT AWARDS**
22           Defendant.                  | Hearing Date: December 15, 2014
23                                       | Time:         1:30 p.m.
                                         | Department:   Courtroom 9B
24                                       | Judge:        Cormac J. Carney
25
26
27
                                    1
28
    DECLARATION OF GARRETT KACSUTA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
    APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF ATTORNEYS' FEES,
    REIMBURSEMENT OF EXPENSES and PLAINTIFFS' REIMBURSEMENT AWARDS

1        I, Garrett Kacsuta, under penalty of perjury, hereby declare that the following

2    is true and correct to the best of my knowledge and belief:

3        1.   I am over the age of 18 and am fully familiar with the facts and

4    circumstances set forth herein and could competently testify thereto if called upon

5    to do so.

6        2.   I submit this declaration in support of Plaintiffs' Motion for Final

7    Approval of Class Action Settlement and Approval of Attorneys' Fees,

8    Reimbursement of Expenses and Reimbursement Awards.

9        3.   On January 29, 2013, I purchased a Lenovo IdeaPad U310 Ultrabook

10   from www.lenovo.com ("My U310 Lenovo Computer").

11       4.   At the time that I purchased My U310 Lenovo Computer, I was

12   unaware that My U310 Lenovo Computer suffered from a defect that affected its

13   Wi-Fi capabilities.

14       5.   On numerous occasions after I purchased my Lenovo U310 Computer,

15   I experienced an inability to: (i) use my Lenovo U310 Computer to connect to Wi-

16   Fi networks, or (ii) attain Wi-Fi data transmission/reception speeds sufficient to

17   allow me to engage in Internet browsing using my Lenovo U310 Computer.

18       6.   On or about February 21, 2013, I instructed and authorized my counsel

19   to file a class action against Lenovo (United States), Inc. on behalf of myself and

20   all other purchasers of certain laptop computers manufactured and sold by Lenovo,

21   that are plagued by a defective Wi-Fi capability, including the Lenovo IdeaPad

22   U310 Ultrabook.

23       7.   On or about May 28, 2013, I instructed and authorized my counsel to

24   file a First Amended Class Action Complaint, and on or about August 22, 2014, I

25   instructed and authorized my counsel to file a Second Amended Complaint, which

26   added Mr. Michael Wheeler as a named plaintiff.

27

28

---

2

8.     Since the commencement of the pre-filing investigation conducted by my counsel in this action, and continuing through the present time, I have been involved in directing, monitoring, and supervising my attorneys and have read and approved of the filing of numerous documents with the Court throughout this action.

9.     On or about August 22, 2014, the parties executed the Settlement Agreement and Limited Release ("Settlement Agreement"), which I authorized.  I personally approve of the Settlement of this action on the terms contained in the Settlement Agreement.

10.     Throughout the course of this litigation, Class Counsel has demonstrated an extremely high level of expertise in dealing with the complex legal issues involved in this action.   Class Counsel steadfastly represented my interests and the interests of my fellow Class members and has remained a tenacious advocate throughout all stages of the litigation.   I am extremely pleased with Class Counsel's efforts on behalf of myself and the Class and believe Class Counsel performed in a highly commendable manner.

11.     In light of the high quality of work performed by Class Counsel and the excellent benefit that the Settlement represents for the Class, I strongly urge the Court to finally approve this Settlement and Class Counsel's request for attorneys' fees and expenses.

12.     As a result of my participation in this action, I expended many hours of my time reviewing and analyzing documents, participating in telephone calls, responding to emails and directing Plaintiffs' counsel in connection with the prosecution of this action on behalf of the Class.

13.     As a result of my participation in the prosecution of this action, I have lost both business opportunities and wages in the amount of at least $2,500. On the basis of the foregoing, I therefore respectfully request that the Court reimburse me

3

1  in the amount of two thousand five hundred dollars ($2,500) to compensate me for

2  my time and the lost business opportunities and wages that I have incurred as a

3  result of my performance of the duties described herein on behalf of the Class in

4  this action.

5       I declare under penalty of perjury that the foregoing is true and correct

6  to the best of my knowledge on this 6th day of October, 2014 at Fountain Valley,

7  California.

8

9

10

11                                                         Garrett Kacsuta

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

4

DECLARATION OF GARRETT KACSUTA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES and PLAINTIFFS' REIMBURSEMENT AWARDS

# TUFARO

# DECLARATION

# EXHIBIT

# 6

1  **KIESEL LAW LLP**
   Paul R. Kiesel (Bar No. CA 119854)
2  8648 Wilshire Boulevard
3  Beverly Hills, California 90211-2910
   Telephone: (310) 854-4444
4  Facsimile: (310) 854-0812
5
6  **PARADIS LAW GROUP, PLLC**
   Paul O. Paradis, Esq. (Pro Hac Vice)
7  Gina M. Turafo, Esq. (Pro Hac Vice)
8  570 Seventh Avenue – 20th Floor
   New York, New York, 10018
9  Telephone (212) 986-4500
10 Facsimile: (212) 986-4501
11
   Interim Class Counsel
12
13        **UNITED STATES DISTRICT COURT**
          **CENTRAL DISTRICT OF CALIFORNIA**
14
15 GARRETT KACSUTA and MICHAEL      | Case No. SACV 13-00316-CJC(RNBx)
   WHEELER, individually and on behalf
16 of all others similarly situated,
17                                   | **DECLARATION OF MICHAEL**
          Plaintiffs,                | **WHEELER IN SUPPORT OF**
18                                   | **PLAINTIFFS' MOTION FOR FINAL**
                                     | **APPROVAL OF CLASS ACTION**
19     v.                            | **SETTLEMENT and APPROVAL OF**
                                     | **ATTORNEYS' FEES, REIMBURSEMENT**
20 LENOVO (United States) Inc.,      | **OF EXPENSES and PLAINTIFFS'**
                                     | **REIMBURSEMENT AWARDS**
21
22        Defendant.                 | Hearing Date: December 15, 2014
23                                   | Time:          1:30 p.m.
                                     | Department:   Courtroom 9B
24                                   | Judge:        Cormac J. Carney
25
26
27
28
          DECLARATION OF MICHAEL WHEELER IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
          APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF ATTORNEYS' FEES,
          REIMBURSEMENT OF EXPENSES and PLAINTIFFS' REIMBURSEMENT AWARDS

I, Michael Wheeler, under penalty of perjury, hereby declare that the following is true and correct to the best of my knowledge and belief:

1.      I am over the age of 18 and am fully familiar with the facts and circumstances set forth herein and could competently testify thereto if called upon to do so.

2.      I submit this declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Attorneys' Fees, Reimbursement of Expenses and Reimbursement Awards.

3.      On November 11, 2012, I purchased a Lenovo IdeaPad U410 Ultrabook from www.lenovo.com ("My U410 Lenovo Computer").

4.      At the time that I purchased My U410 Lenovo Computer, I was unaware that My U410 Lenovo Computer suffered from a defect that affected its Wi-Fi capabilities.

5.      On numerous occasions after I purchased my Lenovo U410 Computer, I experienced an inability to: (i) use my Lenovo U410 Computer to connect to Wi-Fi networks, or (ii) attain Wi-Fi data transmission/reception speeds sufficient to allow me to engage in Internet browsing using my Lenovo U410 Computer.

6.      On or about October 22, 2013, I instructed and authorized my counsel to file a class action in the Superior Court for the District of Columbia against Lenovo (United States), Inc. on behalf of myself and all other purchasers of certain laptop computers manufactured and sold by Lenovo, that are plagued by a defective Wi-Fi capability, including the Lenovo IdeaPad U410 Ultrabook. That action is captioned, *Wheeler v. Lenovo (United States), Inc.*, 13-0007150 (D.C. 2013) (the "*Wheeler* Action").

---

DECLARATION OF MICHAEL WHEELER IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES and PLAINTIFFS' REIMBURSEMENT AWARDS

7. On or about February 14, 2014, I instructed and authorized my counsel to file a First Amended Class Action Complaint in the *Wheeler* Action.

8. On or about August 22, 2014, I joined the action, *Kacsuta v. Lenovo* (United States), Inc., Case No. SACV 13-00316-CJC(RNBx) (the "*Kacsuta* Action") as a named plaintiff, and, at that time, I instructed and authorized my counsel to file a Second Amended Class Action Complaint in the *Kacsuta* Action.

9. Since the commencement of the pre-filing investigation conducted by Class Counsel, and continuing through the present time, I have been involved in directing, monitoring, and supervising my attorneys and have read and approved of the filing of numerous documents with the Court.

10. On or about August 22, 2014, the parties in the *Kacsuta* Action executed the Settlement Agreement and Limited Release ("Settlement Agreement"), which I authorized. I personally approve of the Settlement of this action on the terms contained in the Settlement Agreement.

11. Throughout the course of this litigation, Class Counsel has demonstrated an extremely high level of expertise in dealing with the complex legal issues involved in this action. Class Counsel steadfastly represented my interests and the interests of my fellow Class members and has remained a tenacious advocate throughout all stages of the litigation. I am extremely pleased with Class Counsel's efforts on behalf of myself and the Class and believe Class Counsel performed in a highly commendable manner.

12. In light of the high quality of work performed by Class Counsel and the excellent benefit that the Settlement represents for the Class, I strongly urge the Court to finally approve this Settlement and Class Counsel's request for attorneys' fees and expenses.

DECLARATION OF MICHAEL WHEELER IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES and PLAINTIFFS' REIMBURSEMENT AWARDS

13.     As a result of my participation in this action, I expended many hours of my time reviewing and analyzing documents, participating in telephone calls, responding to emails and directing my counsel in connection with the prosecution of this action on behalf of the Class.

14.     As a result of my participation in the prosecution of this action, I have lost both business opportunities and wages in the amount of at least $2,500. On the basis of the foregoing, I therefore respectfully request that the Court reimburse me in the amount of two thousand five hundred dollars ($2,500) to compensate me for my time and the lost business opportunities and wages that I have incurred as a result of my performance of the duties described herein on behalf of the Class in this action.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge on this ___7___ day of October, 2014 at Washington, D.C.

Michael Wheeler

DECLARATION OF MICHAEL WHEELER IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES and PLAINTIFFS' REIMBURSEMENT AWARDS