**DYKEMA GOSSETT LLP**
DANIEL J. STEPHENSON, SBN: 270722
*dstephenson@dykema.com*
333 South Grand Avenue, Suite 2100
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

Attorneys for Defendant
LENOVO, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| GARRETT KACSUTA, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>LENOVO (United States), Inc. a Delaware Corporation,<br><br>        Defendant. | Case No. 8:13-CV-00316-CJC (RNBx)<br><br>[Assigned to the Hon. Cormac J. Carney]<br><br>**LENOVO'S MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES**<br><br>[Declarations of Daniel J. Stephenson, Kurt H. Cranor, Denise N. Martin and Andre E. Jardini filed concurrently herewith]<br><br>Hearing:    December 15, 2014<br>Time:       1:30 p.m.<br>Judge:     Hon. Cormac J. Carney<br>Courtroom: 9B |

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

# **TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................... 1

    A.   Key Aspects Of The Settlement ......................................................... 1

    B.   The Realistic Value To Class Members .............................................. 2

III.  ARGUMENT ............................................................................................... 7

    A.   The Settlement Should Be Approved .................................................. 7

    B.   Class Counsel's Fee Request Should Not Be Approved ..................... 7

        1.   A lodestar multiplier less than 1.0 should be granted ............... 8

            a.   This is not a "rare or exceptional case" that
                warrants a large multiplier ............................................ 8

            b.   In similar consumer cases, multiples of 1.0 or less
                have been awarded ......................................................... 9

            c.   The Court must examine the true or realistic value
                of the settlement to class members ............................... 11

            d.   Plaintiffs' "value" of $50 million is based on fantasy
                compounded by fantasy and cannot be accepted ............... 15

            e.   The true value of $1.06 million to $2.37 million
                does not justify a fee award of $9 million .......................... 17

        2.   Class Counsel's $3.1 Million Lodestar Is Not Reasonable .......... 18

            a.   This case was settled early and was not complicated ........ 18

            b.   Comparison to similar cases does not support the
                lodestar .......................................................................... 18

            c.   Class Counsel's weighted average billing rate of
                $654 per hour is too high ................................................ 20

            d.   The hours expended were not reasonable ......................... 22

        3.   Final Approval Of Fees Should Be Deferred Until The End
            Of The Claims Period .................................................................. 24

    C.   There Is Insufficient Information Supporting Consultant Costs ............. 25

III.  CONCLUSION ........................................................................................... 25

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

LENOVO'S MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF SETTLEMENT AND CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES

# INDEX OF AUTHORITIES

**Page(s)**

**CASES**

*Acosta v. Trans Union, LLC*,
   243 F.R.D. 377 (C.D. Cal. 2007)................................................................13, 17

*Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*,
   743 F.3d 243 (7th Cir. 2014) ...........................................................................13

*Cohorst v. BRE Props.*,
   2012 U.S. Dist. LEXIS 78010 (S.D. Cal. June 5, 2012) ....................................21

*Collado v. Toyota Motor Sales, U.S.A., Inc.*,
   550 Fed. Appx. 368 (9th Cir. 2013) ...................................................................7

*Create-A-Card, Inc. v. Intuit, Inc.*,
   2009 WL 3073920 (N.D. Cal. Sept. 22, 2009)...................................................14

*Dardarian v. OfficeMax North America Inc.*,
   2013 U.S. Dist. LEXIS 98653 (N.D. Cal. July 12, 2013) ............................12, 14

*Davis v. Cole Haan, Inc.*,
   2013 U.S. Dist. LEXIS 151813 (N.D. Cal. 2013) ......................................12, 25

*Feder v. Frank (In re HP Inkjet Printer Litigation)*,
   716 F.3d 1173 (9th Cir. 2013) ...............................................................11, 12, 25

*Ferrington v. McAfee, Inc.*,
   2012 U.S. Dist. LEXIS 49160 (N.D. Cal. Apr. 6, 2012)....................................16

*Fleury v. Richemont N. Amer., Inc.*,
   2008 U.S. Dist. LEXIS 112459 (N.D. Cal. Aug. 6, 2008).................8, 12, 14, 25

*Fraser v. ASUS Computer Int'l*,
   12cv00652 (N.D. Cal. Oct. 1, 2012)............................................................10, 19

*Hensley v. Eckerhart*,
   461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) ...............................12, 22

*In re Apple iPhone 4 Products Liab. Litig.*,
   2012 U.S. Dist. LEXIS 113876 (N.D. Cal. Aug. 10, 2012)..............8, 10, 16, 19

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

*In re Apple iPhone 4,*
    *supra,* 2012 U.S. Dist. LEXIS ........................................................................ 13

*In re Classmates.com Consolidated Litig.,*
    2011 U.S. Dist. LEXIS 17761 (W.D. Wash. Feb. 23, 2011) ...................... 13, 17

*In re Easysaver Rewards Litig.,*
    921 F.Supp.2d 1040 (S.D. Cal. 2013) ............................................................ 15

*In re Merry-Go-Round Enterprises, Inc.,*
    244 B.R. 327 (Bankr. D. Md. 2000) ................................................................ 9

*In re Petition of Hill,*
    775 F.2d 1037 (9th Cir. 1985) ........................................................................ 7

*In re Toyota Motor Corp. Unintended Acceleration Mktg.,*
    *Sales Practices, & Prods. Liab. Litig.,*
    2013 U.S. Dist. LEXIS 123298 (C.D. Cal. 2013) ........................... 9, 10, 20, 21

*In re Toys "R" Us, Inc. Fair & Accurate Credit Transactions Act (FACTA)*
    *Litig.,*
    295 F.R.D. 438 (C.D. Cal. 2014)...................................... 7, 11, 13, 16, 25

*Iorio v. Allianz Life Ins. Co.,*
    2011 U.S. Dist. LEXIS 21824 (S.D. Cal. Mar. 3, 2011) ........................... 14, 15

*Johnson v. General Mills, Inc.,*
    2013 U.S. Dist. LEXIS 90338 (C.D. Cal. June 17, 2013) ................................ 20

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.),*
    654 F.3d 935 (9th Cir. 2011) ........................................................................ 17

*Kearney v. Hyundai Motor America,*
    2013 U.S. Dist. LEXIS 91636 (C.D. Cal. 2013) ............................................ 21

*Laguna v. Coverall N. Am., Inc.,*
    753 F.3d 918 (9th Cir. 2014) ........................................................... 11, 13, 16

*Litwin v. iRenew Bio Energy Solutions, LLC,*
    226 Cal. App. 4th 877 (2d Dist. 2014) ............................................................ 11

*Moreno v. City of Sacramento,*
    534 F.3d 1106 (9th Cir. 2008) ........................................................................ 22

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

iii

*Parkinson v. Hyundai Motor America*,
   796 F.Supp.2d 1160 (C.D. Cal. 2010) ................................................................ 21

*Perdue v. Kenny A. ex rel. Winn*,
   559 U.S. 542, 130 S.Ct. 1662, 176 L. Ed. 2d 494 (2010) ..................................... 8

*POM Wonderful, LLC v. Purely Juice*,
   2008 U.S. Dist. LEXIS 110460 (C.D. Cal. Sept. 22, 2008) .............................. 21

*Roberts v. Electrolux Home Prods.*,
   2014 U.S. Dist. LEXIS 130163 (C.D. Cal. Sept. 11, 2014) .............................. 14

*Rosted v. First USA Bank*,
   No. 97-1482 (W.D. Wash. June 15, 2001) ................................................. 15, 25

*Shames v. Hertz Corp.*,
   2012 U.S. Dist. LEXIS 158577 (S.D. Cal. Nov. 5, 2012) ...................... 11, 15, 20

*Strong v. Bellsouth Telecomms.*,
   137 F.3d 844 (5th Cir. 1998) ........................................................................ 7, 17

*Sullivan v. DB Invs. Inc.*,
   667 F.3d 273 (3d Cir. 2011) .............................................................................. 16

*Sylvester v. CIGNA Corp.*,
   369 F.Supp.2d 34 (D. Me. 2005) ...................................................................... 16

*True v. American Honda Motor Co.*,
   749 F. Supp. 2d 1052 (C.D. Calif. 2010) ............................................. 12, 13, 16

*Van Gerwen v. Guarantee Mut. Life Co.*,
   214 F.3d 1041 (9th Cir. 2000) ....................................................................... 8, 22

*Van Vranken v. Atl. Ritchfield Co.*,
   901 F. Supp. 294 (N.D. Ca. 1995) ................................................................ 10, 22

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ........................................................................... 10

*Volkswagen Group of America, Inc. v. Peter McNulty Law Firm*,
   692 F.3d 4 (1st Cir. 2012)...................................................................................... 7

*Walsh v. Kindred Healthcare*,
   2013 U.S. Dist. LEXIS 176319 (N.D. Cal. Dec. 16, 2013) .................. 11, 15, 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DYKEMA GOSSETT LLP**
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

LENOVO'S MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF SETTLEMENT AND CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES

*Wolph v. Acer Am. Corp.*,
   2013 U.S. Dist. LEXIS 151180 (N.D. Cal. Oct. 21, 2013) .........................passim

*Yeagley v. Wells Fargo & Co.*,
   2010 U.S. Dist. LEXIS 57837 (N.D. Cal. May 20, 2010) .........................passim

RULES

Fed. R. Civ. P. 23(h) ..................................................................................25

OTHER AUTHORITIES

Fitzpatrick, "An Empirical Study of Class Action Settlements and Their Fee
   Awards," *Journal of Empirical Legal Studies* 7:811-846 (2010) ........................8

Mayer Brown, LLP, "Do Class Actions Benefit Class Members?" (2013)
   accessed August 28, 2014, http://www.mayerbrown.com/files/uploads/
   Documents/PDFs/2013/December/DoClassActionsBenefitClass
   Members.pdf ..................................................................................16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DYKEMA GOSSETT LLP**
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

LENOVO'S MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF SETTLEMENT AND CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES

## I.    INTRODUCTION

Defendant Lenovo (United States), Inc. ("Lenovo") supports final approval of the Settlement. The settlement provides real value to class members.

However, Lenovo does not support, and hereby opposes, Class Counsel's request for almost $9 million in fees. This astronomical fee request hinges on a $50 million "valuation" of the settlement that is based on three wildly unsupportable assumptions: (a) that 100% of the class members will be eligible for benefits, (b) that 100% of the class members will submit claims, and (c) that 100% of the claimants will choose the "repair" option rather than cash or discount coupons. In other words, the valuation is based on three compounded illusions. The true value of the settlement to class members – what can reasonably be expected to be distributed – is in the range of $1.06 – 2.37 million dollars. In no sense can this justify a $9 million fee award.

Class Counsel have submitted a lodestar of $3.1 million, which is unreasonable in light of the early settlement of this case and its lack of complexity. Their request for a multiplier of 2.84 is similarly unsupported. In light of the modest recovery by class members, a multiple of <u>less</u> <u>than</u> 1.0 is appropriate. Given that there is no "common fund," but simply a year-long claims process, the Court should defer a final ruling on fees until the claims period ends and a real computation of value can take place.

## II.   STATEMENT OF FACTS

### A.    <u>Key Aspects Of The Settlement</u>

The settlement has been described in detail in Plaintiffs' Motion. It is accurate that the available remedies are (1) $100 cash, (2) a $250 discount coupon, or (3) repair of Wi-Fi capabilities free of charge (the "Repair Option"). Claimants must choose among these three options. In addition, warranties will be extended and persons who can document out-of-pocket expenses for prior repairs will be reimbursed. Some aspects of the settlement must be emphasized because they bear heavily on the issue of fees.

First, <u>there is no "common fund."</u> Lenovo has not agreed to pay any specific

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

amount or any minimum or maximum. This distinguishes the present case from many of the cases cited in the Fee Request.

Second, this is a <u>claims made</u> settlement. Only persons submitting verified claims will receive remedies on an individual basis.

Third, there is an <u>eligibility threshold.</u> Under the Settlement Agreement and the Claim Form, a class member must verify under oath that he or she experienced "a persistent inability to connect to Wi-Fi networks" or attain sufficient speeds to engage in Internet browsing. This is a very significant part of the settlement. Lenovo was unwilling to enter into a settlement that provided a windfall to unharmed users. The majority of users did not experience persistent Wi-Fi problems and were satisfied with their computers. More than 60% of the reviews on Amazon.com and Reviews.Lenovo.com were favorable (3-star or above). (Stephenson Decl., ¶ 18.) Part of this is because two months after rolling out the product line, Lenovo made a hardware modification that substantially improved the Wi-Fi capability of the computers. (Cranor Oct. 8 Decl. ¶¶ 7-9, attached as Ex. J to Stephenson Decl.)[1] Class Counsel acknowledge that "while Plaintiffs initially claimed that Defendant failed to resolve the Wi-Fi Defect, confirmatory discovery has revealed that Lenovo eventually instituted a remedial measure that substantially improved the Wi-Fi capabilities of the Class Computers." (Tufaro Decl., ¶ 42.) Thus, a significant percentage of class members were not harmed, or did not experience harm above the specified threshold, and are not eligible for any remedy.

**B.    The Realistic Value To Class Members**

Class Counsel's request for fees is heavily dependent on a calculated "value" of this settlement of $50,515,487.15. This number is the product of (a) 83,201 class members, times (b) $607.15, the estimated value of the Repair Option. In other words,

---

[1]  Mr. Cranor, the Americas CFO for Lenovo, executed a "confirmatory discovery" Declaration on October 6, 2014. That Declaration was relied on by Class Counsel and their experts. It is attached as Ex. J to the Stephenson Declaration. A second Cranor Declaration dated November 6, 2014, dealing with different subjects, is being filed contemporaneously with this Memorandum.

the $50 million valuation is based on three critical assumptions:

> 1.   That 100% of class members are eligible to submit claims;
>
> 2.   That 100% of eligible class members will submit claims; and
>
> 3.   That 100% of claimants will choose the Repair Option.

These assumptions, to use a term coined in other cases, render the valuation "illusory." They represent three fantasies compounded together.

First, the majority of class members are not even <u>eligible</u> to make a claim due to the eligibility requirements. Class Counsel has not attempted to quantify this. Second, it is well known that in consumer claims-made settlements, fewer than 10% of class members typically make claims. Again, Class Counsel makes no attempt to quantify this. Third, the repair option is the <u>least</u> attractive option of the three, and adds no significant value. Class Counsel and its expert make no attempt to support this obviously unjustified assumption about the "mix" of claims.

Because Class Counsel has not met its burden of properly valuating the settlement, Lenovo has engaged experts to do it properly. Each item, and the total, are discussed below.

### a.   The Repair Option

That very few people will select the Repair Option is clear from historical, undisputed, hard data. Lenovo began selling the U310 and U410 computers in June of 2012. They carried a one-year warranty. The Wi-Fi underperformance, if it exists in someone's computer, will manifest itself immediately. Thus, if a person bought a laptop in 2012 or 2013, he or she has had a full year to obtain a warranty repair. The line was discontinued in early 2014. Thus, every single class member has had ample time to obtain a warranty repair. How many people took that opportunity prior to this settlement? One hundred and nineteen (119) – which represents 0.14% of the class. (Cranor Oct. 8 Decl. ¶ 14, attached as Ex. J to Stephenson Decl.)

The Repair Option is less attractive because it requires the most effort. The claimant must pack his or her computer into a (provided) box, and then do without the

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

3

LENOVO'S MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF SETTLEMENT AND CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES

computer for some period of time while it is being shipped and serviced. Finally, neither of the named Plaintiffs believes that the repair is worthwhile, and their Second Amended Complaint (SAC) notes numerous users who are skeptical about the efficacy of the repair. (SAC, ¶¶ 76-82.) It simply is not an attractive option for many people.

All of this is borne out by the claims experience to date. Out of 2,135 claims submitted in the seven weeks since notice was sent, approximately 100 have selected the repair option. (Stephenson Decl.,¶ 23.) That represents a "mix" of 4.7% for the repair option – 95.3% of claimants are selecting the cash or discount options. The 100% "mix" assumption by Class Counsel and their experts is off by a factor of 20.

The calculated "value" of each repair – $607, according to Plaintiffs' expert – is also inflated. A simple reasonableness check would have shown the fallacy of this number. This is about the cost of a <u>new</u> computer. A 2-year-old computer is worth far less. To place a value on a repair (repairing only Wi-Fi, not any other aspect) that vastly exceeds the value of the underlying product is not economically rational. No user in the real world would spend $607 to repair a 2-year-old laptop.

The actual cost is as follows: (a) $33 flat rate for the repair, plus (b) $48 for the shipping. (Cranor Nov. 6 Decl. ¶¶ 4-5.) Persons selecting this option will also receive a warranty extension, but only for Wi-Fi related issues, which, in light of the repair, is of minimal value. In other words, the <u>actual</u> cost of the Repair Option, including the partial warranty extension, is less than $125 per claimant. There is a good way to confirm this amount. The settlement allows reimbursement of out-of-pocket expenses "associated with repair of their Class Computer." (Settlement Agreement, ¶ II(C)(4).) According to the papers submitted by Class Counsel, the average amount of these costs, as claimed by the people who incurred them, is $125. Thus, the value of the Repair Option is in the range of $125, not the unreasonable $607 calculated by Plaintiffs' expert.

However, even <u>this</u> is not value to the class that was brought by the litigation. Lenovo forthrightly acknowledged in the summer of 2012 – prior to litigation – that it

4

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

had made a hardware modification that substantially improved Wi-Fi reception. It made this modification at the factory for machines built after July 23, 2012. As for those who purchased earlier – approximately 11,000 laptops – Lenovo has always been willing to provide the modification for free, whether the machine was in or out of warranty. (Second Amended Complaint ¶¶ 71-75; Cranor Oct. 8 Decl. ¶ 10, attached as Ex. J to Stephenson Decl.)[2] Thus, the <u>litigation</u> did not produce this benefit. The value brought by the litigation to the class with respect to the Repair Option is insignificant.

### b.   The Cash Option

The $100 cash option is the easiest to value and the easiest for class members to obtain. There is near-agreement on the value per claim.

### c.   The $250 Credit Certificate

Credit certificates can only be transferred within the immediate family. They expire two years after the claims period ends, thus there is a time-value-of-money component that Plaintiffs' expert recognizes. Courts and experts all recognize that the value of a coupon or "credit certificate" is less than its face value.

Plaintiffs assert that the credit certificate is "not a coupon," because it can be used to purchase some products that cost less than $250, meaning the class members can get those products for free. It hardly need be said, however, that Lenovo's main products are Lenovo computers, even if it also sells peripheral products online. Thus, it is reasonable to expect that many people will be using the $250 certificate to obtain a discount on a new Lenovo computer that costs more than $250.[3]

---

[2]  While Lenovo's policy was to provide the shielding fix for free, it is possible that a handful of people slipped through the cracks and were charged something. Any such expense, however, is reimbursable under the "out-of-pocket" provision of the Settlement.

[3]  Class Counsel expert Mark Williams implicitly assumes that class members will be using the certificates to buy computers. It is possible to purchase a mouse for $20 or a keyboard for $30 online. (Stephenson Decl., ¶¶ 25-26.) The certificate is limited to use for "any product" offered at lenovo.com – the word "product" is singular. If a class member uses the certificate toward a keyboard or mouse, the value is obviously far below face value. Mr. Williams does not assume that any of the certificates will be used in this manner. To get the full value, which he assumes, one must buy a computer.

LENOVO'S MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

### d.     The Extended Warranty

Class members who select the Repair Option receive a limited warranty extension. As noted, only a small percentage of class members have selected, or will select, this option. Class members who select the Cash or Certificate option will obtain a 120-day warranty extension. This, too, is of minimal value. The people who select this option are those who don't believe a repair is necessary or efficacious. That isn't going to change in 120 days, not when they've owned the computer for 1-2+ years. A one-<u>year</u> warranty extension is worth $49 at most. Thus, a 120-day extension is worth about $16. (Martin Decl., ¶ 14.)

### e.     Out-Of-Pocket Reimbursement

Reimbursement is limited to costs associated with <u>repair</u> of the laptop. Very few people have obtained repairs in the past 30 months. As Plaintiffs acknowledge, only 33 class members have requested reimbursements thus far, at an average request of $125. Even if all 119 people who obtained repairs from Lenovo made such a claim, the total value is on the order of $15,000.

### f.     Aggregate Value Using Reasonable Assumptions

Lenovo has engaged National Economic Research Associates, Inc. ("NERA") to perform a valuation of the settlement using realistic assumptions. Notably, even Plaintiffs' expert Geoffrey Miller relies on a NERA study. (Miller Decl., ¶ 39.) NERA is well qualified in this field, and Denise Martin, PhD, is the head of NERA's class action practice. Dr. Martin, whose credentials include Masters and PhD degrees in Economics from Harvard, opines that the value of the settlement is $1.06 million to $2.37 million. (Martin Decl., ¶ 17.) Her Declaration also dissects the Declaration of Plaintiffs' valuation expert Mark Williams. Mr. Williams' $50 million "valuation" is simply unreasonable and cannot form the basis for a fee claim.

//

//

//

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

## III.   ARGUMENT

### A.   <u>The Settlement Should Be Approved.</u>

Lenovo agrees with the salient points in Plaintiffs' moving papers regarding final approval of the settlement. Lenovo disagrees only with Plaintiffs' valuation, which relates to fees. That the parties disagree about the value of the settlement should not stand in the way of approval. The settlement provides fair and reasonable remedies to deserving class members, without providing a windfall to the unharmed.

### B.   <u>Class Counsel's Fee Request Should Not Be Granted.</u>

Lenovo agrees with Plaintiffs that the "lodestar" methodology applies here. There is no "common fund," and the line of cases relating to common funds is inapplicable. *In re Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (holding common fund method inapplicable because no fund was created). *See also Volkswagen Group of America, Inc. v. Peter McNulty Law Firm*, 692 F.3d 4, 16-17 (1st Cir. 2012) (holding it was reversible error to apply "common fund" doctrine, which "should apply only where attorneys seek compensation from a discernable pot of money won by the plaintiffs;" in a claims-made settlement, "there is no discernable pot"); *Collado v. Toyota Motor Sales, U.S.A., Inc.*, 550 Fed. Appx. 368 (9th Cir. 2013) ("[t]he district court abused its discretion by computing fees using a percentage of recovery method rather than a lodestar method"); *Strong v. Bellsouth Telecomms.*, 137 F.3d 844, 852-53 (5th Cir. 1998) (holding common fund method inapplicable because "no fund was established at all in this case"); *In re Toys "R" Us, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 468 (C.D. Cal. 2014) (merchandise voucher settlement "does not create a common fund, [therefore] the percentage-of-the-fund method is an inappropriate method of calculating fees").

The main point of difference relates to the question of a "multiplier." Class Counsel requests a multiplier of 2.84, while Lenovo believes that a multiplier of less than 1.0 is appropriate. Lenovo also believes that the hours and rates submitted by Class Counsel are too high and should be reduced in setting an appropriate lodestar.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1.  <u>A lodestar multiplier less than 1.0 should be applied.</u>

    a.  <u>*This is not a "rare or exceptional case" that warrants a large multiplier.*</u>

The lodestar (as modified by the Court) is presumptively fair and reasonable. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546, 130 S.Ct. 1662, 1673, 176 L. Ed. 2d 494 (2010) (holding that there is a "strong presumption" that the lodestar figure is reasonable). Only in "rare and exceptional" cases is a multiplier applied. *Id.; see also Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). This is not such a case. The case settled early and was not complex. There is no ground-breaking precedent. This is a garden variety consumer case.

A multiplier of 1.0 (sometimes referred to as "no multiplier") is commonly awarded. *See, e.g., Yeagley v. Wells Fargo & Co.*, 2010 U.S. Dist. LEXIS 57837 (N.D. Cal. May 20, 2010); *Fleury v. Richemont N. Amer., Inc.*, 2008 U.S. Dist. LEXIS 112459, *11  (N.D. Cal. Aug. 6, 2008); *In re Apple iPhone 4 Products Liab. Litig.*, 2012 U.S. Dist. LEXIS 113876, *12 (N.D. Cal. Aug. 10, 2012).

Professor Brian Fitzpatrick of Vanderbilt Law School studied every federal class action over a two-year period. Fitzpatrick, "An Empirical Study of Class Action Settlements and Their Fee Awards," *Journal of Empirical Legal Studies* 7:811-846 (2010). His summary of lodestar multipliers is reflected in this bar chart:



Figure 5:  The distribution of lodestar multipliers in 2006–2007 federal class action fee awards using the lodestar method.



SOURCES: Westlaw, PACER, district court clerks' offices.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

As this chart demonstrates, most approved multipliers were between 0.5 and 1.25 with very few outside that range. The average was 0.98 and the median was 0.92 across 71 settlements. *Id.* at 835.

        b.    *In similar consumer cases, multiples of 1.0 or less have been awarded.*

Class Counsel has listed 11 cases under the heading "Awards in Similar Cases Favor A Multiplier." (Plaintiff Mem. at 44.) Five additional cases are cited in the Declaration of Geoffrey Miller, for a total of 16. The problem is that <u>none</u> of the cases is remotely similar to the present case. Class Counsel has cherry-picked several high-multiplier cases from a variety of unrelated contexts, and ignored numerous cases with multiples of 1.0 or less. When the cases are examined for similarity, it is clear that low multiples were awarded in the truly similar cases.

Every one of the 16 cases cited by Class Counsel was a "common fund" case where defendants paid millions of dollars into a fund. That is a bright distinction from the present case. In addition, in none of the 16 cases did the defendant oppose the request for fees – in most cases the fees were negotiated – unlike here. Seven of the 16 cases cited by Class Counsel were securities cases. Another three were employment cases. One was not a class action at all.[4] Only one was a consumer class action: *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 123298 (C.D. Cal. 2013). But that case was unprecedented – at $1.6 billion, "one of the largest automobile class action settlements – if not the largest – in history." *Id.* at *299-300. There was "no question that this litigation is complex," *Id.* at *302, unlike the present case. The roster of law firms took over 200 pages in the reported decision. *Id.* at *1-*209. The claims involved 28 models and 13 model years. *Id.* at *229-230.  Discovery was extensive – there were 40 experts and 200 depositions taken. *Id.* at *261. The amount of fees was negotiated, and

---

[4]  *In re Merry-Go-Round Enterprises, Inc.*, 244 B.R. 327 (Bankr. D. Md. 2000). This was a pure contingent fee case, the litigation was "unprecedented," and a lodestar analysis was deemed inappropriate. *Id.* at 335.

9

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

the court awarded 12.3% of the settlement fund. *Id.* at *298. The *Toyota Unintended Acceleration* case was not similar to the present case.

It is also noteworthy that many of the cases cited by Class Counsel in support of a high multiplier are cases involving <u>protracted</u> litigation lasting much longer than the present case. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (applying Washington law, affirming district court's use of a 3.65 multiplier after <u>11 years</u> of litigation); *Van Vranken v. Atl. Ritchfield Co.*, 901 F. Supp. 294, 298 (N.D. Ca. 1995) (awarding 1.8 multiplier after <u>15 years</u> of litigation). Most of the remaining cases cited by Class Counsel are outside California.

While the cases cited by Class Counsel are clearly dissimilar, there are many cases that really are similar – cases involving consumer protection claims and computers, cases that settled early, cases that did not involve a "common fund." Those cases support a low multiplier.

Plaintiffs and Class Counsel go to great lengths to establish the similarity of *Fraser v. ASUS Computer Int'l*, 12cv00652 (N.D. Cal. Oct. 1, 2012), even including a Declaration from our mediator, Judge Tevrizian, categorizing *Fraser* as the <u>only</u> similar case: "I am aware of only one other class action that involved allegations similar to those asserted here." (Tevrizian Decl., ¶ 23; *see also* Plaintiffs' Mem. at 2.) Indeed, *Fraser* was a CLRA case involving alleged GPS and Wi-Fi receptivity problems in tablet computers. The case settled early, like the present case. Lenovo agrees that *Fraser* is "similar." Conspicuously, though, Class Counsel does not cite *Fraser* in its list of "multiplier" cases. The reason is clear: the court awarded a multiplier of <u>zero</u>. (*Fraser* Order at 4; Stephenson Decl. Ex. N.)

*In re Apple iPhone 4 Products Liab. Litig.*, 2012 U.S. Dist. LEXIS 113876 (N.D. Cal. Aug. 10, 2012) is very similar to the present case, and the court awarded a multiplier of 1.0. The case involved "an antenna defect that impacts the iPhone 4's cellular network reception." *Id.* at *4. Like the present case, the defendant had made a hardware remedy available before litigation began. Claims were asserted under

10

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

California's consumer protection laws, and the case settled early. Even though the parties agreed, via a mediator, to an attorney fee multiplier of 2.1, the court held that no positive multiplier was justified.

*Wolph v. Acer Am. Corp.*, 2013 U.S. Dist. LEXIS 151180 (N.D. Cal. Oct. 21, 2013), is also similar. *Wolph* involved CLRA claims arising from the alleged freezing and "slow loading times" of Acer notebook computers. Acer's motion to dismiss was granted in part and denied in part, and the case settled shortly thereafter. Three law firms represented the class. After reviewing the petition, the court awarded a "negative multiplier" of 0.75. *Id.* at *16-17.

Multiples less than 1.0 are frequently awarded. *See, e.g., Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918 (9th Cir. 2014) (awarding multiple of 0.33); *In re Toys "R" Us, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 468 (C.D. Cal. 2014) (awarding multiple of 0.40); *Shames v. Hertz Corp.*, 2012 U.S. Dist. LEXIS 158577 (S.D. Cal. Nov. 5, 2012) (case cited in Plaintiffs' Mem.; awarding multiple of 0.80); *Litwin v. iRenew Bio Energy Solutions, LLC*, 226 Cal. App. 4th 877, 882 (2d Dist. 2014) (awarding multiple of 0.852); *Walsh v. Kindred Healthcare*, 2013 U.S. Dist. LEXIS 176319, *8 (N.D. Cal. Dec. 16, 2013) (case cited in Plaintiffs' Mem.; approving fee award where "Class Counsel seek fees that are less than their base lodestar, thus they apply a negative multiplier").

In summary, the "high multiplier" cases cited by Class Counsel are not similar. The truly similar cases – involving California consumer protection claims related to computer performance, cases that settled early and did not involve a common fund – applied multipliers of 1.0 or below.

       c.   <u>The Court must examine the true or realistic value of the settlement to class members.</u>

The primary factor that leans this case toward a low multiplier (less than 1.0) is "the degree of success class counsel attained." *Feder v. Frank (In re HP Inkjet Printer Litigation)*, 716 F.3d 1173, 1186 n. 18 (9th Cir. 2013), *quoting Jones v. GN Netcom,*

*Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 944 (9th Cir. 2011). Degree of success is a "particularly crucial" factor when success is limited, such as where the plaintiff prevails on some, but not all, claims. *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

In a case that does not involve a common fund, the "degree of success" must be determined with reference to benefits <u>actually</u> <u>obtained</u> by class members, not to "potential" maximum benefits. As the Ninth Circuit stated in *HP Inkjet*:

> [A] court cannot judge counsels' success without first calculating the value of the class relief. And in a coupon class action, the court cannot value the class relief without knowing the redemption value of the coupons. Thus under *Hensley* and its progeny, any lodestar cross-check should be performed in reference to the redemption value of the coupons . . ..

716 F.3d at 1186, n. 18. The court also gave the following example: "if a settlement agreement promises the issuance of $5 million in coupons to the putative class members, but only 1/5 of potential class members actually redeem the coupons at issue, then the lawyer's contingency fee should be based on a recovery of $1 million—not a recovery of $5 million." *Id.* The court's reasoning was not limited to coupon cases.[5] It was based on "the Supreme Court's established attorneys' fees jurisprudence." *Id.*

In other words, when deciding on a lodestar multiplier, or cross-checking the lodestar analysis, the "degree of success" factor looks to actual benefits <u>paid</u> to class

---

[5]  Class Counsel argue that this is not a coupon case and CAFA does not apply, because some persons electing the "certificate" option could obtain free merchandise. Lenovo believes this reasoning is faulty. *Dardarian v. OfficeMax North America Inc.*, 2013 U.S. Dist. LEXIS 98653 (N.D. Cal. July 12, 2013) (rejecting the argument "that the vouchers were not coupons because they could be redeemed without spending additional money"); *True v. American Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Calif. 2010) (rebate of $500 or $1000 on future purchase is a "coupon" under CAFA even where other relief is also available). As the legislative history of CAFA shows, and several courts have held, a discount on a future purchase from the defendant is a "coupon" even if it amounts to free merchandise. *Fleury v. Richemont N. Amer., Inc.*, 2008 U.S. Dist. LEXIS 112459, *10  (N.D. Cal. Aug. 6, 2008); *Davis v. Cole Haan, Inc.*, 2013 U.S. Dist. LEXIS 151813, *5-9 (N.D. Cal. 2013). However, this argument is immaterial because it appears that Class Counsel is <u>not</u> seeking any fees based on the $250 certificates.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

members, not a theoretical "potential" payout. Numerous cases follow this principle:

- *In re Toys "R" Us, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 468 (C.D. Cal. 2014) – awarding less than the lodestar; Court determined the real value of the settlement using an "appropriate" 3% claim rate.

- *Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 922 (9th Cir. 2014) – in a settlement involving an injunction, cash and future purchase discounts, where the value was heavily disputed, the district court's use of a value equal to one-fifth of the potential recovery was reasonable.

- *Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 248 (7th Cir. 2014) – in a "claims made" settlement with a maximum payout of $6.1 million but actual claims of only $0.4 million, the maximum theoretical payout was "clearly inapplicable" to the lodestar analysis.

- *In re Classmates.com Consolidated Litig.*, 2011 U.S. Dist. LEXIS 17761, *24 (W.D. Wash. Feb. 23, 2011) – "where class counsel points to an illusory $9.5 million benefit as justification for its own fee award, without acknowledging that counsel expected the benefit to be dramatically smaller, it illustrates the danger of deferring to counsel's view."

- *In re Apple iPhone 4, supra,* 2012 U.S. Dist. LEXIS at *8-9, 13-15 – Northern District of California held in a case involving a low claim rate: "while the true value of the settlement is difficult to ascertain, it appears much closer to the actual monetary recovery of $660,000 than plaintiffs' estimate of 'over $75 million.'" The term "benefit obtained for the class" in the lodestar analysis means the value <u>actually</u> received by the class.

- *True v. American Honda Motor Co.*, 749 F. Supp. 2d 1052, 1075 (C.D. Cal. 2010) – noting that "[c]ourts have generally rejected the idea that the face value of coupons or rebates should be used for settlement valuation purposes." The Court must consider "the real monetary value and likely utilization rate" of the coupons provided in the settlement." *Id.* at 1073.

- *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 390-91 (C.D. Cal. 2007) – not accepting plaintiff's estimate of settlement value where "the bulk of the economic relief hypothetically available under the Settlement is merely illusory due to its strict eligibility conditions."

- *Yeagley v. Wells Fargo & Co.*, 2010 U.S. Dist. LEXIS 57837, *9-11 (N.D. Cal. May 20, 2010) – no multiplier awarded where degree of success was limited, as shown by low claim response rate.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

13

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

• *Roberts v. Electrolux Home Prods.*, 2014 U.S. Dist. LEXIS 130163, *25 (C.D. Cal. Sept. 11, 2014) – where settlement had $35.5 million in "projected-utilization values," and "potential value" of $155 million, the $155 million number "was not used in evaluating the fee request."

• *Fleury v. Richemont N. Amer., Inc.*, 2008 U.S. Dist. LEXIS 112459, *11 (N.D. Cal. Aug. 6, 2008) – Northern District of California awarded 1.0 times the lodestar and deferred ruling on whether to award a multiplier, pending "results obtained" after claims were submitted.

• *Dardarian v. OfficeMax North Am., Inc.*, 2013 U.S. Dist. LEXIS 98653, *9-10 (N.D. Cal. July 12, 2013) – assigning a lodestar multiplier "requires consideration of the value of the settlement;" in the absence of information on estimated claim filing rates and real monetary value, approval must await the end of the voucher redemption period.

• *Create-A-Card, Inc. v. Intuit, Inc.*, 2009 WL 3073920, *3 (N.D. Cal. Sept. 22, 2009) – in a CLRA claims-made settlement, "it is unreasonable for class counsel to be compensated for hypothetical recovery that never took place. The key consideration in determining a fee award is reasonableness in light of the benefits *actually conferred"* (emphasis in original).

The bottom line is that the "degree of success" for purposes of lodestar analysis is not what theoretically might be achieved in a perfect storm, but what is <u>actually</u> achieved in the real world. Class Counsel's $50 million, which is based on three compounded 100% participation assumptions, is irrelevant.

Class Counsel cite *Iorio v. Allianz Life Ins. Co.*, 2011 U.S. Dist. LEXIS 21824 (S.D. Cal. Mar. 3, 2011) for the proposition that the court should be guided by the "full utilization value" of the settlement, not its actual value. (Plaintiffs' Mem. at 45.) However, in *Iorio*, the court and the class expert – Prof. Geoffrey Miller, the same expert used by Class Counsel here – relied on both the "full utilization value" (maximum potential value) <u>and</u> the "projected utilization value midpoint" (realistic expected value). *Id.* at *35-37. It is very telling that Prof. Miller and Class Counsel did not do that here, especially since there is such a vast differential here between the alleged "full value" (purportedly $50 million) and the realistic value ($1.06 – 2.37 million). In light of the abundance of cases, cited above, that gave precedence to

14

reality over fantasy in valuing settlements, *Iorio* does not require the Court to turn a blind eye to real value.[6] Ninth Circuit and Supreme Court precedents prohibit such an approach.

Class Counsel and Prof. Miller also cite *Rosted v. First USA Bank*, No. 97-1482 (W.D. Wash. June 15, 2001), but *Rosted* undercuts their position as well. (Plaintiffs' Mem. at 44; Miller Decl., ¶ 33.) The settlement in *Rosted* had an automatic benefit plus an additional component that was dependent on claims being submitted. In applying the "percentage of recovery" method, the court refused to place the maximum potential recovery (100% claim rate assumption) in the denominator. Instead it used a "conservative" 5% claim rate. "[W]here there is such a broad range of potential recovery values and defendant has not agreed to create a fund out of which class members may draw their recovery, the more appropriate approach is to use a reasonable estimate of actual value as the denominator." (Rosted Order Approving Fee and Cost Awards, Stephenson Decl., Ex. M at 3.) The same reasoning applies here.

### d.   *Plaintiffs' "value" of $50 million is based on fantasy compounded by fantasy and cannot be accepted.*

Class Counsel have not attempted to calculate a reasonable, realistic value of benefits that will actually be received by the class here. This is despite the fact that their expert, Prof. Miller, has calculated realistic value in at least one other case (*Iorio, supra*). The failure to calculate a realistic value here is fatal.

The computed "value" of $50 million is based on three unrealistic assumptions: (a) that 100% of the class members will be eligible for benefits, (b) that 100% of the class members will submit claims, and (c) that 100% of the class members will choose the "repair" option rather than cash or discount coupons. Assumptions (a) and (c) are

---

[6]  Class Counsel also cites *Shames v. Hertz Corp.*, 2012 U.S. Dist. LEXIS 158577 (S.D. Cal. Nov. 5, 2012), but that was an antitrust case that involved injunctive relief of far greater value than the monetary relief. No "maximum" or "potential" value was calculated in *Shames* and the fee award was not based on any such "value." *Walsh, supra,* and *In re Easysaver Rewards Litig.*, 921 F.Supp.2d 1040 (S.D. Cal. 2013) are also inapposite because they were classic "common fund" cases.

LENOVO'S MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

grossly inflated as a matter of fact, as noted above and by the expert Declaration of Dr. Denise Martin. Substantial case law flatly contradicts assumption (b) – the 100% claims rate assumption.

The real world in every claims-made settlement is that not every class member will submit a claim. This is the very reason there is a settlement here in the first place. Lenovo was not willing to pay anything near $50 million. It was dead-set against providing a windfall to unharmed users. Thus, the parties negotiated a compromise where claims can be made only if threshold requirements are met. Everyone knew that the claims rate would be far less than 100%, as it always is.

"Claims made" settlements like this one "regularly yield response rates of 10 percent or less." *Sylvester v. CIGNA Corp.*, 369 F.Supp.2d 34, 52 (D. Me. 2005). More specifically, in consumer protection cases, "consumer claim filing rates rarely exceed seven percent, even with the most extensive notice campaigns." *Sullivan v. DB Invs. Inc.*, 667 F.3d 273, 329 n. 60 (3d Cir. 2011). In a similar case involving internet reception issues, the claim rate was less than 1%. *In re Apple iPhone 4 Products Liab. Litig.*, 2012 U.S. Dist. LEXIS 113876 (N.D. Cal. Aug. 10, 2012). The Central District of California has found 2% and 3% claim rates to be reasonable in consumer class actions. *In re Toys "R" Us* (3%); *True v. American Honda* (2%). In *Ferrington v. McAfee, Inc.*, 2012 U.S. Dist. LEXIS 49160, *13, *37 (N.D. Cal. Apr. 6, 2012), the parties agreed that "the prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3-5 percent," and the court applied this range. A comprehensive study found a median claims rate of 4.70% in consumer and employment class settlements. Mayer Brown LLP, "Do Class Actions Benefit Class Members?: An Empirical Analysis of Class Actions," 13.[7]

---

[7] Available at http://www.mayerbrown.com/files/uploads/Documents/PDFs/2013/December/ DoClassActionsBenefitClassMembers.pdf, accessed August 28, 2014. The study examined consumer and employment class actions filed in, or removed to, federal court in 2009, and followed them to conclusion. The dissenting opinion in *Laguna v. Coverall*, 753 F.3d at 933-34, cited the study as authoritative.

16

The phenomenon of claims being made by 10%[8] or less of class members is so well known that to ignore it renders any calculation of value "illusory" and "a phantom." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 393-94 (C.D. Cal. 2007) ("the bulk of the economic relief hypothetically available under the Settlement is merely illusory" due to eligibility requirements an claims-made process); *In re Classmates.com Consolidated Litig.*, 2011 U.S. Dist. LEXIS 17761, *24 (W.D. Wash. Feb. 23, 2011) ("class counsel points to an illusory $9.5 million benefit as justification for its own fee award"); *Strong v. Bellsouth Telecomms.*, 137 F.3d 844, 852-53 (5th Cir. 1998) (because not all class members would meet eligibility requirements, total potential liability number of $64 million was "a phantom").

Thus, no multiplier can be awarded on the basis of an "illusory" $50 million maximum potential value. Nor can any cross-check validate a $9 million award based on such an unrealistic calculation.

### e. *The true value of $1.06 million to $2.37 million does not justify a fee award of $9 million.*

As noted above and in the Declaration of Dr. Denise Martin, the realistic value, using reasonable assumptions, is in the range of $1.06 – 2.37 million. This is how much benefit the class members are <u>actually</u> going to receive. Such a modest benefit does not support a $9 million fee. It clearly points to application of a multiplier less than 1.0. In terms of a "cross-check," $9 million represents 450% to 900% of the settlement value, which is outside the normal 25% range.

A $9 million fee would <u>dwarf</u> the actual benefits received by the class here. The Ninth Circuit "has said many times" that a court abuses its discretion "when it uses a mechanical or formulaic approach that results in an unreasonable reward." *In re Bluetooth,* 654 F.3d at 944. It is part of the Court's duty to ensure that counsel's fee does not "dwarf" the class recovery. *Id.* at 945. Here, the Court should look to the

---

[8]   While the reasonable range is from 1% to 10%, Lenovo expert Denise Martin has used a generous 11% in her calculations of value. (Martin Decl., ¶ 13.)

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

17

actual benefits to be received by class members and approve a fee that does not exceed that amount.

    2.    <u>Class Counsel's $3.1 Million Lodestar Is Not Reasonable.</u>

        a.    *<u>This case was settled early and was not complicated.</u>*

In determining the reasonableness of the lodestar, the Court should take into account that this case settled at an early stage. No formal discovery took place. Only motions to dismiss were filed. Settlement discussions began in early September of 2013, only six months after the *Kacsuta* case was filed and <u>before</u> the *Wheeler* case was filed. Avoidance of fees was, in fact, a primary motivation for settlement.

Nor is this a particularly complex or sophisticated case. Only a CLRA "omission" claim survived the *Kacsuta* motions to dismiss. These types of claims are common, and no new ground was broken here. No new law was made. Nor was the case even technologically complex. Wi-Fi technology is not new or cutting edge. Moreover, the need for technical savvy was shortcut here because, prior to suit, Lenovo acknowledged consumer complaints and made a modification that improved Wi-Fi performance substantially. In any event, technical complexity does not justify a large investment of lawyer time. *Wolph v. Acer Am. Corp.*, 2013 U.S. Dist. LEXIS 151180, *16 (N.D. Cal. Oct. 21, 2013) ("The Court notes that while the facts underlying Plaintiffs' claims were technically complicated, the legal analysis regarding their warranty and misrepresentation claims was not complex;" therefore, the court reduced the lodestar hours and applied a 0.75 multiplier).

        b.    *<u>Comparison to similar cases does not support the lodestar.</u>*

It is instructive to look at the lodestars submitted and approved in similar cases – cases with similar facts and claims that were settled at a similar (or more advanced) stage. We have already identified three similar cases – involving consumer protection claims against computer manufacturers based on antenna, Wi-Fi or cellular reception / slowness problems, with no common fund.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

18

*Fraser v. ASUS Computer Int'l*, 12cv00652 (N.D. Cal. Oct. 1, 2012) involved CLRA claims arising from GPS and Wi-Fi signal strength issues. A free fix (an external antenna known as a "dongle") had been offered before litigation, and was re-offered in the settlement, in addition to a cash refund. Over 100,000 class notices were sent, and 11,409 claims were submitted (11%). The case settled early, after dismissal motions were filed and before significant discovery. The parties agreed that Class Counsel would receive <u>zero</u> fees, and the court approved.

*Wolph v. Acer Am. Corp.*, 2013 U.S. Dist. LEXIS 151180 (N.D. Cal. Oct. 21, 2013) involved CLRA and warranty claims arising from the performance of laptop computers. A motion to dismiss was granted in part and denied in part. Plaintiffs were represented by three law firms. A class certification motion was granted, and the litigation lasted more than four years.  While counsel claimed fees of $2.5 million, the court found the hours spent excessive, with duplication of work among the three firms. It approved a modified lodestar of $1.25 million.

*In re Apple iPhone 4 Products Liab. Litig.*, 2012 U.S. Dist. LEXIS 113876 (N.D. Cal. Aug. 10, 2012) involved smartphones with alleged cellular reception deficiencies due to antenna problems. The case asserted violations of state consumer protection laws and settled after substantial discovery – it settled at a later stage than the present case. Even though there were a "multitude" of lawyers – 23 law firms – on the plaintiff side, the court approved a "generously computed" lodestar of $2.1 million. Apple had agreed not to oppose a fee request of up to $5.9 million.

These three cases lasted about as long as (*Fraser*) or significantly longer than (*Wolph*, *In re iPhone 4*) this one. The approved lodestars were $0, $1.25 million, and $2.1 million.

Courts are not hesitant to scrutinize lodestar submissions even when fees have been negotiated with the defendant (which is not the case here). In addition to *Wolph, see Yeagley v. Wells Fargo & Co.*, 2010 U.S. Dist. LEXIS 57837 (N.D. Cal. May 20, 2010) (of 2,100 hours in fee petition, only 720 were reasonable; lodestar reduced from

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

19

$969,000 to $332,000 – case settled shortly after a motion to dismiss was granted in part).

In summary, a comparison to similar cases shows that the lodestar figure of $3.1 million in the present case is surprisingly high.

     *c.*    *Class Counsel's weighted average billing rate of $654 per hour is too high.*

Class Counsel has calculated a lodestar of $3,122,813 on 4,772 hours, for a weighted average hourly rate of $654.40. This rate is unreasonably high.

Courts frequently look to the <u>average</u> rate in addition to individual rates. *See, e.g., Shames, supra,* and *Yeagley, supra*. This is a sensible approach. The weighted average reflects efficiencies when work is pushed down to lower-rate lawyers, and inefficiencies when higher-rate lawyers do the bulk of the work. In reported California cases where approved average rates are stated or easily calculable, the averages tend to congregate in the mid-$400 range. In the list below, the first three cases are cited in Plaintiffs' Memorandum:

| | |
|---|---|
| $420.09 | *In re Toyota Unintended Accel.* (C.D. Cal.) |
| $448.14 | *Walsh v. Kindred Healthcare* (N.D. Cal.) |
| $439.87 | *Shames v. Hertz* (S.D. Cal.) |
| $461.39 | *Yeagley v. Wells Fargo* (N.D. Cal.) |
| $458.61 | *Johnson v. General Mills* (C.D. Cal.)[9] |

(Stephenson Decl.,¶ 16.)

Lenovo's counsel in the present case, consisting of a team of lawyers located almost solely in Los Angeles, has incurred a weighted average billing rate consistent with these numbers: <u>$428.41</u>.  (Stephenson Decl., ¶ 11.)

Class Counsel's $654.40 average rate is far too high.

---

[9] *Johnson v. General Mills, Inc.*, 2013 U.S. Dist. LEXIS 90338, *19 (C.D. Cal. June 17, 2013). This was a common fund case that settled at a very advanced stage. In the lodestar cross-check, the Court noted a lodestar of $7,103,959 on 15,490 hours of work. This computes to a weighted average hourly rate of $458.61. The fee approved by the Court reflected a 0.36 multiplier on the lodestar. *Id.* at *19.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

20

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1   This result is confirmed by looking at individual rates. Over 1,900 hours were

2   incurred by Paul Paradis at $895 per hour and Gina Tufaro at $825 per hour. Mr.

3   Paradis is a 1990 law school graduate and Ms. Tufaro graduated in 2002. They

4   practice in New York. In the cases cited in Plaintiffs' Memorandum at page 40-41,

5   and the identical list in Professor Miller's Declaration at page 12, only two cases

6   involved rates higher than $895 approved in this District. One was for Mark Geragos

7   at $1,500. The other was the *Toyota Unintended Acceleration* case where a range was

8   given and we are not told which lawyer charged $950. However, we do know that

9   several lawyers in that case were among the most prominent tort lawyers in the

10  country and have vastly more experience, including Elizabeth Cabraser (1978 law

11  grad) and Steve Berman (1980). *Toyota Unintended Acceleration* is not a comparable

12  case, as has been discussed above, and in any event resulted in a weighted average

13  hourly rate of $420.09.

14   Class Counsel cite *Parkinson v. Hyundai Motor America*, 796 F.Supp.2d 1160,

15  1172 (C.D. Cal. 2010) as a case that approved partner rates of $445 to $675. That case

16  illustrates <u>Lenovo's</u> point: the rates put forth in the present case are significantly

17  higher. The average weighted rate in *Parkinson* was $471.16, and the court ordered a

18  10% "haircut" on the lodestar. *Kearney v. Hyundai Motor America*, 2013 U.S. Dist.

19  LEXIS 91636 (C.D. Cal. 2013) is also an interesting case for Class Counsel to cite.

20  While the range of partner rates was $650 to $800 (still below the rates sought here),

21  the <u>average</u> attorney rate was $416.50. A multiplier of 1.0 was awarded. The securities

22  and intellectual property cases cited by Class Counsel are irrelevant and unhelpful.[10]

23  Cases from outside the Central District are also less pertinent when it comes to rates in

24  this community.[11]

---

25  [10]   Class Counsel cite *POM Wonderful, LLC v. Purely Juice*, 2008 U.S. Dist. LEXIS 110460 (C.D.
26  Cal. Sept. 22, 2008) as a "consumer class action." (Plaintiffs' Mem. at 40-41; Miller Decl. at 12.) In
    fact, this was an intellectual property dispute between two corporations. There were no consumers
    and it was not a class action. The $750 rate was charged by a 1971 Boalt Hall law school graduate.

27  [11]   Class Counsel cite an unpublished state court case where Mr. Kiesel's $1,100 hourly rate was
28  approved, but in *Cohorst v. BRE Props.*, 2012 U.S. Dist. LEXIS 78010, *8-9 (S.D. Cal. June 5,
    2012), his rate (then $890) and hours were <u>not</u> approved.

1   Lenovo appreciates that Professor Miller is a prominent academic, but he does
2   not practice in the Central District. Lenovo's expert is Andre E. Jardini, a practitioner
3   with 37 years' experience who is a member of the American Board of Trial
4   Advocates, having tried 55 cases. He has conducted more than 1,000 audits of
5   attorneys' fees and testified as an expert on fees more than 150 times. Mr. Jardini,
6   after examining the Declarations here, applying his experience as a practitioner and
7   relying on data on fees in the Los Angeles market, opines that the fees requested are
8   above the average in this District by 50% or more, and above the top quartile by 40%.
9   (Jardini Decl., ¶ 77.) The rates requested by Class Counsel should not be approved.

### d. *The hours expended were not reasonable.*

11   Class Counsel reports working 4,772 hours. Lenovo's counsel in Los
12   Angeles and the District of Columbia, in the same two lawsuits, worked 1,293.9 hours.
13   (Stephenson Decl., ¶ 11.) This nearly four-fold difference is unjustified.
14   The Court must exclude from the lodestar any hours not reasonably expended,
15   i.e., hours that are "excessive, redundant, or otherwise unnecessary." *Hensley v.*
16   *Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983); *Van Gerwen v.*
17   *Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).
18   Where multiple firms are involved, the Court must ensure that the case was
19   handled efficiently and without overlap. *Wolph v. Acer Am. Corp.*, 2013 U.S. Dist.
20   LEXIS 151180, *8-11 (N.D. Cal. Oct. 21, 2013). "The court may reduce the number
21   of hours awarded because the lawyer performed unnecessarily duplicative work."
22   *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Here, Lenovo
23   strongly senses that unnecessary duplication took place (Stephenson Decl., ¶¶ 12-14),
24   and this is verified by fee expert Andre Jardini (Jardini Decl., ¶¶ 57, 79-80). Because
25   so few details were given, Lenovo is unable to precisely identify specifics.
26   Courts do not award fees for pursuing claims that were dismissed. *Van Vranken*
27   *v. Atl. Richfield Co.*, 901 F.Supp. 294, 298 (N.D. Cal. 1995) (cited in Plaintiffs' Mem.,
28   p. 44). This is pertinent here. The Court dismissed Mr. Kacsuta's express warranty

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

claim, the Song-Beverly claim and the unjust enrichment claim. The consumer protection claim was pared back to a pure "omission" claim in response to Lenovo's original motion to dismiss; i.e., the misrepresentation claims were dropped. Ultimately, more claims were dismissed or dropped than survived. Plaintiffs also claimed, but did not obtain: (a) punitive damages, (b) an injunction, (c) statutory damages, (d) treble damages, and (e) restitutionary return of the price paid for class members' computers.

Class Counsel have submitted declarations showing the number of hours worked in various task categories. Lenovo's counsel have attempted to match their own hours against these same categories. (Stephenson Decl., ¶ 12.) In some instances, perhaps, there is a good reason why the number of hours might vary, but in some categories there is no reason why Class Counsel should have worked vastly more hours. For example, with respect to the Motions to Dismiss the Amended Complaints filed here and in the District of Columbia, both sides had to perform research and draft motions, memoranda and declarations. In fact, Lenovo filed reply memoranda, and thus had more briefing to do. Yet here is how the hours were expended on motions to dismiss the First Amended Complaints:

**Class Counsel hours, FAC motions to dismiss:**     **575.75**

**Lenovo's counsel hours, FAC motions to dismiss:**     **324.0**

Another vast disparity exists in the parties' approach to the Mediation that produced the settlement. All negotiations leading to the settlement were two-sided, both parties drafted mediation statements, and both parties spent the same amount of time in mediation (though Plaintiffs had more people present, *see* Stephenson Decl. ¶ 14). Nevertheless, Class Counsel claims eight times the hours:

**Class Counsel hours, settlement through mediation:**     **938.25**

**Lenovo's counsel hours, settlement through mediation:**     **117.8**

The largest disparity, by far, has to do with engineering and fact investigation. Lenovo's counsel, like Class Counsel, had to learn the technology and performance

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

23

1  history of the subject computers. This included significant web research, review of

2  documents, interviewing engineers and other witnesses, and performing tests.

3  Somehow, the following disparity developed in the number of hours spent (by

4  attorneys, not experts) on these types of investigations:

5      **Class Counsel hours, engineering & factual investigation:**   **1,581.25**

6      **Lenovo's counsel hours, engineering & factual investigation:**   **97.7**

7  (Stephenson Decl., ¶ 12 and Ex. D.)

8      The number of hours spent by Class Counsel on technical investigations, at

9  various points throughout the case, is astounding. These are lawyer hours, not expert

10  hours. It is inconceivable that these hours were well spent. No justification or value

11  analysis has been presented. As the court held in *Yeagley v. Wells Fargo & Co.*, 2010

12  U.S. Dist. LEXIS 57837, *5 (N.D. Cal. May 20, 2010) reasonable attorneys match

13  their investment of hours to the value of the case – and if they don't, the court should

14  adjust the lodestar accordingly.

15      This case is quite similar to the *Acer Computer* case in this respect as well.

16  *Wolph v. Acer Am. Corp.*, 2013 U.S. Dist. LEXIS 151180 (N.D. Cal. Oct. 21, 2013). A

17  similar product was involved – laptop computers. A similar performance problem –

18  slowness – was alleged. Similar claims – under the CLRA – were made. The court

19  even acknowledged that the issues were "technically complicated." *Id.* at *16. And

20  class counsel in that case – multiple firms – recorded an eerily similar number of

21  hours – 4,633 (versus 4,772 here). The court held that the case did not justify that

22  many hours, and reduced the lodestar hours by 62%. *Id.* at *11.

23      We do not have itemized billing statements here, therefore a percentage

24  reduction in the hours is justified. A 62% reduction (to 1,813.36 hours), similar to the

25  reduction in *Wolph*, would be reasonable.

26          3.   <u>Final Approval Of Fees Should Be Deferred Until The End</u>

27               <u>Of The Claims Period.</u>

28      A growing number of cases are employing or advocating the approach of

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

24

1  awarding fees after the claims period has ended. This allows the Court to assess class

2  recovery more accurately. *Fleury v. Richemont*, *supra* (giving base fee award but

3  deferring final ruling pending "results obtained" after claims submitted); *Davis v. Cole*

4  *Haan, Inc.*, 2013 U.S. Dist. LEXIS 151813, *5-9 (N.D. Cal. 2013) (award of fees

5  deferred until after redemption value determined); *HP Inkjet*, 716 F.3d at 1186 n.19

6  (Ninth Circuit stated that "a fees award can be bifurcated or staggered to take into

7  account the speculative nature of at least a portion of a class recovery"). The Advisory

8  Committee Notes to Fed. R. Civ. P. 23(h) state that "in some cases, it may be

9  appropriate to defer some portion of the fee award until <u>actual</u> <u>payouts</u> to class

10  members are known" (emphasis added). This is within the discretion of the Court.

11  Where reasonably precise estimates can be made, such as in *Toys "R" Us* (using a 3%

12  claim rate) and *Rosted* case (using a 5% claim rate), deferral may not be necessary.

**C.**    <u>**There Is Insufficient Information Supporting Consultant Costs.**</u>

14      Lenovo cannot opine on the $239,897.00 sought for consultant costs, because

15  there is no supporting information provided.

**III.**  **CONCLUSION**

17      For all these reasons, the Court should approve the settlement, but it should not

18  approve Class Counsel's fee petition. The Court should defer a decision on fees, or it

19  should make realistic assumptions about claim rates and values before awarding fees.

20  The lodestar method should be applied. The Court should reduce the lodestar to a

21  reasonable level, and award a multiplier of less than 1.0.

Dated: November 7, 2014            Respectfully submitted,

DYKEMA GOSSETT LLP


By: */s/ Daniel J. Stephenson*
    Daniel J. Stephenson
    Attorneys for Defendant
    LENOVO (United States), INC.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071