UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

|  |  |
|---|---|
| GARRETT KACSUTA and MICHAEL WHEELER,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>LENOVO (United States) INC.,<br><br>　　　　　Defendant. | Case No.: SACV 13-00316-CJC(RNBx)<br><br><br>ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND REQUEST FOR ATTORNEYS' FEES |

## I.  INTRODUCTION

Plaintiffs and Class Representatives Garrett Kacsuta and Michael Wheeler (together, "Plaintiffs") filed this class action against Defendant Lenovo (United States) Inc. ("Lenovo") for the alleged sale of defective laptops.  The Second Amended Class

Action Complaint ("SAC") asserts violations of the California Consumers Legal Remedies Act, the California Business & Professions Code, and the District of Columbia Consumer Protection and Procedures Act, as well as breach of warranty claims for a subclass of District of Columbia members.  (Dkt. No. 46 [SAC].)  Before the Court is Plaintiffs' motion for final approval of the settlement agreement and request for attorneys' fees, reimbursement of expenses, and Plaintiffs' awards.  (Dkt. No. 63 ["Pls.' Mot."].)  For the following reasons, final approval of the settlement is GRANTED. Plaintiffs' motion for an award of attorneys' fees, reimbursements of expenses, and Plaintiffs' awards is GRANTED IN PART.

## II.  BACKGROUND

On February 21, 2013, Plaintiff Garrett Kacsuta brought this action against Lenovo on behalf of himself and others similarly situated, alleging that certain Lenovo laptops had a defective Wi-Fi component (the "Kacsuta Action").  (Dkt. No. 1 ["Kacsuta Compl."].)  The Kacusta Complaint alleged eight causes of action, including breach of warranty claims under California and North Carolina law, violations of California law prohibiting unfair business practices, and unjust enrichment under California law. (Kacsuta Compl.)  On October 22, 2013, Plaintiff Michael Wheeler filed a similar class action against Lenovo in the Superior Court for the District of Columbia, alleging four causes of action for breach of warranty, violations of District of Columbia consumer protection laws, and unjust enrichment (the "Wheeler Action").[1]  (Dkt. No. 64, Decl. of Gina M. Tufaro ISO Pls.' Mot. ["Tufaro Decl."] ¶ 10; Dkt. No. 82, Pls.' Notice of Compliance ["Pls.' Notice"] Exh. F ["Wheeler Dkt."] at 6.)

---

[1] The Kacsuta Action and Wheeler Action will be referenced collectively as the "Actions."

The pre-trial motions in the Kacsuta Action were limited and took place over a three-month period.  Lenovo filed its first motion to dismiss on April 19, 2013.  (Dkt. No. 16.)  Mr. Kacsuta opted not to oppose the motion to dismiss and instead filed a 52-page First Amended Class Action Complaint ("Kacsuta FAC").  (Dkt. No. 22 [Kacsuta FAC].)  On June 7, 2013, Lenvo filed a motion to dismiss the Kacsuta FAC, (Dkt. No. 25), and three weeks later, Mr. Kacsuta filed his opposition, (Dkt. No. 29).  This Court issued an order dismissing Mr. Kacsuta's express warranty, Song-Beverly Act, and implied-in-law contract claims.  (Dkt. No. 32 ["Kacsuta Order"].)  The next motion on the docket is the motion for preliminary approval of settlement, filed one year later.  (Dkt. No. 47.)

Similarly, the Wheeler Action involved two rounds of motions to dismiss, filed on January 16, 2014 and March 5, 2014.  (Wheeler Dkt. at 4, 5.)  Like in the Kacsuta Action, Mr. Wheeler opted to file a 30-page amended class action complaint in response to the first motion to dismiss, and filed an opposition to the second motion to dismiss.  (Pls.' Notice Exh. B, Wheeler FAC; Exh. D, Wheeler Opp'n to MTD.)  The District of Columbia Superior Court dismissed Mr. Wheeler's unjust enrichment claim based on Lenovo's second motion to dismiss and subsequently entered a stay in the case.  (Wheeler Dkt. at 1–2.)  The entirety of the pre-trial motions in the Wheeler Action spanned a six-month period.

Following an all-day mediation session before the Honorable Dickran Tevrizian (Ret.), the parties reached a settlement agreement on June 5, 2014.  (Tufaro Decl. ¶¶ 25–26.)  The material terms of that settlement agreement include the following:

   1. "Class Members" consist of all persons who have purchased a Lenovo Ideapad® model U310 or U410 Ultrabook computer (the "Class Computers") in the United States at any time through the date of entry of the Order of Final Approval;

2.  In exchange for the Class Members' release of all claims against Lenovo, the settlement provides the following benefit options: (1) repair to the wireless capability of a Class Member's Class Computer (available only for Class Members who have not previously returned their Class Computer to Lenovo); (2) a cash refund in the amount of $100 paid by Lenovo; or (3) a $250 credit certificate issued by Lenovo toward the purchase of any product listed for sale on www.lenovo.com.  Additionally, all Class Members who elect to receive benefits will receive an extended warranty on their Class Computer, as well as reimbursement for out-of-pocket expenses incurred for prior repairs of the Class Computer.

3.  Class Members must submit a claim form during the 365-day class period, which begins to run until the later of the last date of published Internet notice, or the last date of emailed notice.

(the "Settlement Agreement"). [2]  (Dkt. No. 56, Am. Order Granting Prelim. Approval ["Am. Order"] at 3, 10–11.)

On September 15, 2014, the Court preliminarily approved the settlement and certified the class for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23.  (*See* Am. Order.)  The Court also approved Kiesel Law LLP; Paradis Law Group, PLLC; Whitfield & Bryson & Mason, LLP; and Parker Waichman LLP as class counsel ("Class Counsel") and Mr. Kacsuta and Mr. Wheeler as Class Representatives. (Am. Order at 13–14.)  Plaintiffs now move for final approval of the class action settlement and for an award of attorneys' fees, reimbursements of expenses, and Plaintiffs' awards.  (Pls.' Mot.)  Lenovo does not oppose final approval of the settlement but does oppose the request for attorneys' fees.  (Dkt. No. 73 ["Def.'s Opp'n."].)  A final fairness and approval hearing was held on December 15, 2014.

---

[2]  As part of the settlement, Mr. Kacsuta and Mr. Wheeler filed the SAC consolidating their claims on August 22, 2014.  (*See* SAC.)

## III.  ANALYSIS

When the parties reach a settlement agreement prior to class certification, the Court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  The Court will first assess the propriety of class certification, followed by the fairness of the settlement agreement, and finally, the issues of attorneys' fees and reimbursements of expenses and Plaintiffs' awards.

### A.  Class Certification

A plaintiff seeking class certification must satisfy two sets of requirements under Federal Rule of Civil Procedure 23: (1) the four requirements under Rule 23(a) concerning numerosity, commonality, typicality, and adequacy and (2) the requirement that the action fall within one of the three "types" of classes described under the subsections of Rule 23(b).  In this case, Plaintiffs seek certification of the class pursuant to Rule 23(b)(3), which allows certification if "the court finds the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  The Court previously concluded that Plaintiffs had presented sufficient evidence to show that the proposed class satisfied the numerosity, commonality, typicality, and adequacy requirements under Rule 23(a), as well as the predominance and superiority requirements under Rule 23(b)(3).  (*See* Am. Order.)  Having reviewed those elements again, the Court adopts its prior analysis with respect to class certification.  Accordingly, the Court grants certification of the proposed class for purposes of settlement.

//

**B. The Settlement**

The Ninth Circuit has a " 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.' " *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quoting *Class Plaintiffs v. Seattle*, 995 F.2d 1268, 1276 (9th Cir. 1992)).  Federal Rule of Civil Procedure 23 " 'requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable.' " *Staton*, 327 F.3d at 959 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (emphasis omitted)).  To determine whether this standard is met, a district court must consider a number of factors, including " 'the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement.' "  *Id.* (quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)). Having fully considered the *Staton* factors, the Court finds this settlement fundamentally fair and reasonable to the parties involved.

**1. Strength of Plaintiffs' Cases and the Risk, Expense, Complexity, and Likely Duration of Further Litigation**

Plaintiffs faced significant risks and expense in moving forward with litigation in this action.  Lenovo believed it had a strong case and vigorously disputed the claims, including filing two motions to dismiss in each Action.  Indeed, Lenovo was partially successful in obtaining dismissals of several of Plaintiffs' claims, including Mr. Kacsuta's breach of warranty claims and Mr. Wheeler's unjust enrichment claim.  Absent settlement, Lenovo would likely oppose any motion for class certification.  Even if the Court initially certified the class, Plaintiffs faced the risk of losing class action status.  *See* Fed. R. Civ. P. 23(c)(1)(c).  As an additional hurdle, Lenovo had implemented a

remedial measure two months after rolling out the product line that substantially improved the Wi-Fi capabilities of the Class Computers.  (Tufaro Decl. ¶ 42; Dkt. No. 74-2, Decl. of Kurt Cranor ISO Def.'s Opp'n ¶¶ 5–8.)  This not only presented serious uniformity issues with respect to class certification, but also improved Lenovo's chances of prevailing on summary judgment or at trial.  The Kacsuta FAC sought a permanent injunction, restitution, attorneys' fees and costs, and actual, statutory, and punitive damages on behalf of all persons who purchased the Class Computers in the United States at any time, implicating tens of thousands of claims.  (Kacsuta FAC ¶ 3, Prayer for Relief.)  Given the stakes at issue, the losing party would have likely appealed, further driving up the expense of litigation.  *See McKenzie v. Fed. Express Corp.*, No. CV 10-02420 GAF (PLAx), 2012 WL 2930201, at *3–4 (C.D. Cal. July 2, 2012) (considering pre-trial motions, anticipated motions to decertify the class, and likely appeals in evaluating expense and duration of litigation).  The Settlement Agreement removes the risk that Plaintiffs and Class Members might not obtain any relief and offers certain and immediate recovery; as such, these factors weigh in favor of approval.  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008).

### 2.  Amount Offered in Settlement

The parties heavily dispute the actual value of the settlement.  Rather than speculate as to the value of the settlement, the Court looks to its substantive terms and finds them to be reasonable.  The settlement provides significant recovery to Class Members for the claimed injury.  The SAC alleged that the Class Computers suffered from a design defect that inhibited connection to Wi-Fi networks at speeds sufficient to engage in Internet browsing.  (SAC ¶ 34.)  In exchange for the Class Members' release of all claims against Lenovo, the Settlement Agreement provides the following benefit options: (1) repair to the wireless capability of a Class Member's Class Computer, including shipping and return costs (available only for Class Members who have not

previously returned their Class Computer to Lenovo); (2) a $100 cash refund; or (3) a $250 credit certificate issued by Lenovo toward the purchase of any product listed for sale on www.lenovo.com.  (Am. Order at 10.)  Class Members who opt for option (1) are provided with a one-year limited warranty extension or renewal covering Wi-Fi issues, and Class Members who select options (2) or (3) are provided with a 120-day full warranty extension or renewal.  (Am. Order at 10–11.)  In addition, all Class Members may receive 100% reimbursement for actual out-of-pocket expenses that were previously incurred for the repair of the wireless capability of a Class Computer.  (Pls.' Mot. at 17.)  Such benefits are real and substantial and provide significant recovery to Class Members; this factor also weighs in favor of approval.

### 3.  Extent of Discovery Completed and Stage of Proceedings and Experience and View of Counsel

Where the "parties have sufficient information to make an informed decision about settlement," this factor weighs in favor of approving the settlement.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (internal citation and quotation marks omitted).  Class Counsel conducted significant investigation and research and worked with engineering experts throughout the litigation.  Class Counsel's depth of understanding is reflected in the detailed complaints and motion practice.  Based on the record, the Court is satisfied that the parties reached the proposed settlement after they had a full and fair understanding of their cases.  *See Walsh v. Kindred Healthcare*, No. C 11-00050 JSW, 2013 WL 6623190, at *5 (N.D. Cal. Dec. 16, 2013).  Additionally, Class Counsel, who are experienced in prosecuting complex litigation and who have actively participated in this litigation, approve of the Settlement Agreement.  (Pls.' Mot. at 14–15.)  These factors weigh in favor of approving the settlement.

//
//

### 4.  Reaction of Class Members

Pursuant to the Court's Order granting preliminary approval on September 15, 2014, objections to the Court and requests to opt-out were due by November 21, 2014. (*See* Am. Order.)  The claims administrator reports that approximately 45,000 directed notices went out on September 19, 2014 and that as of October 29, 2014, approximately 2,135 claims have been received.  (Dkt. No. 74, Decl. of Daniel J. Stephenson ISO Def.'s Opp'n ["Stephenson Decl."] ¶ 22.)  The Court received two objections—one from class member Weiwei Wu on September 26, 2014, (Dkt. No. 68 ["Wu Objection"]), and one from class member Douglas Quinn on November 20, 2014, (Dkt. No. 79 ["Quinn Objection"]).  Thus, the vast majority of Class Members who responded favor the settlement, and the two objectors make up less than 1% of Class Members who have responded so far.  After reviewing the objections submitted, the Court concludes that they do not pose a barrier to final approval of the settlement.

Objector Wu objects to the settlement on the basis that it does not provide an option to return the laptop for a full refund.  (Wu Objection at 1.)  The fact that such option is unavailable does not render the settlement inadequate.  *See Officers for Justice v. Civil Serv. Comm'n of the City & Cnty of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982) (holding that is it well-settled that a settlement amounting to only a fraction of the potential recovery does not render that settlement inadequate or unfair).

Objector Quinn's general objection is that the settlement is unfair, given that Lenovo receives broad release of claims from Class Members, even though "most class members cannot qualify to file a claim."  (Quinn Objection at 4.)  Objector Quinn seems to offer two reasons for this conclusion.  First, Objector Quinn contends that the broad and ambiguous language of the claim form requiring claimants to swear under penalty of perjury that the Class Computer experienced a "persistent inability" to connect to Wi-Fi

at "sufficient" speeds will discourage valid claims.  (*Id.* at 4–5.)  To the contrary, the broad language, if anything, would encourage over inclusiveness rather than under inclusiveness of claims from purported Class Members.  Nor does the Court find the language of the Claim Form to be ambiguous—a "persistent inability to connect" and "speeds sufficient to . . . engage in Internet browsing" is sufficiently clear and understandable.  To the extent Objector Quinn challenges the claims process for requiring a declaration under penalty of perjury, the Court notes that this is a widely accepted procedure of claims-based class action settlements and does not undermine the fairness of a settlement.  *See, e.g.*, *Aarons v. BMW of N. Am., LLC*, No. CV 11-7667 PSG (CWx), 2014 WL 4090564, at *4 (C.D. Cal. Apr. 29, 2014); *Nwabueze v. AT & T Inc.*, No. C 09-01529 SI, 2013 WL 6199596, at *9 (N.D. Cal. Nov. 27, 2013); *Moore v. Verizon Commc'ns Inc.*, Case No. C 09-1823 SBA, 2013 WL 4610764, at *12 (N.D. Cal. Aug. 28, 2013).

Second, Objector Quinn objects that the one-year claims period is too short, as "Wi-Fi problems may manifest for the first time after the claims period ends."  (Quinn Objection at 5.)  However, this assertion is made without any supporting evidence and is contrary to Lenovo's representation that the Wi-Fi underperformance, "if it exists in someone's computer, will manifest itself immediately."  (Def.'s Opp'n at 3; Dkt. No. 81 Lenovo's Resp. to Objections at 2–3.)  One year is an adequate amount of time for Class Members to gather documentation sufficient to evidence purchase of a Class Computer and to submit the three-page claim form.[3]

Because the reaction of the class to settlement has been almost entirely positive, with only two objections, this factor favors final approval.  *See Churchill Vill., L.L.C. v.*

---

[3]  Based on these objections, Objector Quinn also argues that Class Counsel and Plaintiffs are inadequate for agreeing to the settlement.  (Quinn Objection at 4 n.2.)  As the Court finds the settlement is in fact fair, such objections to the adequacy of Class Counsel and Plaintiffs are overruled.

*Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement approval where only 45 out of approximately 90,000 class members objected); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members.").  In sum, the Court finds this settlement to be fair, adequate, and reasonable under the *Staton* factors.

## C.  Attorneys' Fees

A district court has the authority and the duty to determine the fairness of attorneys' fees in a class action settlement.  *See Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323 (9th Cir. 1999).  The amount of fees awarded rests in the court's sound discretion.  *Evans v. Jeff D.*, 475 U.S. 717, 736 n.26 (1986).  Although the courts "have discretion to choose which calculation method they use," there must be a sufficient basis on the record explaining why the award is reasonable.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942–43 (9th Cir. 2011).  The Court agrees with the parties that, here, the lodestar method is the most appropriate and useful starting point, whereby "the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

### 1.  Lodestar--Reasonable Hours

A district court must exclude hours that were not reasonably expended.  *Hensley*, 461 U.S. at 434.  This includes deductions where cases are overstaffed and hours are "excessive, redundant, or otherwise unnecessary."  *Id.*  Put differently, hours that are not properly billed to one's *client* "may not properly [be] billed to one's *adversary*."  *Id.*

(internal citation and quotation marks omitted) (emphasis in original); *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) ("The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client.").  Class Counsel seek a total lodestar amount of $3,122,813.00.  (Pls.' Mot. at 44.)  Class Counsel claim a total of 4,772 hours for the Kacsuta and Wheeler Actions, divided here into eight stages of litigation: (1) Pre-Complaint Investigation; (2) Initial Complaint; (3) Investigation for the FAC and the FAC; (4) Opposition to Lenovo's Motion to Dismiss the FAC; (5) Post-filing Discovery; (6) Engineering Investigation to Assess Effectiveness of Lenovo's Remedial Measures; (7) Settlement and Negotiation; and (8) Motions for Preliminary and Final Approval and Work with Claims Administrator.  Although the Kacsuta and Wheeler Actions were litigated as two entirely separate and distinct actions until the settlement agreement on June 5, 2014, Class Counsel represented at the December 15, 2014 hearing that the Wheeler Action "piggybacked" off some of the work in the Kacsuta Action.  (*See* Pls.' Mot. at 38 n.5.)

### i.    Pre-Complaint Investigation

Class Counsel report spending 425 hours in the Kacsuta Action and 110 hours in the Wheeler Action in the pre-complaint investigation, for a total of 535 hours.  (Tufaro Decl. ¶¶ 72–73.)  The pre-complaint investigation consisted of retaining engineering experts and working with these experts to test the Wi-Fi function of the Class Computers, including devising the testing protocol and recording the speeds and time of data transfer. (Tufaro Decl. ¶¶ 3–8.)  Three partners and one associate participated in the pre-filing investigation in the Kacsuta Action and two partners and two associates conducted the pre-filing investigation in the Wheeler Action.  (Tufaro Decl. Exh. 1, Decl. of Paul O. Paradis ISO Pls.' Mot. ["Paradis Decl."] ¶ 7; Exh. 2, Decl. of Paul R. Kiesel ISO Pls.' Mot. ["Kiesel Decl."] ¶ 7; Exh. 3, Decl. of Jordan L. Chaikin ISO Pls.' Mot. ["Chaikin

Decl."] ¶ 7; Exh. 4, Decl. of Nicholas A. Migliaccio ISO Pls.' Mot. ["Migliaccio Decl."] ¶ 7.)  Class Counsel have not provided the dates over which this investigation took place, nor has it given a more detailed breakdown as to how the 535 hours were spent.

There is no denying that the reported 425 hours in the pre-complaint investigation of the Kacsuta Action is high.  To have billed enough hours to generate over $300,000.00 in attorneys' fees before an action is even filed strikes this Court as unreasonable and not the type of hours that would be "properly billed to one's client."  *See Hensley*, 461 U.S. at 434.  The amount of hours expended is particularly problematic given the glaring absence of this testing data in the Kacsuta Complaint.  (*See* Kacsuta Compl.)  While one can appreciate Class Counsel's need to become familiar with the technical aspects of this case and to generate statistically significant data through testing of the Class Computers, the lion's share of this type of work should be carried out by engineering experts, not attorneys.  As such, the Court finds that Class Counsel should have been able to sufficiently collaborate with their experts to gain the information needed in half the amount of time requested, or 212.5 hours.  This brings the total hours for both Actions to 322.5 for the pre-complaint investigation.

### ii.    Initial Complaint

Class Counsel report spending 199.5 hours in the Kacsuta Action and 115 hours in the Wheeler Action on the initial complaint, for a total of 314.5 hours.  (Tufaro Decl. ¶ 77.)  The 51-page Kacsuta Complaint asserted eight causes of action; the 28-page Wheeler Complaint asserted four causes of action.  (*See* Kacsuta Compl.; Pls.' Not. Exh. A ["Wheeler Compl."].)  Three partners and two associates from the Paradis Law Group worked on the Kacsuta Complaint.  (Paradis Decl. Exh. B ["Paradis Law Hours Chart"].)  Five attorneys, one law clerk, and two paralegals participated in researching, drafting,

and filing the Wheeler Complaint.  (Chaikin Decl. Exh. B ["Parker Waichman Hours Chart"]; Migliaccio Decl. Exh. B ["Whitfield Hours Chart"].)

The Kacsuta Complaint is detailed and comprehensive.  In addition to crafting and presenting the relevant legal theories for the first time, the Kacsuta Complaint offers extensive factual support for its claims and includes statements from Lenovo, figures of the Class Computers, and extensive documentation of consumer complaints regarding the alleged Wi-Fi defect.  (*See* Kacsuta Compl.)  Likewise, the Wheeler Complaint contains detailed factual allegations to support its legal theories.  (*See* Wheeler Compl.)  At the same time, 314.5 hours on two complaints is not insignificant.  Particularly given the high caliber of Class Counsel and their familiarity with complex class actions, researching and drafting the initial complaints should not have taken 314.5 hours.  As such, the Court imposes a discretionary 10% "haircut" on the hours requested, for a total of 283.05 hours.  *See Moreno*, 534 F.3d at 1112 ("[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation.").

### iii.    Investigation for the FAC and the FAC

Lenovo filed a motion to dismiss the Kacsuta Complaint on April 19, 2013 and a motion to dismiss the Wheeler Complaint on January 16, 2014.  In response to Lenovo's first round of motions to dismiss, Class Counsel spent 305.5 hours in the Kacsuta Action and 51.25 hours in the Wheeler Action investigating the claims of the motion to dismiss. (Tufaro Decl. ¶ 79; Chaikin Decl. ¶ 5; Migliaccio Decl. ¶ 5.)  Specifically, Class Counsel worked with engineering experts to test the various factors cited by Lenovo in the motion to dismiss.  (Tufaro Decl. ¶ 13.)  This included Lenovo's claim that its remedial measure—a hardware modification—eliminated the bulk of any Wi-Fi problems.  (Dkt. No. 16, Def.'s MTD Kacsuta Compl. at 8–11.)  Four partners and two associates

participated in this investigation for the Kacsuta Action, while three partners and two associates participated in the investigation for the Wheeler Action.  (Paradis Law Hours Chart; Kiesel Decl. Exh. B ["Kiesel Law Hours Chart"]; Parker Waichman Hours Chart; Whitfield Hours Chart.)  Plaintiffs further claim an *additional* 212 hours on the research and drafting of the Kacsuta FAC and 74 hours on the Wheeler FAC.  (Tufaro Decl. ¶¶ 79–80.)  In sum, Class Counsel claim 642.75 hours on the factual and legal investigation, research, and drafting of the First Amended Complaints in both actions.

Like the pre-complaint investigation, the 305.5 hours expended by the attorneys in the Kacsuta Action for the investigation of the technical aspects of the case are excessive.  This work should have largely been carried out by the engineering experts.  The Court also finds that the investigation task was overstaffed, with the involvement of six attorneys.  Attorney participation at this stage of the litigation was less critical than at the pre-filing investigation, even taking into consideration the newly filed motion to dismiss, as Class Counsel already had a working understanding of the defect at issue.

Similarly, the 212 hours claimed for the research and drafting of the Kacsuta FAC is unreasonable.  Class Counsel had a solid foundation of the legal merits of their case through the original complaint.  While Class Counsel added some new information to the complaint, including figures comparing data transfer speeds amongst different computers, the Kacsuta FAC retained much of the same information, such as the consumer complaints.  (*See* Kacsuta FAC); *see also Chalmers v. City of L.A.*, 796 F.2d 1205, 1214 (9th Cir. 1986) (finding 47.75 hours expended on appellate brief excessive "in light of counsel's familiarity with the issues in [the] case").  The window of time from which the motions to dismiss were filed, triggering the investigations, to the time the actual FACs were filed spanned approximately four to five weeks.  Claiming 517.5 hours on the Kacsuta Action during a 4–5 week period for the investigation of the FAC and the FAC is unreasonable.  Class Counsel in the Kacsuta Action should have been able to conduct the

factual and legal research and draft the FAC in 40% of the time requested, or 207 hours. Added to the 125.25 hours in the Wheeler Action, this amounts to 332.25 hours for the investigation of the FAC and the FAC in both Actions.

### iv.    Opposition to Lenovo's Motion to Dismiss the FAC

Lenovo filed a second round of motions to dismiss the amended complaints in each Action and each Plaintiff filed an opposition.  For the Kacsuta Action, Class Counsel report spending an astronomical 440.5 hours divided amongst four partners, two associates, and one paralegal, producing a 22-page opposition; in the Wheeler Action, 135.25 hours divided amongst three partners, two associates, and one paralegal for their 22-page opposition.  (Paradis Law Hours Chart; Kiesel Law Hours Chart; Parker Waichman Hours Chart; Whitfield Hours Chart.)  In the Kacsuta Action, the Court granted in part Lenovo's motion to dismiss, dismissing Mr. Kacsuta's express warranty, Song-Beverly Act, and implied-in-law contract claims.  (Kacsuta Order.)  The District of Columbia Superior Court dismissed Mr. Wheeler's unjust enrichment claim.  (Wheeler Dkt. at 2.)

Plaintiffs claim a total of 575.75 hours on the oppositions.  By way of comparison, Lenovo reports spending 324.4 hours on researching and drafting the motions to dismiss the FACs *plus* the reply briefs in the Actions.  (Def.'s Opp'n at 23.)  Much of Plaintiffs' oppositions include content drawn from the FACs, and yet Plaintiffs report a similar number of hours (600.5 hours) in the legal research and drafting of both the initial complaint *and* the FAC of the Actions.  And unlike a complaint or even a first amended complaint, an opposition does not require the crafting of legal claims for the first time; rather, an opposition is just that—an opposition to arguments raised by another.  It should not take six well-paid, experienced attorneys 440.5 hours—or even 135.25 hours—to prepare one 22-page opposition to a motion to dismiss.  *Cf. Campos v. City of Blue*

*Springs, Missouri*, 289 F.3d 546, 553 (8th Cir. 2002) (reducing hours where "four experienced, highly paid attorneys [took] 480 hours to prepare one summary judgment motion *and* to prepare for and conduct a four-day trial" (emphasis added)).  The Court finds this task could reasonably have been completed in 80 hours in each Action, for a total of 160 hours.

### v.    Post-filing Discovery

Class Counsel report spending 197 hours in the Kacsuta Action and 8.75 hours in the Wheeler Action on post-filing discovery, for a total of 205.75 hours.  (Tufaro Decl. ¶ 86.)  Post-filing discovery in the Kacsuta Action consisted of drafting and serving Rule 26 disclosures and researching and drafting various protective orders, including an order governing the production of Electronically Stored Information.  (Tufaro Decl. ¶ 87.)

Importantly, the protective orders that Class Counsel apparently drafted were never submitted to this Court.  While it may have been pertinent to preliminarily look into the issue of protective orders, the Court declines to grant $100,000 in attorneys' fees for hours not "expended in pursuit of the ultimate result achieved."  *See Hensley*, 461 U.S. at 435.  Class Counsel have not submitted an itemized account of hours expended on the Rule 26 disclosures versus hours on the protective orders; however, approximately 50 hours is more than sufficient to draft Rule 26 disclosures and conduct preliminary research into possible protective orders.  The Court therefore grants 58.75 hours for this task in both Actions.

### vi.    Post-Filing Engineering Investigation to Assess Effectiveness of Lenovo's Remedial Measures

Class Counsel report spending 673 hours in the Kacsuta Action and 16.5 hours in the Wheeler Action in the post-filing engineering investigation, for a total of 689.5 hours.

(Tufaro Decl. ¶ 88.)  These hours were spent working with engineering experts to assess the efficacy of Lenovo's remedial measures, including comparing the Class Computers manufactured before and after the remedial measures.  (Tufaro Decl. ¶¶ 90–92.)

Using attorney billing to generate nearly $370,000.00 on a task better suited for experts is excessive and unnecessary.  Additionally, the hours claimed in the Kacsuta Action were likely unnecessarily duplicative of the hours for investigation of the Kacsuta FAC.  *See Moreno*, 534 F.3d at 1113 ("[W]here the lawyer does unnecessarily duplicative work . . . the court may legitimately cut the hours.").  This Court has already granted 122 hours towards the investigation for the Kacsuta FAC.[4]  Specifically, this included working with engineering experts to test the factors cited by Lenovo in the motion to dismiss—including its remedial measures.  (Tufaro Decl. ¶¶ 13, 15–17.)  The fruits of this investigation were reflected in the Kacsuta FAC, which included detailed testing data of the Class Computers before and after Lenovo's design change.  (*See* Kacsuta FAC ¶¶ 7–9, 34–53; Tufaro Decl. ¶ 17 ["Plaintiff Kacsuta's [FAC] contains extensive, highly detailed graphs/charts, which depict the data generated from Plaintiffs' Engineering Experts' additional tests."].)  It is unclear how, thereafter, Class Counsel could have wisely spent an additional 673 hours assessing the same remedial measures that were already tested and documented at length in the Kacsuta FAC.  The Court finds that 100 hours is ample time to conduct any remaining testing.  Added to the 16.5 hours in the Wheeler Action, the Court grants a total of 116.5 hours for this task.

### vii.   Design Settlement Proposal and Mediation Statement, Mediate Claims

Plaintiffs report 741.5 hours in the Kacsuta Action and 196.75 hours in the Wheeler Action on mediation and the development of a settlement proposal, for a total of

---

[4]  *See supra* Part III.C.1.iii—*Investigation of the FAC and FAC*.

938.25 hours.  (Pls.' Mot. at 36; Tufaro Decl. ¶ 93.)  These hours were spent discussing settlement options with two additional experts, gathering more testing data for possible remedial measures, creating a settlement proposal, and discussing Lenovo's counter proposal.  (Tufaro Decl. ¶¶ 93–97.)  Additionally, the parties participated in a day-long mediation session and then continued to negotiate the details of the settlement over 10–12 weeks.  (Tufaro Decl. ¶¶ 98–99.)  Five attorneys from the Kacsuta Action and five attorneys from the Wheeler Action billed time for these aforementioned tasks.

The design of the settlement proposal, mediation of claims, and negotiation over settlement terms fall squarely in the realm of results achieved.  *See Davis v. Cnty. of L.A.*, No. 73-63-WPG, 1974 WL 180, at *3 (C.D. Cal. June 5, 1974) ("[P]laintiffs' counsel are entitled to an award of fees for all time reasonably expended in pursuit of the ultimate result achieved.").  Lenovo is critical of the number of attorneys present at the mediation session, noting that Plaintiffs had approximately eight representatives present while Lenovo only had two.  (Def.'s Opp'n at 23; Stephenson Decl. ¶ 14.)  Even if it were possible to conduct the mediation session with fewer plaintiffs' attorneys, the Court recognizes that two separate actions and thus two separate interests were present and in need of full representation at the critical mediation session.

Assuming, however, that the "day-long" mediation session with the Hon. Dickran Tevrizian (Ret.) took 10 hours with eight attorneys present on behalf of Plaintiffs, this only amounts to 80 hours.  Class Counsel cite ongoing negotiations with Lenovo but, by definition, such exchanges must have been two-sided.  Yet Lenovo reports only 117.8 hours spent towards mediation and settlement.  (*See* Def.'s Opp'n at 23.)  Even accounting for time spent by Class Counsel in investigating and crafting the settlement proposal, 937.75 hours to settle an action that began one year prior is unreasonably high.

Plaintiffs cite *In re Toys R Us-Delaware, Inc. –Fair & Accurate Credit Transaction Act Litig.*, 295 F.R.D. 438, 466 (C.D. Cal. 2014) in support of their request for settlement hours, but even there, counsel sought only 233 settlement hours for a case that had been going on for *seven years*. Furthermore, the court in *In re Toys R Us* noted that the hours billed for settlement and talks was "high," but nevertheless granted the hours in light of events outside of class counsel's control, such as the defendant's failure to appear for multiple mediation sessions. *Id.* at 466–67. Here, Plaintiffs have not pointed to any extraordinary or unusual circumstances that would have produced a protracted settlement and mediation process. For the foregoing reasons, the Court finds that Class Counsel should have spent no more than 450 hours for the settlement process, not 938.25 hours.

### viii.    Motions for Preliminary and Final Settlement Approval and Work with Claims Administrator

Finally, Class Counsel seek 485 hours for work relating to the Preliminary Settlement Approval, and 385.5 hours for the Final Settlement Approval, for a total of 870.5 hours. (Pls.' Mot. at 37–38.) Such work includes drafting the Motion for Preliminary Approval, along with the supporting documents, such as the Settlement Agreement, notices and claims forms. (Tufaro Decl. ¶ 100.) The hours also encompass time spent on the present motion and supporting documents, as well as hours spent working with the Claims Administrator. (Tufaro Decl. ¶¶ 101–103.)

Like the hours spent on the settlement negotiations and mediation, these tasks relate directly to the results achieved in this action. Critically, however, the vast majority of the content for the two motions had already been established. (*See* Tufaro Decl. ¶ 99 [describing the 10–12 weeks of continued negotiation over the details of the settlement].) Thus, the requested hours are unnecessarily duplicative of the 450 hours that the Court has already granted for finalizing the material terms of the mediation and settlement

agreement in Category VII. *See Moreno*, 534 F.3d at 1112. The Court is highly skeptical that Class Counsel would bill a private client over $720,000.00—nearly three-quarters of a million dollars— in fees after all material terms of the settlement agreement had already been reached. *See id.* at 1111. The Court also notes the vast overlap in content for the Preliminary Approval motion, the Final Approval motion, and the Claims website. The Court finds that 200 hours is ample time to complete these tasks.

In sum, the Court approves the following break-down of hours:

| | |
|---|---|
| • Pre-filing Investigation**:** | **322.5 hours** |
| • Complaint: | **283.05 hours** |
| • Investigation of the FAC and FAC: | **332.25 hours** |
| • Opposition to the Motion to Dismiss: | **160 hours** |
| • Post-filing Discovery: | **58.75 hours** |
| • Post-filing Engineering Investigation: | **116.5 hours** |
| • Settlement Negotiations and Mediation: | **450 hours** |
| • Preliminary and Final Approval: | **200 hours** |
| **TOTAL:** | **1,923.05 hours** |

Billing nearly 2,000 hours in two actions that never went beyond the pleading stages and lasted approximately 1–2 years is reasonable. As compared to the 4,772 hours requested by Class Counsel, this reflects an overall 59.7% deduction.

## 2.  Lodestar—Reasonable Billing Rate

In addition to assessing the reasonableness of the hours requested, a court must also determine the reasonableness of the hourly billing rate. *Evans*, 475 U.S. at 736. This is determined by looking to the "prevailing market rates in the relevant community."

*Blum v. Stenson*, 465 U.S. 886, 895 (1984).  Specifically, "the requested rates [must be] in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Id.* at 895 n.11.  Declarations from attorneys may be sufficient to establish the prevailing market rate in the relevant community.  *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 696 (9th Cir. 1996); *In re Toys R Us*, 295 F.R.D. at 461.

Here, each law firm seeks a separate hourly billing rate.  For Paradis Law Group, PLLC, the rate for partners ranges between $825– $895; $300–$375 for associates; and $150 for the senior paralegal.  The hourly billing rate for the senior partner at Kiesel Law, LLP is $1,1000.  For Whitfield, Bryson & Mason, LLP, the rate for partners ranges from $520–$750; $390–$430 for associates; and $115–$180 for paralegals.  For Parker Whaichman, the rate for partners is $650; $350–$400 for associates; and $150 for paralegals.  (Pls.' Mot. at 39–40.)  Plaintiffs have provided an expert declaration that these rates fall within the market for trial attorneys practicing in the field of complex financial litigation.  (Dkt. No. 66, Decl. of Geoffrey P. Miller ISO Pls.' Mot. ["Miller Decl."] ¶¶ 29–31.)  Additionally, Plaintiffs submit various articles from third-party sources that the requested billing rates are similar to the rates charged by other firms and attorneys of comparable caliber.  (Miller Decl. ¶ 30; Exhs. B–E.)  Based on the evidence presented, the Court finds that the requested hourly rates are reasonable.

The final step in the lodestar determination is to multiply the reasonable hours by the reasonable hourly rate.  Here, the hours for certain tasks were drastically cut, while others were maintained or given a 10% haircut.  The Court declines to parse out the details of which attorneys from which law firms should have expended how many hours.  *See Moreno*, 534 F.3d at 1115 ("The court . . . may not attempt to impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee requests."); *Gauchat-Hargis v. Forest*

*River, Inc.,* No. 2:11-CV-02737-KJM, 2013 WL 4828594, at *4 (E.D. Cal. Sept. 9, 2013) (noting that "it is not the court's place to micromanage the . . . staffing [of the case]").  To avoid micromanaging the staffing decisions of Class Counsel, the Court finds it equitable to apply a 59.7% reduction to the requested $3,122,813.00 lodestar to reflect the 59.7% reduction in hours.  Not only does this maintain the integrity of Class Counsel's staffing decisions, but it also gives Class Counsel the benefit of the elevated rates of the law firms in the Kacsuta Action. [5]  Accordingly, the final lodestar comes to $1,258,493.64

### 3.  Multiplier

The lodestar figure is presumptively reasonable; however, "the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors."  *In re Bluetooth*, 654 F.3d at 941–42 (internal citation and quotation marks omitted).  These factors, known as the *Kerr* factors, include, *inter alia*, the time and labor required, the novelty and difficulty of the questions involved, the benefit obtained for the class, and the "undesirability" of the case.  *Id.* at 942 & n.7 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).  However, the Supreme Court has cautioned that many of these factors are subsumed within the initial lodestar calculation, *see Hensley*, 461 U.S. at 424, and only in "rare and exceptional cases" do the *Kerr* factors warrant a departure from the lodestar, *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

Class Counsel seek a 2.84 multiplier to the requested $3,122,813.00 lodestar, for a total requested attorneys' fee award of $8,889,300.00.  A multiplier is not warranted in this case.  The Court finds—and Plaintiffs concede—that nearly half of the *Kerr* factors,

---

[5]  Some hours were deducted only from the Kacsuta Action, such as the pre-complaint investigation and the investigation of the FAC and the FAC.  By applying a 59.7% reduction to the overall requested fee rather than reducing the hours solely from the Paradis and Kiesel Law Firms, Class Counsel obtain a higher overall fee than they otherwise would.

including time and labor involved, difficulty and novelty of the issues, the necessary legal skill required, the customary fee, and the experience, reputation, and ability of the attorneys have already been subsumed in the lodestar, even after considering the reduction of hours.  (*See* Pls.' Mot. at 41); *Hensley*, 461 U.S. at 434 n.9 (cautioning that these factors "usually are subsumed within the initial calculation of hours *reasonably expended* at a reasonably hourly rate" (emphasis added)).  Of the remaining *Kerr* factors, the Court agrees that the benefit obtained for the class is significant, but does not elevate this case into a "rare and exceptional" one that merits a multiplier.

### 4.  Cross-Check with Actual Value of Settlement

Where, as here, the settlement agreement does not create a common fund, the percentage-of-the-fund method is an optional, instructive cross-check on the fees counsel seek.  *See In re Toys R Us*, 295 F.R.D. at 468.  The Ninth Circuit has established 25 percent as the benchmark for reasonableness in percentage-of-the-fund cases.  *Fichel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002).  The value of the settlement is hotly contested by the parties.  Plaintiffs assert that the value of the settlement is $50,515,487.15.  (Pls.' Mot. at 45.)  Plaintiffs' expert reached this figure by multiplying the repair option of the settlement (which Plaintiffs value at $607.15 per computer)[6] by 83,201 Class Computers.  (Williams Decl. at 8.)  Based on their valuation, Plaintiffs contend that the requested $8.89 million fee amounts to 17% of the settlement value.  (Pls.' Mot. at 45.)  Lenovo, on the other hand, values the settlement in the range of $1.06–2.37 million, based on an 11% claim rate (out of approximately 83,300 Class Members) multiplied by an average value of $116.00 (for the $100 cash option plus warranty) on the low end, and $259.00 (the value for the $250.00 coupon option plus

---

[6]  The $607.15 per computer is based on the sum of: (i) the estimated value of the Wi-Fi repair itself ($269.00); (ii) the estimated value of free insured round trip shipping ($238.77); and (iii) the estimated value of the limited warranty extension/renewal ($99.38).  (Dkt. No. 67, Decl. of Mark T. Williams ISO Pls.' Mot. ["Williams Decl."] at 8.)

warranty) on the high end.  (Dkt. No. 75 Decl. of Denise S. Martin ISO Def.'s Opp'n ¶ 17.)  25% of the high end of Lenovo's valuation comes out to $592,500.00.

Given the vastly conflicting evidence and expert opinions produced by the parties, the Court cannot make a proper finding as to the actual value of the settlement.  While the Court would like the benefit of a cross-check on the attorneys' fee award, the circumstances present more opportunity for error through guesswork of the "true" value of the settlement.  As this cross-check is optional in nature, *see Grays Harbor Adventist Christian School v. Carrier Corp.*, No. 05-05437 RBL, 2008 WL 1901988, at *5 (W.D. Wash. Apr. 24, 2008) ("[I]t is not necessary for the Court to cross-check the reasonableness of a lodestar-based award by conducting a percentage-of-the-fund analysis . . . ."), the Court declines to engage in such analysis and GRANTS the lodestar calculation of $1,258,493.64 as the final amount of attorneys' fees.

### D. Reimbursements of Costs and Plaintiffs' Awards

Plaintiffs seek $300,000.00 for the reimbursement of costs and a $2,500.00 award for each Plaintiff.  (Pls.' Mot. at 46–47.)  Paradis Law Group claims $275,816.00 in cost reimbursements, of which $239,897.00 are for "Experts, Consultants, Investigators." (Paradis Decl. ¶ 9.)  Kiesel Law LLP claims $3,188.58 in costs, (Kiesel Decl. ¶ 9), Parker Waichman LLP claims $5,195.87, (Chaikin Decl. ¶ 9), and Whitfield, Bryson and Mason LLP claims $16,103.87, (Migliaccio Decl. ¶ 9).  The expenses relate to meals, hotels and transportation, Lexis/Westlaw and other online research, mediation fees, photocopies, electronic discovery and data management, telephone and facsimile, messenger and overnight delivery, and filing fees.  The costs are reasonable, as Lenovo does not object to these expenses and they do not detract from any of the benefits to the class.  *Cf. In re Omnivision*, 559 F. Supp. 2d at 1048–49 (approving $560,489.00 reimbursement award for similar expenses taken from the common fund); *Edwards v. City of Colfax*, No. CIV

S-07-2153 GEB EFB, 2011 WL 572171, at *9 (E.D. Cal. Feb. 15, 2011) (approving $89,137.00 in expert costs).  The $300,000.00 cost reimbursement is GRANTED.

Plaintiffs further seek a $2,500.00 reimbursement award to each Plaintiff.  Awards are discretionary and are intended to compensate class representatives for work done on behalf of the class and to make up for financial or reputational risk undertaken in bringing the action.  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).  Plaintiffs have submitted declarations testifying that they have actively participated in the litigation by reviewing and analyzing documents, participating in telephone calls, responding to emails, and directing Class Counsel in connection with the prosecution.  (Tufaro Decl. Exh. 5 ["Kacsuta Decl."] ¶ 12; Exh. 6 ["Wheeler Decl."] ¶ 13.)  Plaintiffs further declare that, as a result of their participation in the Actions, they have lost business opportunities and wages in the amount of at least $2,500.00.  (Kacsuta Decl. ¶ 13; Wheeler Decl. ¶ 14.)  Lenovo does not object to these awards, nor do these awards affect the benefits provided to the class.  Accordingly, the Court GRANTS reimbursement of Plaintiffs' awards.

//
//
//
//
//
//
//
//
//
//
//

**IV.  CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for final approval of the class action settlement is GRANTED.  Plaintiffs' motion for attorneys' fees, reimbursements of expenses, and Plaintiffs' awards are GRANTED IN PART.  Lenovo shall pay $1,258,493.64 in attorneys' fees, $300,000.00 for the reimbursement of expenses, $2,500.00 to Mr. Kacsuta, and $2,500.00 to Mr. Wheeler.


DATED:      December 16, 2014

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE